# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
### HARRISBURG DIVISION

| | |
|---|---|
| 1789 FOUNDATION INC., d/b/a CITIZEN AG, and ANTHONY GOLEMBIEWSKI, <br><br> *Plaintiffs*, <br><br> v. <br><br> AL SCHMIDT, in his official capacity as Secretary of State, and COMMONWEALTH OF PENNSYLVANIA, <br><br> *Defendants*. | Case No. _____ <br><br> **VERIFIED COMPLAINT AND REQUEST FOR INJUNCTION** <br><br> **1. Injunctive Relief** <br><br> **2. Declaratory Judgment** <br><br> **3. Violation of the National Voter Registration Act, 52 U.S.C. § 20501,** *et seq.* |

Plaintiffs 1789 Foundation, Inc. d/b/a Citizen AG ("Citizen AG") and Anthony Golembiewski ("Mr. Golembiewski") (collectively, "Plaintiffs"), by and through undersigned counsel and pursuant to the National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq.* ("NVRA" or "Act"), file this Verified Complaint for declaratory and injunctive relief against Defendants Al Schmidt, in his official capacity as Pennsylvania's Secretary of State, and the Commonwealth of Pennsylvania (collectively, "Defendants", "Pennsylvania", or the "State") on the grounds set forth as follows:

## NATURE OF THE ACTION

This lawsuit seeks to enforce the public inspection and list maintenance provisions of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20501 *et seq.*, requiring Pennsylvania to maintain accurate voter registration lists by removing ineligible voters based on residency changes. Under the NVRA, voter removal is mandated when: (1) a registrant provides

written confirmation of a move, or (2) a registrant fails to respond to a confirmation notice and does not vote in the next two federal elections. 52 U.S.C. § 20507.

The NVRA provides registrants who fail to respond to confirmation notices significant protections against pre-mature or improper removal; the most notable of which is its statutory waiting period that gives registrants who don't respond multiple years to multiple minutes' worth of action—action that, once taken by the registrant, frees any worry of removal.

Of course, there must be some means of delineating voters who respond to their confirmation notices and those who do not. For that reason, those who do not respond to confirmation notices are referred to as "inactive" registrants. The term "inactive" does not mean the registrant is not eligible to vote or otherwise prohibited from voting—in fact, all inactive registrants are registered voters. An "inactive" registration status is merely a demarcation attributed to registrants who do not respond to confirmation notices that remains in place during the multiple *years* the registrant has to take the simple action of confirming his or her residence by either (A) notifying their registrar, which the registrant can do both in person or even in writing; or (B) by simply voting in one of the next two federal elections.

The NVRA, however, is also cognizant of the need to protect the fundamental right to vote held by active registered voters, too. For that reason, registrants who have not responded to their confirmation notice and then do not vote in either of the next two federal elections (i.e., the statutory waiting period) must be removed from the voter rolls. 52 U.S.C. § 20507(b)(2)(B) (requirement to "remove an individual from the official list of eligible voters if the individual . . . has not voted or appeared to vote in 2 or more consecutive general elections for Federal office"); *see also Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 767 (2018) ("**federal law makes this removal mandatory**.") (emphasis added).

According to the statistics Pennsylvania's Secretary of State reported to the Election Assistance Commission ("EAC"), there are at least 277,768 inactive registrants who were sent confirmation notices prior to the 2020 General Election (e.g., 2 federal elections ago) via forwarded mail who did not respond, and 2 federal elections have since elapsed—yet all 277,768 of 277,768 names remain registered to vote in the upcoming November 5, 2024 federal election.

Upon learning this, Citizen AG submitted an open-records request on October 4, 2024 and pursuant to the NVRA's public inspection provision and Pennsylvania state law, requesting to inspect or receive copies of records reflecting how many of the subject 277,768 voters had cast a ballot in the 2020 General Election or the 2022 Midterm Election. *See* Exhibit 1.

On October 11, 2024, Secretary Schmidt's office sent an "interim response" stating that the Commonwealth would require an additional thirty (30) days to comply with Citizen AG's request and provided an expected response date of November 12, 2024. *See* Exhibit 4. Under Pennsylvania law, this constitutes a denial as November 12, 2024 is more than 30 days following the five business days allowed for in section 901. *See* 65 Pa. Stat. § 67.902(b) ("If the date that a response is expected to be provided is in excess of 30 days, following the five business days allowed for in section 901, the request for access shall be deemed denied unless the requester has agreed in writing to an extension to the date specified in the notice.").

Plaintiffs now commence this action to redress Defendants' denial of Citizen AG's lawful request that sought records required to be maintained and made available pursuant to the NVRA's public inspection provision, 52 U.S.C. § 20507(i) and to protect the fundamental right to vote for all Pennsylvanians against improper removal and to ensure no eligible voter's fundamental right to vote is undermined because of vote dilution. Absent the injunctive relief requested herein, there is no way to distinguish which of the 277,768 registrants currently registered to vote are active, eligible voters and how many of the 277,768 registrants should have been removed from the voter

rolls pursuant to 52 U.S.C. § 20507(b)(2)(B) (requirement to "remove an individual from the official list of eligible voters if the individual . . . has not voted or appeared to vote in 2 or more consecutive general elections for Federal office"); *see also Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 767 (2018) ("**federal law makes this removal mandatory**.") (emphasis added).

