UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

1789 Foundation, Inc. d/b/a
Citizen AG, *et al.*,

              Plaintiffs,

        v.

Secretary Al Schmidt, *et al.*,

              Defendants.

No. 3:24-cv-1865
Hon. Robert D. Mariani

## <u>DEFENDANT SCHMIDTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF</u>

In accordance with the Order of this Court dated October 31, 2024, Defendant Secretary Al Schmidt submits this brief in opposition to Plaintiffs' Emergency *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction.

On October 29, 2024, one week before the 2024 General Election Plaintiff brought this action seeking two separate, but ostensibly related injunctions:    1) one "enjoin[ing] the Department [of State] from

continuing to refuse to make available the records Plaintiffs requested" in a public records request filed pursuant to state law (*see*, 65 P.S. § 67.101, *et seq*.); and 2) one ordering the Department to "prevent" certain "inactive" voters from casting a ballot in the upcoming 2024 election. TRO Motion, ECF No. 3 at 1.  Plaintiffs make this request based upon state public records law ("Right to Know Law," 65 P.S. § 67.101, *et seq*.), and National Voter Registration Act ("NVRA," 52 U.S.C. § 20501 *et seq*.). Plaintiff's motion must fail for a variety of reasons, not least because their complaint is facially deficient and because the claims they raise do not vest this court with jurisdiction.

To obtain preliminary injunctive relief, a movant must first satisfy two "gateway factors":  he or she must show a "significantly better than negligible but not necessarily more likely than not" chance that the case "can win on the merits," and "that [the movant] is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Once a movant satisfies both gateway factors, the district court then must consider the possibility of harm to other interested persons from the grant or denial of the injunction and the public interest, and it should determine "in its

sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* Plaintiffs do not satisfy any of these criteria.

## I.    Plaintiffs are unable to succeed on the merits.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Benner v. Wolf*, No. 20-775, Doc. 15 (M.D. Pa. May 21, 2020 (J. Jones) (citing *Apple Inc. v. Samsung Electronics Co.*, 695 F.3d 1370, 1373-74 (Fed. Cir. 2012) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008))). Here, Plaintiffs are not likely to succeed on the merits for several reasons, including that this Court does not have jurisdiction over plaintiffs' claims, and plaintiffs lack standing to bring those claims.

### a. This Court does not have jurisdiction over Plaintiffs' claims.

Plaintiffs initially argue that this court should intervene to compel Defendant Schmidt, as the Secretary of the Commonwealth, to comply with state law open records laws when responding to Plaintiff Citizen

AG's request for NVRA information.  (Complaint, ECF No. 1, ¶¶65-68, 86).  But this Court possesses no jurisdiction to compel a state to comport its actions with state law, and such claims are barred by the Eleventh Amendment to the United States Constitution. *See, Leer Elec., Inc. v. Pennsylvania, Dep't of Lab. & Indus.*, 597 F. Supp. 2d 470, 477 (M.D. Pa. 2009) ("[I]f the Court were to instruct the Pennsylvania officials on how to conform their conduct to Pennsylvania law, it would engage in a practice that 'conflicts directly with the principles of federalism that underlie the Eleventh Amendment.'" (*quoting Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 106 (1984)*)).[1]

Plaintiffs' claims under the NVRA similarly fail for lack of jurisdiction. The NVRA requires that "written notice" of a purported violation be provided "to the chief election official of the State involved," and

---

[1] Even as to their state law claim, plaintiffs are wrong on the law.  Plaintiffs contend that Defendant Schmidt, by indicating (through the Department of State), that the Department's public records response would be provided by November 12 (rather than November 11), "denied" such request.  Plaintiffs neglect to consider, though, that November 11 is Veterans' Day, a national holiday, and that a response dated November 12 is fully compliant with state law.  *See*, 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation").  As such, Plaintiffs' access to records has neither been denied nor impaired and the Department intends to respond to their request consistent with the time frame provided under the Pennsylvania Right to Know law.

authorizes the commencement of litigation "[i]f the violation is not corrected within 90 days" of such notice. 52 U.S.C. § 20510(b)(1), (2). As this Court has explained, "[n]otice is a precondition to filing suit under the NVRA." *Public Interest Legal Foundation v. Boockvar*, 370 F. Supp. 3d 449, 456-57 (M.D. Pa. 2019) (dismissing subsection 20507(i) claim for failure to provide notice of purported violation to Pennsylvania chief election official prior to filing suit). Failure to provide the proper notice under the statute deprives the Court of jurisdiction to adjudicate those claims. *See Bellitto v. Snipes*, 268 F. Supp.3d 1328, 1332 (S.D. Fla. 2017) ("[t]his Court's jurisdiction, therefore, stems directly from § 20510(b), and Plaintiffs' standing to bring suit depends upon compliance with the statute.").

