## IN THE UNITES STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
## HARRISBURG DIVISION

| | |
|---|---|
| 1789 FOUNDATION INC., d/b/a CITIZEN AG, and ANTHONY GOLEMBIEWSKI, <br><br> *Plaintiffs*, <br><br> v. <br><br> AL SCHMIDT, in his official capacity as Secretary of State, and COMMONWEALTH OF PENNSYLVANIA, <br><br> *Defendants*. | Case No.   3:24-cv-01865-RDM <br><br> Hon. Robert D. Mariani |

### PLAINTIFF'S REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PLAINITFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

In accordance with the Order of this Court dated October 31, 2024, Plaintiffs, 1789 Foundation Inc., d/b/a CITIZEN AG, and Anthony Golembiewski submit this brief in response to Defendants' opposition to Plaintiff's Emergency *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction.

Absent the injunctive relief requested herein, Citizen AG and its Pennsylvania members have legitimate concerns about their fundamental right to vote being undermined. Millions of Pennsylvanians are concerned with the integrity of the electoral process and this concern translates into discouragement to participate in the

democratic process and eligible registered voters become filled with fear that legitimate votes will be nullified or canceled, or their right to cast a vote will be stripped away entirely.

Due to the irreparable harm Citizen AG has suffered and will continue to suffer, and because Mr. Golembiewski will be irreparably injured absent the injunctive relief requested herein, Plaintiffs hereby request you grant their Emergency *Ex Parte* Motion for a Temporary Restraining Order and Preliminary Injunction and asks the Court to enjoin Secretary Schmidt and the Commonwealth of Pennsylvania from ignoring the explicit and express requirements of the NVRA, and the provisions of 52 U.S.C. § 20507(e), which set forth the procedure for a registrant to vote after failing to respond to a confirmation notice.

Defendants opposition fails for the following reasons:

## I.   THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS AS ALL CLAIMS ARISE UNDER FEDERAL LAW.

Defendants' argue that this action should be dismissed based on its application of the strictest statutory compliance possible. More specifically, Defendants argue that because the RTKL permits Defendants to extend the deadline by which it must respond to an open-records request by an additional 30 days, Defendants did not violate the RTKL.

But Plaintiffs are not suing for a state law claim; Plaintiffs claim here arises pursuant to 52 U.S.C. § 20507(i)(1), which *inter alia* requires that the **State** (or

Commonwealth) maintain **"all records"** — which by definition includes the records Plaintiff requested in its October 4, 2024 request. Indeed, the NVRA's public inspection provision is straightforward:

> Each State **shall** maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, **all records** concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1) (emphasis added).

However, even assuming *arguendo* the Court were to adopt Defendants' strict adherence standard and apply it to the RTKL in this case, Plaintiffs submit that the same requisite strict adherence standard be applied to the Defendants, too.

Specifically, in its "interim response letter", the State failed to include any information regarding the cost—yet somehow, despite not knowing the cost, Defendant was able to somehow allegedly ascertain that it would not be until the week following the election that it could produce records it has in its possession. Under Pa.C.S. § 97.902(b)(2), in order for a valid 30 day extension to apply, the interim notice "**shall** include a statement notifying the requester that the request for access is being reviewed, the reason for the review, a reasonable date that a response is expected to be provided **and an estimate of applicable fees owed when the record becomes available**."

Thus, because this is a conjunctive and not disjunctive requirement, if the Court were to adopt the strict adherence standard Defendants seek to have enforced, the end result remains: the Commonwealth failed to properly invoke the 30-day extension, and more than 5 business days have elapsed and no records have been produced or otherwise made available for public inspection in violations of the NVRA's public inspection provision.

## II. PLAINTIFFS HAVE STANDING TO BRING THIS ACTION.

### A. <u>Citizen AG has Organizational Standing</u>

It is not subject to reasonable dispute that Citizen AG has sufficiently pled—and suffered—actionable harms that establish organizational standing. Specifically, the Verified Complaint alleges that Citizen AG "has expended substantial resources, including staff time, investigating Defendants' failure to comply with their NVRA voter list maintenance obligations, communicating with Pennsylvania officials and concerned members about Defendants' failure, and researching statements made by Defendants in their correspondence" and "[t]he resources expended by Citizen AG to investigate, address, research, and counteract Defendants' failure to comply with their NVRA voter list maintenance obligations are distinct from and above and beyond Citizen AG's regular, programmatic efforts . . .". ECF No. 1 Complt., ¶¶ 61-62.  The Verified Complaint also alleges that, "[w]ere it not for Defendants' failure to comply with their NVRA voter list maintenance obligations, Citizen AG would

have expended these same resources on its regular, programmatic activities or would not have expended them at all. Instead, it diverted its resources to counteract Defendants' noncompliance and to protect members' rights." *Id.* ¶ 63.