Citizen AG and its Pennsylvania members have legitimate concerns about the fundamental right to vote being undermined, and when state officials blatantly ignore and violate their duties under well-established federal law, those concerns are only exacerbated. Millions of Pennsylvanians are concerned with the integrity of the electoral process and this concern translates into discouragement to participate in the democratic process and eligible registered voters become filled with fear that legitimate votes will be nullified or diluted, or their right to cast a vote will be stripped away entirely.

Due to the irreparable harm Citizen AG has suffered and will continue to suffer (as detailed below), and because Mr. Golembiewski will be irreparably injured absent the injunctive relief requested herein, Plaintiffs also file an Emergency *Ex Parte* Motion for a Temporary Restraining Order and Preliminary Injunction that asks the Court to enjoin Secretary Schmidt and the Commonwealth of Pennsylvania from ignoring the explicit and express requirements of the NVRA, and specifically, the public inspection provisions requiring the Commonwealth to make the records Citizen AG requested available for inspection pursuant to 52 U.S.C. § 20507(i), and the provisions of 52 U.S.C. § 20507(e), which set forth the procedure for a registrant to vote after failing to respond to a confirmation notice.

## **JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, and in particular, 52 U.S.C. §§ 20507 and 20510(b).

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because at least one defendant resides in this district and all defendants reside in Pennsylvania, and because a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

3.      The allegations raised herein pertain to one or more violations of the NVRA that occurred within thirty (30) days of a federal election and therefore, any notice-related conditions precedent to maintaining this action are waived entirely pursuant to 52 U.S.C. § 20510(b)(3).

## PARTIES

4.      Plaintiff 1789 Foundation, Inc. d/b/a Citizen AG ("Citizen AG") is a nonprofit organization organized under the laws of the State of Florida dedicated to educating Americans about their rights and advocating, protecting, and preserving American civil liberties and constitutional rights through an array of means that includes without limitation, engaging in litigation. Citizen AG and co-Plaintiff Anthony Golembiewski, seek declaratory and injunctive relief pursuant to 52 U.S.C. § 20510(b)(1), which authorizes a private citizen to bring this suit to enforce the NVRA, and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5.      Plaintiff Anthony Golembiewski is an adult resident, a Citizen AG member, and an active registered voter of Allegheny County whose fundamental right to vote is in jeopardy of being undermined directly and proximately because of Defendants' noncompliance with the NVRA.

6.      Defendant Commonwealth of Pennsylvania is covered by the requirements of the NVRA with respect to elections for Federal office. *See* 52 U.S.C. § 20502(4), § 20503(b).

7.      Defendant Al Schmidt is the Secretary of State for the Commonwealth of Pennsylvania. Section 10 of the NVRA requires that "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this Act." 52 U.S.C. § 20509. Pennsylvania law establishes that the Secretary

of State is "the chief state election officer for the purposes of the National Voter Registration Act of 1993." 25 Pa. Stat. § 2621(a). Secretary Schmidt is being sued in his official capacity.

## STATUTORY BACKGROUND

8.      Section 8 of the NVRA provides "each State shall … conduct a general program that makes a reasonable effort to remove … from the official lists of eligible voters" the names of voters who have become ineligible by reason of . . . a change of residence. 52 U.S.C. § 20507(a)(4).

9.      With respect to voters who have changed residence, Section 8 provides that no registration may be cancelled on that ground unless the registrant either (1) confirms this fact in writing, or (2) fails to timely respond to an address-confirmation notice described by the statute (the "Confirmation Notice"). 52 U.S.C. § 20507(d)(1)(B).

10.     A Confirmation Notice is a "postage prepaid and preaddressed return card, sent by forwardable mail," that asks the registrant to confirm his or her residence address. *Id*. at (d)(2).

11.     If a registrant fails to respond to a Confirmation Notice, and then fails to vote (or contact the registrar) during a statutory waiting period extending from the date of the notice through the next two general federal elections, the registration is cancelled. *Id*. at (d)(1)(B). These cancellations are mandatory under federal law. *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 767 (2018) ("**federal law makes this removal mandatory.**") (emphasis added).

12.     A voter's registration status is referred to as "inactive" during the statutory waiting period, which runs from the notice mailing until the day following the second consecutive federal election that occurs thereafter. 52 U.S.C. § 20507(b)(2)(B).

13.     A voter with an inactive registration may still vote even on election day of the second federal election, so long as he or she complies with the requirements set forth under 52 U.S.C. § 20507(d)(2)(A). Accordingly, inactive voters are still registered voters.