Notice is sufficient under Section 20510 "when it (1) sets forth the reasons that a defendant purportedly failed to comply with the NVRA, and (2) clearly communicates that a person is asserting a violation of the NVRA and intends to commence litigation if the violation is not timely addressed." *Public Interest Legal Foundation*, 370 F. Supp.3d at 456-57. Put otherwise, "the pre-suit notice requirement [] is violation specific." *Bellitto*, 268 F. Supp.3d at 1334 (dismissing subsection 20507(i) claim

because plaintiff only sent defendant a single correspondence requesting documents under the NVRA and never notified defendant of purported NVRA violation after the request went unfulfilled); *Georgia State Conference of NAACP v. Kemp*, 841 F. Supp.2d 1320, 1335 (N.D. Ga. 2012) (dismissing plaintiff from NVRA suit because he failed to comply with notice requirement).

The NVRA also allows plaintiffs to bring suit to remedy violations that occur within thirty days of an election. 52 U.S.C. § 50210(b)(3). Citing this provision, Plaintiffs reason that they are thus exempt from the notice provision because the Department indicated that it *would respond* to their state law records request within the time permitted by state law.[2] (Complaint ¶ 51). But *compliance* with a request for records cannot plausibly form the basis for *violation* of NVRA access provisions.[3] Accordingly, they have not shown a likelihood of success as to Count I.

---

[2] As previously discussed, Plaintiffs' have miscalculated the state law timeframe for a response, and their state law remedy is beyond the jurisdiction of this court. In any event, though, plaintiffs have not been denied access to information, and have thus not pled an NVRA violation.

[3] Notably, only Plaintiff Citizen AG filed the records request at issue. (Complaint Ex.3.) Plaintiff Golembiewski makes no assertion that he provided notice to Defendants under 52 U.S.C. 50210(b).

Further, Plaintiffs do not, and cannot make any contention that any violations have occurred within thirty days prior to the upcoming November 5 election. Instead, Plaintiffs freely admit that their concerns are longstanding. TRO Brief, ECF No. 4 at 13 ("For nearly two years, Defendants have flouted their obligations under federal law and offered no reason as to why these inactive-and as of November 9, 2022, ineligible-voters remain listed as inactive."). At most, Plaintiffs cite publicly available statistics from 2020 and 2022 in support of their claims, and notably fail to make any assertion that could plausibly establish any violation, let alone one occurring within thirty days before this election. (Complaint ¶¶ 93-97).

Further, even if Plaintiffs had plausibly pled a violation relating to records access (which they have not), they may not "bootstrap" that alleged violation to the complaints that they proffer about 2020 and 2022 voter data. Instead, it is well-established that each purported NVRA violation requires separate notice under section 50210. *See*, *e.g.*, *Bellitto*, 268 F.Supp.3d at 334. Plaintiffs do not even contend that they provided notice as to their allegations regarding 2020 and 2022 voter data. As

such, this court lacks jurisdiction over their claims, and their motion for injunctive relief should be denied.

b. <u>Plaintiffs lack standing to bring this action.</u>

Even if Plaintiffs had provided notice, though, they still lack standing. The U.S. Constitution confines a federal court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. This limit is enforced by requiring that a plaintiff establish standing, which in turn requires them to demonstrate that they suffered (1) an injury in fact, (2) caused by the conduct complained of, and that is (3) capable of judicial remedy. *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 310 (3d Cir. 2022).

For injury in fact, a plaintiff cannot rely upon a general interest "in the proper application of the Constitution and laws." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992). Injuries must be personal to the plaintiff as well as "concrete" and "particularized." *Raines v. Byrd*, 521 U.S. 811, 818-19 (1997); *see also Yaw*, 49 F.4th at 311, 314-15. Here, accepting their non-conclusory allegations, Plaintiffs have not alleged any concrete, particularized injury specific to them.