The diversion of resources is unequivocally an allegation that rises above the desirous, albeit inexistent, "generalized grievance" Defendants attempt to conspicuously attribute to the claims Citizen AG raises. *See, e.g., League of Women Voters of Florida, Inc. v. Lee*, 595 F.Supp.3d 1042 (2022) (holding voting rights organization had organizational standing because the challenged provision caused the organization to **divert resources** from its usual activities); *Mi Familia Vota v. Fontes*, 719 F.Supp.3d 929 (2024) (finding that a nonprofit advocating for its members had both representational and direct organizational standing to challenge Arizona laws that threatened its members with injury and required the organization to **divert resources** to counteract the effects of the laws); *La Unión del Pueblo Entero v. Abbott*, 614 F.Supp.3d 509 (2022) (finding Plaintiffs had organizational standing because the challenged provisions imposed significant burdens on their members and constituents, forcing the organization to **divert resources** from other programs to address these new barriers to voting); (emphasis added). *Fair Fight Action, Inc. v. Raffensperger*, 634 F.Supp.3d 1128 (2022), (holding that an organization could establish standing by showing that it had to **divert resources** from its usual projects to assist voters affected by state action); *Common Cause*

*Indiana v. Lawson,* 937 F.3d 944 (2019) (finding voter-advocacy organizations had standing because they **diverted resources** to counteract the effects of the challenged election laws); *Arcia v. Florida Secretary of State*, 772 F.3d 1335 (2014) (holding the organizational plaintiffs had standing because they had to **divert resources to** address the Secretary's programs, which constituted a concrete and demonstrable injury. (emphasis added). Accordingly, Citizen AG has pled sufficient facts to establish organizational standing

### B.  Mr. Golembiewski has Standing.

Here, Plaintiffs similarly claim that Mr. Golembiewski "will be irreparably harmed as a Pennsylvania voter" because his "fundamental right to vote will be undermined." Compl. ¶ 104. In response, the Commonwealth argues that this assertion "is based upon the mere supposition that individuals who aren't authorized to vote in Pennsylvania will be permitted to do so despite all protections in state and federal law that prevents such error." Def.'s Mot. at 11. Respectfully, Plaintiffs point out the fact that Defendants' repeated failures to abide by federal law—the very same laws for which Defendants are being sued for violating—do not serve as the protection Defendants purport these laws to be. Otherwise, we would not be here.

## C. **Plaintiffs ultimately fail to state a claim.**

Defendant states that Plaintiff has failed to state a claim based on two different theories.

First, Defendant states that Plaintiff cannot rely upon the number of 277,768 inactive voters because voters may have been sent multiple notices and therefore, the number of inactive voters may be less than the 277,768 inactive voters claimed by Plaintiff.

Plaintiff is willing to concede that, if the information provided by Defendant is true and that the 277,768 includes multiple notices to the same voter, that the number of inactive voters could possibly be less than 277,768. Yet, I think we can still all agree that the number of inactive voters is undetermined and greater than zero. Therefore, so long as even one inactive voter exists Plaintiff has stated a claim.

Next, Defendant argues that the data provided by the Election Assistance Commission EAVs data cannot plausibly support a claim under NVRA. Defendant argues the information is always changing and can therefore be inaccurate. The information provided by the Election Assistance Commission was received from each state's Secretary of State, including Pennsylvania, and therefore, is an accurate reflection of the inactive voters at a captured point in time.

Defendant's second argument fails for the same reasons as the first argument, even if Plaintiff concedes that the number is always changing and that 277,768

inactive voters may not be the exact number of inactive voters today, even considering Defendant's argument that number is unable to be undetermined at any point in time because it is always changing, I think we can all agree that the number, although undetermined, far exceeds zero and therefore, Plaintiff has stated a cause of action.

## II.    THERE EXISTS NO EMERGENT OF IMMINENT HARM SUPPORTING AN INJUNCTION

Defendant argues this is not an emergency that requires injunctive relief.  If a federal election, in which the integrity of the voter roll is being challenged, is only days away from being decided, is not an emergency, then I am not sure what Plaintiff would consider an emergency.

Defendant states that we relied upon data reviewed from 2020 and 2022 in formulating our complaint.  Defendant is correct.  Reviewing and referring to that information was necessary to show the requisite time had passed (two federal elections) for the voters to be removed.  I am not sure why Defendant thinks that referring to that information suggests we should have brought this litigation any sooner.

Plaintiff is simply requesting that the Court Order the Defendants to comply with 52 U.S.C. § 20507(e) until vote counting is complete in State of Pennsylvania and for Defendant to comply with the request previously served upon them.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court issue a temporary restraining order consistent with the terms set forth in the previously supplied proposed order.

Respectfully submitted,
1789 FOUNDATION, INC. d/b/a
CITIZEN AG and ANTHONY
GOLEMBIEWSKI

By:     /s/ *Rachel L. Dreher*
         Rachel L. Dreher * (FL #32092)
         CITIZEN AG
         111 NE 1st St, 8th Floor
         Miami, FL 33132
         Tel: (561) 801-8661
         rachel@citizenag.org
         *Attorney for Plaintiffs*
         *pro hac vice*