6

14.     In June of each odd-numbered year, the U.S. Election Assistance Commission ("EAC") is required by law to report to Congress its findings relating to state voter registration practices. 52 U.S.C. § 20508(a)(3).

15.     Federal regulations require states to provide various kinds of NVRA-related data to the EAC for use in its biennial report. 11 C.F.R. § 9428.7.

16.     Section 8(i) of the NVRA grants the public the right to request information concerning voter list maintenance and provides in pertinent part:

> Each State shall maintain for at least 2 years and shall make available for public inspection" and copying "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters.[1]

17.     Though not purporting to be an exhaustive list, Section 8(i)(2) provides specific examples of responsive records: "The records maintained . . . shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made." 52 U.S.C. § 20507(i)(2).

18.     The NVRA provides that "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter." 52 U.S.C. § 20509. Pennsylvania law designates the Secretary of State as this official. 25 Pa. Stat. § 2621(a).

19.     The NVRA affords a private right of action to any "person who is aggrieved by a violation" of the Act. 52 U.S.C. § 20510(b). Ordinarily, a private litigant is required to send notice of a violation to the chief State election official 90 days prior to commencing a lawsuit. *Id.* §

---

[1] 52 U.S.C. § 20507(i).

20510(b)(1), (2). However, "[i]f the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State . . . before bringing a civil action . . .". *Id.* § 20510(b)(3)

20.     Because Defendants violated the NVRA within thirty (30) days of a federal election, as more fully explained below, the notice requirement is waived entirely. *Id.*

## STATEMENT OF FACTS

### I.  Background of the NVRA

21.     The NVRA has two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls. *See* 52 U.S.C. § 20501(b).

22.     To achieve the latter goal, the NVRA requires States to "conduct a general program that makes a reasonable effort to remove the names" of voters who are ineligible "by reason of" *inter alia* a change in residence. 52 U.S.C. § 20507(a)(4).

23.     The NVRA contains two (2) express requirements that must be met before a State removes a name from its voter rolls based on change-of-residence grounds. 52 U.S.C. §§ 20507(b), (c), (d). These requirements exist to protect the fundamental right to vote held by those who otherwise could potentially be removed improperly.

24.     On the other hand, Congress was also cognizant of the importance of ensuring eligible voters' fundamental right to vote is also protected against vote dilution. For that reason, the NVRA makes it mandatory that the States remove voters, based on change-of-residence grounds, when these two requirements are met.

25.     The first and most important of the two requirements is a prior notice obligation. Before the NVRA, some States removed registrants without giving any notice. But this is no longer an issue because the NVRA limits States and only permits the removal of a registrant's name from the rolls based upon change-of-residence grounds to situations when (A) the registrant

8

confirms in writing that he or she has moved; or (B) the registrant fails to return the preaddressed, postage prepaid "return card" that is included with the confirmation notices sent by the States via forwarded mail to registrants the State suspects may have moved out of the district in which they are registered.

26.    These return cards provide the explicit instructions as to what a registrant who receives a confirmation notice but has not moved must do in order to remain on the voter rolls: the voter must either (1) return the card confirming his or her residence or vote in at least one of the next two general federal elections.  52 U.S.C. § 20507(d)(2)(A).

27.    For the benefit of those who have moved, the return card also contains "information concerning how the registrant can continue to be eligible to vote."  52 U.S.C. § 20507(d)(2)(B).

28.    These safeguards protect against the improper removal of a registered voter on change-of-residence grounds; however, the fundamental right to vote must also be protected for those who remain actively registered, too. To accomplish this, the NVRA makes mandatory the removal of all voters who (A) fail to return the card confirming his or her residence and (B) do not vote in at least one of the next two general federal elections.

29.    The removal of voters who do not return the card confirming his or her residence and do not vote in either of the next two federal elections is mandatory.

**II.    The Election Administration Commission's EAVS Reports**

30.    The U.S. Election Assistance Commission ("EAC") is an independent federal agency dedicated to improving the administration of elections across the country.

31.    Since 2004, the EAC has furthered its objectives by conducting the Election Administration and Voting Survey ("EAVS") following each federal general election.

32.    The EAVS asks Pennsylvania and the remaining 49 U.S. states, as well as five U.S. territories—American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, and the U.S.

Virgin Islands—to provide data about the ways Americans vote and how elections are administered.

33.　　The EAVS is sent to the chief election officials of the states, which here, is Secretary Schmidt, who then provides responses to the survey's questions that cover various aspects of Pennsylvania's election administration.

34.　　The EAVS survey responses Pennsylvania's Secretary of State provided for both the 2020 and 2022 EAVS Reports include, without limitation, the following information:

　　　i.　　how many confirmation notices the Commonwealth sent via forwarded mail;

　　　ii.　　how many voters responded to the notices and whether the response indicates that a voter has or has not moved;

　　　iii.　　the number of confirmation notices that were returned undeliverable;

　　　iv.　　how many voters are listed as active/inactive;

　　　v.　　the number of registrants the Commonwealth removed from its voter rolls;

　　　vi.　　the reasons for removal; and

　　　vii.　　how many voters were removed for each respective reason.