The Complaint makes abundantly clear that the claimed injury here is that Plaintiffs wish to ensure that Defendants adhere to the NVRA. (Complaint ¶ 104). This is no more than the type of allegations of generalized injury that have repeatedly been deemed insufficient for Article III standing purposes.

Further, Plaintiffs' interest in "protection against vote dilution" is insufficient to confer standing. (Complaint ¶ 105). A generalized grievance that is "undifferentiated and common to all members of the public" is insufficient to establish standing. *Lujan*, 504 U.S. at 575. "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citation omitted); *see also Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336, 349 (3d Cir.), vacated as moot by *Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021).

This Court rejected similar a similar "vote dilution" theory of standing in *Bolus v. Boockvar* where a plaintiff sought to enjoin the use of ballot drop boxes, alleging that the use of these drop boxes meant that "his vote could be diluted due to voter fraud." No. 3:20-cv-01882, 2020 WL

6880960, at *3 (M.D. Pa. Oct. 27, 2020), report and recommendation adopted, 2020 WL 6882623 (M.D. Pa. Nov. 23, 2020). Initially, the Court held that this claim did not meet the basic requirements for standing, because it merely raised a generalized grievance that "could conceivably be raised by any voter in the Commonwealth." *Id*. at *4.

The Court then observed that the alleged injury to voting was "speculative and hypothetical" because "[w]holly lacking" from the complaint was "any allegation that collecting ballots in locations other than the office of the County Election Board results in fraudulent ballots." *Id*. Similarly, in *Huertas v. City of Camden*, a claim that a city zoning plan would dilute the Hispanic vote was "purely speculative" because it alleged that the plan "if approved and implemented, might displace some indeterminate number of Hispanics from the city, and thus might have the effect of diluting the Hispanic vote." 245 Fed. Appx. 168, 172 (3d Cir. 2007) (emphasis in original).

Here, Plaintiffs similarly claim that Mr. Golembiewski "will be irreparably harmed as a Pennsylvania voter" because his "fundamental right to vote will be undermined." Compl. ¶ 104. But Plaintiffs' claims ultimately rely upon the mere supposition that individuals who aren't

authorized to vote in Pennsylvania will be permitted to do so despite all protections in state and federal law that prevents such error. And, Plaintiffs' requested relief does not pretend to prevent such errors. *See*, Complaint at P.23,n.8.

Such averments are plainly insufficient to confer standing. Plaintiffs' own averments establish the Complaint's deficiency – they concede that Mr. Golembiewski's "concern" is equally shared with *all* Pennsylvania voters. *Id.* Such complaints that affect all voters equally and are generalized grievances, are incapable of conferring standing. *See Bognet*, 980 F.3d at 352 (dismissing vote "dilution" claims for lack of standing); see also *Wood v. Raffensperger*, 981 F.3d 1307, 1314-15 (11th Cir. 2020) (dismissing claim based on interest that "only lawful ballots are counted" as generalized grievance insufficient for standing).

Such interests that that "only lawful ballots are counted" or that "government be administered according to the law" are generalized interests that do not permit standing. *Wood*, 981 F.3d at 1314. And precedent "uniformly" holds that even an allegation that executive action violated a duly enacted statute "is not an injury for standing purposes." *Russell*, 491 F.3d at 134. Ultimately, there is nothing in the Complaint

(nor could there be) that identifies how any Plaintiff is affected by the conduct challenged in this case in a way that is any different from any other member of the public, and Plaintiffs thus lack standing.

Nor are Plaintiffs' claims redressable in this action. The processes that Plaintiffs take issue with are administered by counties and the relief they seek is ultimately from counties. Under Pennsylvania law, it is county registration commissions that conduct voter list maintenance. 25 P.S. § 1901. Further, it is county boards of elections that tabulate votes. 25 P.S. § 3154. While they describe relief from the Secretary—including compelling the Defendants to undertake list maintenance actions—these actions are undertaken by Counties, who are not parties to this action. *See, e.g., Zimmerman v. Schmidt*, 63 MAP 2024, 2024 WL 4284202, at *1 (Pa. Sept. 25, 2024) (finding Secretary is not an indispensable party in case challenging County ballot activity).