35.　　These reports together provide the relevant information needed to determine whether Pennsylvania has complied with its federal obligations concerning list maintenance with the exception of one variable—and that variable is the specific information contained in the records Citizen AG requested on October 4, 2024—a request which was denied on October 11, 2024.

36.　　As of the date of this filing, Defendants have not made available for public inspection or otherwise provided copies of, or access to, any of the records required to have been made available under 52 U.S.C. § 20507(i).

//

**III.　　Pennsylvania's Self-Reported Voter-Related Statistics**

VERIFIED COMPLAINT

37.     In reviewing Defendants'[2] responses to the 2020 EAVS Report[3], Pennsylvania sent 753,942 registered voters confirmation notices (inclusive of return cards) via forwarded mail prior to the 2020 General Election.

38.     Of the 753,942 confirmation notices sent to registered Pennsylvania voters, only 116,042 registrants responded.

39.     Based on these figures, a minimum of 637,900 registrants were sent confirmation notices via forwarded mail and did not respond, resulting in their registration statuses being switched to "inactive" prior to the 2020 General Election.

40.     After the 2022 Midterm Election, Pennsylvania reported to the EAC[4] that it removed 360,132 registrants of the 637,900 registrants who did not respond to the confirmation notices sent to them by the Commonwealth via forwarded mail.

41.     When taking the 637,900 registrants who did not respond to their confirmation notices before the 2020 General Election and subtracting the 360,132 registrants that Secretary Schmidt reported the Commonwealth removed after the next 2 federal elections, there remains a total of 277,768 registered voters on Pennsylvania's voter rolls as of the filing date.

42.     Due to the fact that it is statistically improbable, if not impossible, that 277,768 out of 277,768 inactive registrants reactivated their registration statuses in compliance with 52 U.S.C. § 20507(e), and in light of the threat posed by inactive registrants remaining on the voter rolls Congress sought to eradicate with the enactment of the NVRA, Citizen AG submitted sought records to determine how many of the 277,768 inactive registrants reactivated their registration statuses by voting in the 2020 or 2022 Midterm Elections.

---

[2] Reference to actions taken by "Defendants" shall be construed to mean the Commonwealth of Pennsylvania and its Secretary of State and does not mean Al Schmidt as an individual, who is only sued in his official capacity.
[3] See Exhibit 1, 2020 EAC EAVS Report.
[4] See Exhibit 2, 2022 EAVS Report.

**IV. Plaintiff's Open Records Request Pursuant to 52 U.S.C. § 50207(i)**

43.     On October 4, 2024[5], Citizen AG submitted an open records request seeking records, documents, and/or information Defendants are required to maintain and make available for public inspection upon request pursuant to the NVRA's public inspection provision. 52 U.S.C. § 20507(i). *See* Exhibit 5, Decl. of Eric Scharfenberger at ¶¶ 14-15.

44.     In particular, Citizen AG's records request sought records concerning the voter history of the 277,768 inactive registrants to determine how many of these registrants voted in the 2020 General Election or 2022 Midterm Election.

45.     Specifically, Citizen AG's request sought records that would evidence how many of the subject 277,768 inactive registrants voted in either the 2020 and/or 2022 federal elections, as such registrants should have had their voter registration statuses reactivated and all other inactive registrants should have been removed as they had met the requisite standard that compels removal under the NVRA (i.e., not responding to a confirmation notice and failing to vote in the next 2 consecutive federal elections).[6]

46.     The remaining registrants (all who are presently still registered as inactive), while any of the 277,768 inactive registrants who did *not* vote in 2020 or 2022 were required to have been removed as of November 9, 2022—the date following the second consecutive federal election and the first day following the expiration of the statutory waiting period. 52 U.S.C. § 20507(b)(2)(B) (requirement to "remove an individual from the official list of eligible voters if the individual . . . has not voted or appeared to vote in 2 or more consecutive general elections for

---

[5] *See* Exhibit 3, Records Request, dated Oct. 4, 2024.
[6] These removals should have begun on November 9, 2022— the date following the second consecutive federal election.

Federal office"); *see also Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 767 (2018) ("**federal law makes this removal mandatory**.") (emphasis added).

47.      The records and information Citizen AG requested is subject to the NVRA's public disclosure provision. *See e.g., Voter Reference Foundation, LLC v. Torrez*, 2024 WL 1347204 at *139 (D.N.M. Mar. 29, 2024) (holding the Secretary of State's Office violated the NVRA by failing to produce "[c]urrent voter registration data, **including voter history**, for all active, **inactive**, suspended, and cancelled status voters.") (emphasis added).