Finally, Plaintiff Citizen AG asserts that it has organizational or associational standing because it expended resources "to investigate, address, research, and counteract" Defendant's list maintenance processes. Compl. ¶ 82. This is not a basis for organizational standing. *See Pa. Prison Soc. v. Cortes*, 508 F.3d 156, 162-63 (3d Cir. 2007)

(describing the two possible bases for organizational standing: direct harm to the organization's interest and associational standing based on its members).

Indeed, the organization's  decision to analyze state voter registration records does not give it standing to challenge those records. *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976). Rather, it presents both a generalized grievance, see *Berg v. Obama*, 586 F.3d 234, 239-40, and a type of self-inflicted harm that does not create standing, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) ("If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear.").  Here, the fact that Citizen AG has determined to expend resources cannot of itself create standing.

Neither does the fact that its members are "lawfully registered to vote" in Pennsylvania and "concerned" about "integrity of elections" or "fear that their legitimate votes will be nullified or diluted" confer standing. Compl. ¶¶ 54, 55. These, too, are the "generalized grievances" of *Bognet* and *Bolus*, and the fact that they are shared by an organization, rather than an individual, does nothing to confer standing.  *See Pennsylvania*

*Prison Soc. v. Cortes*, 508 F.3d 156, 163 (3d Cir. 2007) (association may assert claims on behalf of its members, but *only where the record shows that the organization's individual members themselves have standing to bring those claims.*" (emphasis added) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977);*10 NAACP v. Button*, 371 U.S. 415, 428 (1963); *Public Interest Research Group v. Powell Duffryn Terminals*, 913 F.2d 64, 70 (3d Cir.1990)).

c. Plaintiffs ultimately fail to state a claim.

Ultimately, Plaintiffs' entire complaint must fail because it is based upon a misunderstanding of  the Election Assistance Commission EAVs data they cite, and that data cannot plausibly support a claim under the NVRA.  Specifically, Plaintiffs assert that 753,942 registered voters were sent confirmation notices prior to the 2020 General Election.   Compl. (ECF 1) ¶ 37-42,  Mem. Iso TRO and PI (ECF 4) Page 17.  But the numbers that Plaintiffs cite do not reflect "individuals" or "voters." Rather, as clearly identified in the report that Plaintiffs cite "[t]he number reported in A8a includes *initial notices* sent to voters who appear to have moved based upon information received pursuant to the National Change of Address program."  2022 EAVS at 187 (emphasis added).

Pennsylvania counties often send more than one notice to the same voter: an initial confirmation notice based on information from the U.S. Postal Service National Change of Address list and, if there is no response or the response comes back as undeliverable, an additional address verification notice. 25 Pa.C.S. § 1901; 4 Pa. Code § 183.6. Thus, the 753,942 figure includes multiple notices sent to the same voters.

Plaintiffs compound this error by presuming that Pennsylvania's list maintenance activities, as expressed in the EAVS report, are static. They are not. Instead, voter statuses are constantly changing, and under the NVRA, must constantly change. For example, an inactive voter could be reactivated by voting or otherwise confirming their status with the county election board. An inactive voter could re-register after having been cancelled for failure to vote in two consecutive federal elections pursuant to 25 U.S.C. § 20507(d). *See also* 25 Pa.C.S. § 1901(d). An inactive voter could die. The number of inactive voters will never be a static figure- it changes every day, and the EAVS report referenced by Plaintiffs is a mere "snapshot" in time.

Reliance on such a report cannot plausibly establish that Pennsylvania has, is or will violate the NVRA.[4]  Essentially, Plaintiffs' whole theory of there being some specified group of 277,768 inactive voters that should have been cancelled is based completely on a flawed foundation, and cannot plausibly support a claim for relief.

## II.    There Exists no Emergent or Imminent Harm Supporting an Injunction.

While Plaintiffs come to this Court at the 11th hour, seeking relief in advance of an election that is mere days away, any claimed emergency is of Plaintiffs' own making and therefore not a proper justification for injunctive relief.