48.      Under Pennsylvania's right-to-know law ("RTKL"), Secretary Schmidt's Office had until October 11, 2024 to response to Citizen AG's records request, which was received on the day it was sent, October 4, 2024. 65 P.S. § 67.901; Scharfenberger Decl. ¶¶ 21-25.

49.      On October 11, 2024, the Secretary of State's Office sent a letter[7] informing Citizen AG that it would not be responding to its request until an expected date of November 12, 2024, which under 65 Pa. Stat. § 67.902, constitutes a denial of Citizen AG's request. *See* 65 Pa. Stat. § 67.902(b) ("If the date that a response is expected to be provided is in excess of 30 days, following the five business days allowed for in section 901, the request for access shall be deemed denied unless the requester has agreed in writing to an extension to the date specified in the notice.").

50.      To date, the Secretary of State has not complied with the NVRA's public inspection provision that *inter alia* requires the Commonwealth to make available the records identified in Citizen AG's request in direct violation of the NVRA's public inspection provision and Pennsylvania state law. 52 U.S.C. § 20507(i).

51.      Defendants have violated the NVRA by failing to produce the responsive records required for public inspection. And because Defendants' violated the NVRA by denying Citizen AG's request on

---

[7] *See* Exhibit 4, Secretary of State letter, dated Oct. 4, 2024.

October 11, 2024, which is 25 days before the November 5, 2024 federal election, no prior notice is required as a condition to maintain this action.

## PLAINTIFF'S INTERESTS

52.     Plaintiff Citizen AG's mission is to educate Americans about their rights and preserve our civil rights and liberties in the courts. The organization fulfills its mission through public records requests and litigation, among other means.

53.     Citizen AG is supported in its mission by tens of thousands of individuals across the nation. An individual becomes a member of Citizen AG by making a financial contribution, in any amount, to the organization. Members' financial contributions are by far the single most important source of income to Citizen AG and provide the means by which the organization finances its activities in support of its mission. Citizen AG in turn represents the interests of its members.

54.     Over the past several years, Citizen AG's members have become increasingly concerned about the state of the nation's voter registration rolls, including whether state and local officials are complying with the NVRA's voter list maintenance obligations. They are concerned that failing to comply with the NVRA's voter list maintenance obligations impair the integrity of elections by increasing the opportunity for ineligible voters or voters intent on fraud to cast ballots.

55.     Defendants' failure to comply with their NVRA voter list maintenance obligations burden the federal and state constitutional rights to vote of all individual members of Citizen AG who are lawfully registered to vote in Pennsylvania by undermining their confidence in the integrity of the electoral process, discouraging their participation in the democratic process, and instilling in them the fear that their legitimate votes will be nullified or diluted.

56.     Protecting the voting rights of Citizen AG members who are lawfully registered to vote in Pennsylvania is germane to Citizen AG's mission. It also is well within the scope of the reasons why members of Citizen AG join the organization and support its mission.

57.     Because the relief sought herein will inure to the benefit of Citizen AG members who are lawfully registered to vote in Pennsylvania, neither the claims asserted, nor the relief requested requires the participation of Citizen AG's individual members.

58.     In response to the concerns of its members, Citizen AG commenced a nationwide program to monitor state and local election officials' compliance with their NVRA list maintenance obligations.  As part of this program, Citizen AG utilizes public records laws to request and receive records and data from jurisdictions across the nation about their voter list maintenance efforts. It then analyzes these records and data and publishes the results of its findings to the jurisdictions, to its members, and to the general public.

59.     Citizen AG's concerns with Pennsylvania's list maintenance practices led it to send the October 2024 correspondence described in this complaint and to request documents relating to the state's list maintenance practices, and to analyze the Commonwealth's responses.

60.     Citizen AG's concerns also led it to conduct analyses of Pennsylvania's registration rates, removal rates, Confirmation Notice statistics, and inactive rates.

61.     Citizen AG has expended substantial resources, including staff time, investigating Defendants' failure to comply with their NVRA voter list maintenance obligations, communicating with Pennsylvania officials and concerned members about Defendants' failure, and researching statements made by Defendants in their correspondence.

62.     The resources expended by Citizen AG to investigate, address, research, and counteract Defendants' failure to comply with their NVRA voter list maintenance obligations are

distinct from and above and beyond Citizen AG's regular, programmatic efforts to monitor state and local election officials' NVRA compliance.

63.    Were it not for Defendants' failure to comply with their NVRA voter list maintenance obligations, Citizen AG would have expended these same resources on its regular, programmatic activities or would not have expended them at all. Instead, it diverted its resources to counteract Defendants' noncompliance and to protect members' rights.

### FIRST CLAIM FOR RELIEF
**VIOLATION OF THE NVRA, 52 U.S.C. § 20507(i)**
**Failure to Make Records Available for Inspection**
*(Citizen AG against Secretary Schmidt and Commonwealth of Pennsylvania)*

64.    Citizen AG incorporates by reference all preceding paragraphs as if fully set forth herein.

65.    On or about October 4, 2024, Citizen AG submitted a public records request to Secretary Schmidt' office pursuant to 52 U.S.C. § 20507(i) and in full compliance with the provisions of the Commonwealth's Right-to-Know Law.