Plaintiff Citizen AG alleges that it reviewed data from 2020 and 2022 in formulating its complaint.  Compl. ¶¶ 70, 92-99.  This data is reported to Congress in June of each odd-numbered year (i.e., June, 2023).  Compl. ¶ 14.  Nevertheless, Citizen AG did not seek records from Defendants in or around June, 2023.  Instead, Citizen AG waited until 32 days before

---

[4] Further, while plaintiffs seek to compel "future compliance" with the NVRA, they have offered no averment that might demonstrate that such compliance will not occur.  Rather, pursuant to both the NVRA and Pennsylvania law, inactive voters are already required to provide affirmation of their residence prior to voting.  52 U.S.C. § 20507(e); 25 Pa.C.S. § 1902.  And inactive voters who fail to vote in two consecutive (federal) general elections are cancelled.  52 U.S.C. § 20507(d); 25 Pa.C.S. § 1901(d).

the upcoming election to seek records that might shed light on the data that it reviewed. Compl. ¶ 48. Then, Plaintiffs waited until October 29 before filing this action. Because any urgency, then, is of Plaintiffs' own making, they are not entitled to emergency or preliminary relief. *See Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 405 (E.D. Pa. 2016) (explaining: "There was no need for this judicial fire drill and Plaintiffs offer no reasonable explanation or justification for the harried process they created."). Having strategically delayed the filing of this case, Plaintiffs' cry of "emergency" should be recognized for what it is: a desperate attempt to sow distrust in advance of the November 2024 election.

In fact, Plaintiffs themselves seem to recognize that there is no true "emergency" here, stating that "Mr. Golembiewski is not seeking the removal of any registrant prior to the 2024 general election and instead, merely seeks to . . . ensure any voter who remains registered complies with the provisions of 52 U.S.C. § 20507(e) . . .." Compl. P.23, n.8. Having so pled, it is unclear what "emergency" may remain for this Court to address. Indeed, not a single one of Plaintiff's allegations indicates that Pennsylvania *does not* adhere to the requirements of section 20507(e). As

such, on this point, Plaintiffs appear to seek a mere advisory opinion. Such an opinion, particularly when there is no indication that this provision is not otherwise followed, serves no purpose, let alone an "urgent" one.    As such, Plaintiffs cannot show that the requested relief is designed to prevent *any* harm, and their Motion should thus be denied.

Similarly, Plaintiffs' motion should be denied because "[n]o matter the label —"laches, the Purcell principle, or common sense"— courts "will not disrupt imminent elections absent a powerful reason for doing so." *Reschenthaler v. Schmidt*, No. 1:24-CV-1671 (issued Oct. 29, 2024) (citing *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016)).  *See also Republican Nat 'I Comm. v. Democratic Nat 'I Comm.,* __U.S.__, 140 S. Ct. 1205, 1207 (2020) (per curiam) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."); *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam) ("Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."); *Thompson*, 959 F.3d at 813 ("[W]e must

heed the Supreme Court's warning that federal courts are not supposed to change state election rules as elections approach.").

Unquestionably, altering voter lists and hamstringing lawful state election administration activities on the eve of an election visits a greater harm on the public and other parties than any harm that might be plausibly asserted by Plaintiffs.  As such, the Purcell principle and the demands of due process counsel against such arbitrary action so close to the election. For any or all of these reasons, Plaintiffs have not satisfied, and cannot satisfy, the high burden necessary to justify the extraordinary injunctive relief they seek.

For all of these reasons, Plaintiffs' Emergency *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction should therefore be denied.

October 31, 2024                           Respectfully submitted,

Michael J. Fischer                         /s/ *Thomas P. Howell*
Executive Deputy General Counsel           _____
333 Market Street, 17th Floor              Thomas P. Howell (Bar. No.
 Harrisburg, PA 17101                      79527)
 (717) 831-2847                            Deputy General Counsel
 mjfischer@pa.gov                          333 Market Street, 17th Floor
                                           Harrisburg, PA 17101
                                           (717) 460-6786
Kathleen A. Mullen                         thowell@pa.gov
Deputy Chief Counsel
306 North Office Building
Harrisburg, PA 17120                       *Counsel for Secretary of the*
(717) 783-0736                             *Commonwealth Al Schmidt*
kamullen@pa.gov

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was served on all counsel of record

on October 31, 2024, by this Court's CM/ECF system.


/s/ *Thomas P. Howell*
THOMAS P. HOWELL