66.    Citizen AG's request sought records or information sought records concerning voter history and information as to the number of the subject 277,768 inactive registrants who reactivated their registration statuses by voting in the 2020 or 2022 federal elections.

67.    Defendants' response to Citizen AG's request was due within 5 business days of receiving it, which was October 11, 2024.

68.    On October 11, 2024, the Secretary of State's office sent an "interim response" stating that it needed more time, until November 12, 2024, to send a final response. Under 65 Pa. Stat. § 67.902, this constitutes a denial because November 12, 2024 is more than 30 days following the five business days allowed for in section 901. *See* 65 Pa. Stat. § 67.902(b) ("If the date that a response is expected to be provided is in excess of 30 days, following the five business days

allowed for in section 901, the request for access shall be deemed denied unless the requester has agreed in writing to an extension to the date specified in the notice.").

69.    Section 8(i) of the National Voter Registration Act (NVRA) requires that Defendants retain and make available for public inspection, for **at least two years**, **all** records concerning voter list maintenance activities, such as removals, confirmations of voter eligibility, and updates to voter registration lists, as well as any records regarding the implementation of programs and activities conducted to ensure the accuracy and currency of official lists of eligible voters. *See* 52 U.S.C. § 20507(i).

70.    The 2022 Midterm Election took place on November 8, 2022, and therefore, records regarding the 2022 Midterm Election are less than two (2) years old and Pennsylvania is required to have, at a minimum, records that Citizen AG requested in its October 4, 2024 open records request pertaining to the 2022 Midterm Election in its possession pursuant to 52 U.S.C. § 20507(i).

71.    Citizen AG's request sought records from the 2022 Midterm Election, including the number of persons who voted in the 2022 Midterm Election even though they had previously received and failed to respond to a confirmation notice prior to the 2020 General Election.

72.    The NVRA's public inspection provision is a floor, not a ceiling, insofar as Pennsylvania is required to maintain records for at least two years; there is no prohibition concerning Pennsylvania's maintenance of records responsive to Citizen AG's request for more than (2) years, and thus, Pennsylvania could—and should—have records regarding the 2020 General Election that are responsive to Citizen AG's October 4 open records request.

73.    The NVRA compels states to remove inactive registrants based on change-of-residence grounds when the inactive registrant fails to respond to a confirmation notice and thereafter does not vote in either of the next two consecutive federal elections.

74.    There are a minimum of 277,768 inactive registrants who were subject to removal

as of November 9, 2022 that remain registered to vote in Pennsylvania.

75.     All 277,768 inactive registrants failed to respond to confirmation notices that were sent via forwarded mail prior to the 2020 General Election.

76.     In light of the NVRA's two-federal-election provision governing removals, Pennsylvania is also required to maintain records, including voter history records, for a minimum of four (4) years; otherwise, failing to maintain such records would preclude Pennsylvania from ever complying with 52 U.S.C. § 20507(d)(1)(B) as it applies to mandatory removals based on change-of-residence grounds.

77.     Removals or voter registration cancellations based on change-of-residence grounds are mandatory under both federal and Pennsylvania law. *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 767 (2018) ("**federal law makes this removal mandatory**") (emphasis added).

78.     No exception exists that otherwise would exempt this information and these records from the public inspection provisions of the NVRA.

79.     The failure to produce or otherwise make available for inspection the records Citizen AG requested in its October 4, 2024 open records request violates the NVRA's public inspection provision, 52 U.S.C. § 20507(i) that requires Pennsylvania to maintain and make available for inspection the records Citizen AG requested for a minimum of two years.

80.     Citizen AG's October 4, 2024 records request sought records that were less than two years old, but Defendants denied Citizen AG's request on October 11, 2024.

81.     As a direct and proximate result of Defendants' actions, Citizen AG has expended substantial resources, including staff time, investigating Defendants' failure to comply with their NVRA voter list maintenance obligations, communicating with Pennsylvania officials and concerned members about Defendants' failure, and researching statements made by Defendants in their correspondence.

82.     The resources expended by Citizen AG to investigate, address, research, and counteract Defendants' failure to comply with their NVRA voter list maintenance obligations are distinct from and above and beyond Citizen AG's regular, programmatic efforts to monitor state and local election officials' NVRA compliance.

83.     Were it not for Defendants' failure to comply with their NVRA voter list maintenance obligations, Citizen AG would have expended these same resources on its regular, programmatic activities or would not have expended them at all. Instead, Citizen AG diverted its resources to counteract Defendants' noncompliance and to protect members' rights.

84.     Citizen AG has been deprived of the opportunity to inspect and review records concerning voter list maintenance, which is critical towards its mission and frustrates its purpose of preserving constitutional rights and civil liberties, including those of its members such as Mr. Golembiewski, who himself is directly injured as a registered and eligible voter of the Commonwealth of Pennsylvania.

85.     Defendants' failure to comply with the NVRA's public inspection provision has caused the aforesaid injuries and harm to Plaintiffs, and Defendants will continue to refuse to comply with the NVRA resulting in more injury to Citizen AG and Mr. Golembiewski absent the injunctive relief requested herein.

86.     Plaintiffs respectfully asks this Court to issue an emergency ex parte temporary restraining order prohibiting Defendants from further violating 52 U.S.C. § 20507(i) and compel Defendants to provide public access to the records Citizen AG requested on October 4, by November 2, 2024.

### SECOND CLAIM FOR RELIEF
**VIOLATION OF THE NVRA, 52 U.S.C. §§ 20501(b),(c), (d).**
**Failure to Maintain Accurate/Current Voter Registration Lists**
*(Citizen AG and Anthony Golembiewski against all Defendants)*

87.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

88.    Section 8 of the NVRA makes mandatory and imposes a non-discretionary duty upon Defendants to establish a removal-from-registration program that "makes a reasonable effort" to remove voters who become ineligible for reasons that include, without limitation, change-of-residence grounds.

89.    At all times relevant, it is Defendants' obligation to "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. §§ 20501(b)(3), (4).

90.    Subsection (d) of the NVRA is the provision that governs removals based "on the ground that the registrant has changed residence."

91.    Under subsection (d) of the NVRA, a registrant becomes ineligible on change-of-residence grounds if the registrant "(i) has failed to respond to a notice" and "(ii) has not voted or appeared to vote . . . during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice." 52 U.S.C. § 20507(d)(1)(B).

92.    A registrant's failure to respond to a notice and failure to vote in either of the next two subsequent elections is evidence of a registrant's ineligibility based upon change-of-residence grounds.

93.    Defendants sent 753,942 registered voters confirmation notices, inclusive of return cards, via forwarded mail prior to the 2020 General Election.

94.    A total of 116,042 of 753,942 registrants responded to the confirmation notices.

95.    Of the remaining 637,900 registrants who were sent confirmation notices via forwarded mail and did not respond, Secretary Schmidt reported removing just 360,132 of 637,900 registrants—less than 50%—after the next 2 consecutive federal elections had elapsed and the statutory waiting period concluded.

96. As of November 9, 2022, each of the 277,768 inactive registrants who did not respond to confirmation notices that were sent before the 2020 General Election, but *did* vote in 2020 or 2022 should have had their registration statuses switched to "active".

97. As of November 9, 2022, each of the 277,768 inactive registrants who did not respond to confirmation notices that were sent before the 2020 General Election ***and did not*** vote in either 2020 or 2022 should have should have been removed because 52 U.S.C. § 20507(b)(2)(B) (requirement to "remove an individual from the official list of eligible voters if the individual . . . has not voted or appeared to vote in 2 or more consecutive general elections for Federal office"); *see also Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 767 (2018) ("**federal law makes this removal mandatory**.") (emphasis added).

98. As of the date of this filing, 100% of the 277,768 inactive registrants at issue in this case should be listed as "active" voters or entirely removed from the rolls.

99. Despite this, 277,768 registrants remain inactive despite there being no basis for these registrants to not have been removed or reactivated.

100. As a direct and proximate result of Defendants' failure to comply with the NVRA's list maintenance provision, 52 U.S.C. § 20507(d)(1)(B), Citizen AG has expended substantial resources, including staff time, investigating Defendants' failure to comply with their NVRA voter list maintenance obligations, communicating with Pennsylvania officials and concerned members about Defendants' failure, and researching statements made by Defendants in their correspondence.

101. The resources expended by Citizen AG to investigate, address, research, and counteract Defendants' failure to comply with their NVRA voter list maintenance obligations are distinct from and above and beyond Citizen AG's regular, programmatic efforts to monitor state and local election officials' NVRA compliance.

102.    Were it not for Defendants' failure to comply with their NVRA voter list maintenance obligations, Citizen AG would have expended these same resources on its regular, programmatic activities or would not have expended them at all. Instead, it diverted its resources to counteract Defendants' noncompliance and to protect members' rights.

103.    Citizen AG on its own and on behalf of its members, including Pennsylvania registered voter Anthony Golembiewski, have been deprived of the opportunity to inspect and review records concerning voter list maintenance, which is critical to ensuring transparency and accountability in the administration of Pennsylvania's voter rolls.

104.    As a direct and proximate result of Defendants' failure to comply with the NVRA's list maintenance provision, 52 U.S.C. § 20507(d)(1)(B), Mr. Golembiewski will be irreparably harmed as a Pennsylvania voter absent the injunctive relief requested as his fundamental right to vote will be undermined.

105.    The Supreme Court enacted the NVRA's list maintenance provisions pursuant to the constitutionally protected and fundamental right to vote, which includes *inter alia* protections against vote dilution.

106.    Plaintiffs have no other option than to seek the emergency *ex parte* relief requested in the accompanying motion for emergency *ex parte* temporary restraining order and preliminary injunction and supporting memorandum of law and points and authorities filed contemporaneously with this action.

107.    Defendants' failure to comply with the NVRA's public inspection provision has caused harm and absent the emergency *ex parte* injunctive relief requested herein, Plaintiffs will continue to be harmed irreparably.

108.    WHEREFORE, Plaintiffs respectfully request that this Court grant temporary injunctive relief and enter a temporary restraining order that enjoins Defendants from allowing any

inactive registrant that (1) failed to respond to a confirmation notice sent prior to the 2020 General Election; and (2) did not vote in either the 2020 or 2022 federal elections, to vote in the 2024 Presidential Election **unless the inactive registrant complies with the mandatory applicable provisions of 52 U.S.C. § 20507(e) on or before November 5, 2024.**[8]

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court:

(A)    Issue an order granting emergency *ex parte* temporary restraining relief that enjoins Defendants from continuing to violate the NVRA's public inspection provision and compels Defendants to produce the records responsive to Plaintiffs' October 4, 2024 open records request as required pursuant to 52 U.S.C. § 20507(i);

(B)    Enter an order declaring that Defendants' October 11, 2024 denial of Citizen AG's records request constitutes a violation of the NVRA's public inspection provision, 52 U.S.C. § 20507(i);

(C)    Issue a Temporary Restraining Order that enjoins Defendants from allowing any inactive registrant that (1) failed to respond to a confirmation notice; and (2) who did not vote in either of the next two consecutive federal elections, to vote in the 2024 Presidential Election unless the inactive registrant complies with the mandatory applicable provisions of 52 U.S.C. § 20507(e) on or before November 5, 2024.

(D)    Enter an order declaring that Defendants have violated 52 U.S.C. § 20507(d)(1)(B) by failing to remove inactive voters who received confirmation notices and did not respond, and

---

[8] While all such voters were required to have been removed beginning on November 9, 2022 pursuant to 52 U.S.C. § 20507(d)(1)(B); Mr. Golembiewski is not seeking the removal of any registrant prior to the 2024 General Election and instead, merely seeks to enforce the NVRA and ensure any voter who remains registered complies with the provisions of 52 U.S.C. § 20507(e) that govern the procedure for how to vote after not responding to a confirmation notice. The relief sought strikes a balance between protecting against the removal of voters before the election and also prevents vote dilution which also undermines the fundamental voting rights of eligible Pennsylvania voters, such as Mr. Golembiewski.

thereafter, did not vote in the next two consecutive federal elections, yet still remain registered to vote;

(E)    Issue an order compelling Defendants to affirmatively administer an adequate general program of list maintenance in compliance with the requirements of Section 8 of the NVRA in elections;

(F)    Grants any further relief that is deemed just and proper, including attorney's fees and costs incurred in bringing this action.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 29, 2024

Respectfully submitted,
1789 FOUNDATION, INC. d/b/a
CITIZEN AG and ANTHONY GOLEMBIEWSKI

By:    */s/ Gregory A. Stapp*
Gregory A. Stapp (PA #78247)
153 West Fourth Street, Suite 6
Williamsport, PA 17701
Tel: (570) 326-1077
Fax: (570) 651-9420
gstapp@stapplaw.net

By:    */s/ Rachel L. Dreher*
Rachel L. Dreher * (FL #32092)
CITIZEN AG
111 NE 1st St, 8th Floor
Miami, FL 33132
Tel: (561) 801-8661
rachel@citizenag.org
*pro hac vice* forthcoming

*Attorney for Plaintiffs*

## **VERIFICATION**

I, Eric Scharfenberger, am over the age of 18 and a Director of the 1789 Foundation, Inc. d/b/a "Citizen AG." The allegations that pertain to Citizen AG in this action, including those regarding the 2020 and 2022 EAVS Surveys, the open records request submitted on October 4, 2024, and contents of the Secretary of State for the Commonwealth of Pennsylvania's October 11, 2024 response, are based upon my personal knowledge unless otherwise indicated, and if called upon to testify as to their truthfulness, I could and would do so competently.

I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my information, knowledge, and belief.

Dated: October 28, 2024

*/s/ Eric Scharfenberger*
Eric Scharfenberger
(Original Signature retained by counsel)

## **VERIFICATION**

I, Anthony Golembiewski, am over the age of 18, a resident of Allegheny County, Pennsylvania and a registered Pennsylvania voter. The allegations that pertain to me in this action are based upon my personal knowledge unless otherwise indicated, and if called upon to testify as to their truthfulness, I could and would do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my information, knowledge, and belief.

Dated: October 28, 2024

_/s/ Anthony Golembiewski_ _____
Anthony Golembiewski
(Original Signature retained by counsel)