**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| 1789 FOUNDATION INC., d/b/a CITIZEN AG, and ANTHONY GOLEMBIEWSKI, | |
| *Plaintiffs*, | Case No. 3:24-cv-01865-RDM (Hon. Robert D. Mariani) |
| *v.* | |
| AL SCHMIDT, in his official capacity as Secretary of the Commonwealth, and the COMMONWEALTH OF PENNSYLVANIA, | |
| *Defendants*. | |

**BRIEF IN SUPPORT OF AFT PENNSYLVANIA AND THE
PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS'
MOTION TO INTERVENE AS DEFENDANTS**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

BACKGROUND .................................................................................................3

    I.    Pennsylvania's Obligations under the NVRA ...............................3

    II.   Plaintiffs' Lawsuit.............................................................................5

    III.  Proposed Intervenors........................................................................7

LEGAL STANDARD .......................................................................................10

ARGUMENT ....................................................................................................10

    I.    Proposed Intervenors are entitled to intervene as of right. ........10

         A.   The motion to intervene is timely and will not prejudice the parties.................................................................................10

         B.   Proposed Intervenors have significantly protectable interests in this litigation. ...............................................12

         C.   The disposition of this action threatens to impair Proposed Intervenors' interests. .........................................14

         D.   Proposed Intervenors' interests are not adequately represented by existing parties..........................................17

    II.   Proposed Intervenors should alternatively be granted permissive intervention. .......................................................................19

CONCLUSION .................................................................................................20

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8 ..........................22

CERTIFICATE OF SERVICE .........................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ACLU v. Philadelphia City Comm'rs*,
  872 F.3d 175 (3d Cir. 2017) ...........................................................................1, 4

*Am. Farm Bureau Fed'n v. E.P.A.*,
  278 F.R.D. 98 (M.D. Pa. 2011) ...................................................................12, 20

*Bellitto v. Snipes*,
  935 F.3d 1192 (11th Cir. 2019) .......................................................................4, 18

*Bellitto v. Snipes*,
  No. 16-cv-61474, 2016 WL 5118568
  (S.D. Fla. Sept. 21, 2016) ...........................................................................12, 13

*Berger v. N.C. State Conf. of the NAACP*,
  597 U.S. 179 (2022)...........................................................................................18

*Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*,
  54 F.3d 156 (3d Cir. 1995) ................................................................................14

*Greater Birmingham Ministries v. Sec'y of State for Ala.*,
  105 F.4th 1324 (11th Cir. 2024) ..........................................................................5

*Issa v. Newsom*,
  No. 2:20-CV-01044, 2020 WL 3074351
  (E.D. Cal. June 10, 2020).................................................................................14

*Jud. Watch, Inc. v. Ill. State Bd. of Elections*,
  No. 24 C 1867, 2024 WL 3454706
  (N.D. Ill. July 18, 2024)...................................................... 12, 13, 14, 16, 18, 19

*Jud. Watch, Inc. v. Pennsylvania*,
  524 F. Supp. 3d 399 (M.D. Pa. 2021)..................................................................5

*Kitzmiller v. Dover Area Sch. Dist.*,
  229 F.R.D. 463 (M.D. Pa. 2005) .......................................................................20

*Kleissler v. U.S. Forest Serv.*,
  157 F.3d 964 (3d Cir. 1998) ..............................................................................10

*Land v. Del. River Basin Comm'n*,
    No. 3:16-CV-00897, 2017 WL 63918
    (M.D. Pa. Jan. 5, 2017) ................................................................................11

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995) ...........................................................................11

*Paher v. Cegavske*,
    No. 3:20-CV-00243, 2020 WL 2042365
    (D. Nev. Apr. 28, 2020) ...............................................................................14

*Pennsylvania v. President U.S.*,
    888 F.3d 52 (3d Cir. 2018) ............................................................12, 14, 17

*Pub. Int. Legal Found. v. Benson*,
    --- F.Supp.3d ----, No. 1:21-cv-929, 2024 WL 1128565
    (W.D. Mich. Mar. 1, 2024) ..........................................................................4, 5

*Pub. Int. Legal Found. v. Winfrey*,
    463 F. Supp. 3d 795 (E.D. Mich. 2020) .......................................13, 15, 18, 19

*Swoboda v. Pa. Dep't of State (Off. of Open Recs.)*,
    304 A.3d 105 (Pa. Commw. Ct. 2023) ...........................................................5

*United States v. Virgin Islands*,
    748 F.3d 514 (3d Cir. 2014) .........................................................................19

*Welker v. Clarke*,
    239 F.3d 596 (3d Cir. 2001) ...........................................................................4

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare*,
    701 F.3d 939 (3d Cir. 2012) ....................................................................11, 17

**Statutes**

25 Pa. C.S. § 1404 .............................................................................................5

52 U.S.C. § 20501(a) .........................................................................................3

52 U.S.C. § 20501(b) .........................................................................................3

52 U.S.C. § 20507(i) ..........................................................................................5

52 U.S.C. § 20507(a) ......................................................................................3, 4

52 U.S.C. § 20507(b) ...........................................................................................3, 4

52 U.S.C. § 20507(c) ...........................................................................................3, 4

52 U.S.C. § 20507(d) .......................................................................................3, 4, 6

**Rules & Regulations**

4 Pa. Code § 183.14(i) ............................................................................................5

Fed. R. Civ. P. 12(b) ...............................................................................................3

Fed. R. Civ. P. 24(a)..........................................................................................2, 10

Fed. R. Civ. P. 24(b) .............................................................................3, 10, 19, 20

Fed. R. Civ. P. 24(c)................................................................................................3

**Other Authorities**

Alexandra Berzon & Nick Corasaniti, *Trump's Allies Ramp Up
    Campaign Targeting Voter Rolls*, N.Y. Times (March 3, 2024).......................16

7C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc.
    § 1909 (3d ed. 2024) .......................................................................................17

Daniel P. Tokaji, *Voter Registration and Election Reform*,
    17 Wm. & Mary Bill Rts. J. 453 (2008) ..........................................................15

Gilda Daniels, *Democracy's Destiny*, 109 Cal. L. Rev. 1067 (2021) ....................15

Lydia Hardy, *Voter Suppression Post-Shelby: Impacts and Issues of
    Voter Purge and Voter Id Laws*, 71 Mercer L. Rev. 857 (2020)......................15

Naila S. Awan, *When Names Disappear: State Roll-Maintenance
    Practices*, 49 U. Mem. L. Rev. 1107 (2019) ...................................................15

Peg McNichol, *Voter rolls targeted in run-up to November election,
    highlighted by recent efforts in Waterford*, The Oakland Press
    (March 18, 2024) .............................................................................................16

Sarah M.L. Bender, *Algorithmic Elections*, 121 Mich. L. Rev. 489
    (2022)...............................................................................................................15

iv

## INTRODUCTION

Congress enacted the National Voter Registration Act ("NVRA") to make it *easier* for qualified Americans to register and remain registered to vote. Yet Plaintiffs seek to weaponize the statute against voters of the Commonwealth by demanding this Court order Pennsylvania to undertake sweeping and baseless purges of the voter rolls. But as "its text makes clear, [the] NVRA was intended as a shield to protect the right to vote, not as a sword to pierce it." *ACLU v. Philadelphia City Comm'rs*, 872 F.3d 175, 182 (3d Cir. 2017). In direct dereliction of this command, so-called election integrity activists have filed several similar suits in states across the country in the past several months as part of a nationwide effort to remove voters from the rolls ahead of the 2024 general election, raising serious risks of erroneous removals.[1] Courts have uniformly rejected these efforts, denying claims similar to those brought by Plaintiffs here.[2] And this Court rightly denied Plaintiffs' eleventh-

---

[1] *See, e.g.*, Compl., *1789 Found., Inc. v. Fontes*, No. 2:24-cv-2987 (D. Ariz. Oct. 30, 2024), ECF No. 1; Compl., *Mussi v. Fontes*, No. 2:24-cv-1310 (D. Ariz. June 3, 2024), ECF No. 1; Compl., *RNC v. Aguilar*, No. 2:24-cv-518 (D. Nev. Mar. 18, 2024), ECF No. 1; Compl., *Pub. Int. Legal Found. v. Knapp*, No. 3:24-cv-1276 (D.S.C. Mar. 14, 2024), ECF No. 1; Compl., *RNC v. Benson*, No. 1:24-cv-262 (W.D. Mich. Mar. 13, 2024), ECF No. 1; Compl., *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 1:24-cv-1867 (N.D. Ill. Mar. 5, 2024), ECF No. 1.

[2] *See, e.g.*, Minute Entry Granting & Denying in part Mots. to Dismiss, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 1:24-cv-1867 (N.D. Ill. Oct. 28, 2024), ECF No. 68; Order Granting Mots. to Dismiss, *RNC v. Aguilar*, No. 2:24-cv-518 (D. Nev. Oct. 18, 2024), ECF No. 121; Op. & Order Granting Mot. to Dismiss, *RNC v. Benson*, No. 1:24-cv-262 (W.D. Mich. Oct. 22, 2024), ECF No. 35.

hour attempt to haphazardly remove thousands of voters just days before the November 2024 election. *See* ECF No. 20.

Plaintiffs' lawsuit continues to pose a direct threat to Proposed Intervenors—AFT Pennsylvania ("AFTPA") and the Pennsylvania Alliance for Retired Americans ("PARA")—who collectively represent hundreds of thousands of voters across Pennsylvania. AFTPA and PARA move to intervene as defendants in this case to protect their significant interests in ensuring their members throughout the Commonwealth remain registered and able to successfully vote in future elections. They also seek to protect and preserve their limited organizational resources, which would be severely strained if Plaintiffs succeed in forcing the removal of hundreds of thousands of voters from the rolls, as Proposed Intervenors would need to take immediate action to ensure their members are not wrongfully removed. Given the stakes of this case, Proposed Intervenors cannot rely on existing Defendants—state officials with distinct administrative obligations which may lead to a conflict in litigation objectives—to adequately represent Proposed Intervenors' interests. Accordingly, Proposed Intervenors are entitled to intervene as of right under Rule

24(a). Alternatively, the Court should grant permissive intervention because the requirements of Rule 24(b) are also readily satisfied.[3]

## BACKGROUND

### I.    Pennsylvania's Obligations under the NVRA

The NVRA requires states to provide simplified, voter-friendly systems for registering to vote. It establishes procedures designed to "increase the number of eligible citizens who register to vote" and that make it "possible for Federal, State, and local governments to implement [the NVRA] in a manner that enhances the participation of eligible citizens as voters." 52 U.S.C. § 20501(b)(1)–(2). Congress enacted these measures in part because it found that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation . . . and disproportionately harm voter participation by various groups, including racial minorities." *Id.* § 20501(a)(3).

To further Congress's pro-voter objectives, the NVRA imposes strict limitations on whether, when, and how a state may remove a voter from its registration rolls. *See* 52 U.S.C. § 20507(a)(3)–(4), (b)–(d). Indeed, "[o]ne of the NVRA's central purposes was to dramatically expand opportunities for voter registration and to ensure that, once registered, voters could not be removed from

---

[3] As required by Rule 24(c), Proposed Intervenors attach a proposed pleading to their motion. Should they be granted intervention, Proposed Intervenors respectfully reserve the right to file a Rule 12(b) motion.

the registration rolls" except under the statute's narrowly circumscribed procedures. *Welker v. Clarke*, 239 F.3d 596, 598–99 (3d Cir. 2001). Immediate removal is permitted only in rare circumstances, such as when a voter requests to be deregistered or is convicted of a disenfranchising felony. *See* 52 U.S.C. § 20507(a)(3)(A)–(B). Otherwise, a state may not remove voters from the rolls without complying with strict procedural safeguards that Congress imposed to minimize risks of erroneous cancellation. *See id.* § 20507(a)(3)(C), (c)–(d). Any removal program must also be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1).

Courts have repeatedly recognized that the NVRA "does not require states to immediately remove every voter who may have become ineligible." *Pub. Int. Legal Found. v. Benson*, --- F.Supp.3d ----, No. 1:21-cv-929, 2024 WL 1128565, at *11 (W.D. Mich. Mar. 1, 2024) ("*PILF*"). Rather, Congress has made the policy determination that a waiting period before removal of potentially ineligible voters is worthwhile because it reduces the risk that qualified voters will be wrongly deregistered. *See, e.g.*, *ACLU*, 872 F.3d at 178–79 (noting that "from the legislative history[,] Congress was wary of the devastating impact purging efforts previously had on the electorate" and discussing the "balance" that Congress crafted in enacting the NVRA's list maintenance); *Bellitto v. Snipes*, 935 F.3d 1192, 1198–99 (11th Cir. 2019) (similar). As a result, "Congress did not establish a specific program for states

to follow for removing ineligible voters," *PILF*, 2024 WL 1128565 at *10, nor did it demand perfection; it required only "reasonable" list maintenance efforts—and only in response to a registrant's death or change of residence. *See Jud. Watch, Inc. v. Pennsylvania*, 524 F. Supp. 3d 399, 407 (M.D. Pa. 2021) (noting the NVRA "does not require a perfect removal effort; it only requires states to make a reasonable effort" (cleaned up)).

Finally, the NVRA allows public inspection of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). But "the Act's public disclosure provision does not speak of digital storage, time pressures, or 'administrative chicanery.'" *Greater Birmingham Ministries v. Sec'y of State for Ala.*, 105 F.4th 1324, 1334 (11th Cir. 2024).[4]

## II.    Plaintiffs' Lawsuit

Plaintiffs' suit seeks information about—and the removal of—Pennsylvania voters who allegedly should have been removed from the voter rolls in *November 2022*. Compl. ¶¶ 65–108, ECF No. 1. Despite seeking relief that has theoretically

---

[4] Pennsylvania law also establishes separate procedures for disclosing and accessing voter registration records under the Pennsylvania Voter Registration Act. *See* 25 Pa. C.S. § 1404. Subject to various restrictions, an elector may request the public voter information list, and the agency shall provide the list within 10 days of receipt of those requests. 4 Pa. Code § 183.14 (i). As relevant here, the Voter Registration Act preempts Pennsylvania's Right-to-Know law. *Swoboda v. Pa. Dep't of State (Off. of Open Recs.)*, 304 A.3d 105, 112 (Pa. Commw. Ct. 2023).

been available for *two years*, Plaintiffs waited until October 29—a week before the November 2024 general election—to bring this suit and their so-called "emergency" *ex parte* motion for relief. ECF Nos. 1, 3, 4. Plaintiffs sought emergency relief ordering voter removals prior to the 2024 election, which the Court rightly denied. *See* ECF No. 20.

Plaintiffs' first claim alleges an informational injury based on the Secretary's purported failure to produce records related to the voter history and registration status of hundreds of thousands of voters who were sent address-confirmation notices by the Secretary prior to the 2020 election. Compl. ¶¶ 64–86. Plaintiffs' second claim alleges that the Secretary violated the NVRA's list maintenance requirements by failing to remove voters from the rolls following the 2022 election based on address confirmation notices sent prior to the 2020 election. *Id.* ¶¶ 87–108. Plaintiffs' primary evidence in support of this claim is an alleged discrepancy between the number of address confirmation notices sent to Pennsylvania voters before the 2020 general election and the number of voters removed from the rolls following the 2022 election. *Id.* ¶¶ 93–99. But confirmation notices are only relevant to whether a state *may* remove a voter *if* they subsequently fail to vote in the next two federal general elections. *See* 52 U.S.C. § 20507(d)(1). As relief, Plaintiffs seek a roving inquisition through the Commonwealth's voter rolls that risks disenfranchising lawful voters. *See* Compl. at 24 (requesting permanent declaratory

and injunctive relief "compelling Defendants to affirmatively administer an adequate general program of list maintenance").

## III.    Proposed Intervenors

*AFT Pennsylvania.* AFTPA is a union of education professionals—including teachers, school-related personnel, health care professionals, and higher education faculty—with a mission to champion fairness, democracy, economic opportunity, high-quality public education, healthcare, and public services for its members, their families, and their communities. *See* Ex. A, Declaration of Arthur G. Steinberg ¶¶ 2, 4 ("Steinberg Decl."). AFTPA has over 25,000 members across more than 55 local affiliates in Pennsylvania. *Id.* ¶ 2. It is committed to advancing its mission through community engagement, organizing, collective bargaining, and political activism. *Id.* ¶ 4. AFTPA and its members devote significant resources to advocating for education policies that improve the daily lives and livelihood of AFTPA's members, as well as advocating for social justice and equality under the law. *Id.* ¶ 5. Ensuring that its members can vote is critical to AFTPA's ability to advance its mission. *Id.* ¶¶ 6–7. To that end, for example, AFTPA helps its members register and vote. *Id.* ¶ 5. It has also fought to defend its members' right to vote in recent litigation. *Id.* ¶ 8.

*Pennsylvania Alliance for Retired Americans.* PARA is a 501(c)(4) nonprofit social welfare organization with over 335,000 members throughout

Pennsylvania. *See* Ex. B, Declaration of Mike Crossey ¶¶ 1–2 ("Crossey Decl."). Its membership is composed of retirees, most of whom are over the age of 65, from public and private sector unions and community organizations, as well as individual activists. *Id.* ¶ 2. PARA is a chartered state affiliate of the Alliance for Retired Americans, which represents more than 4.4. million members nationwide. *Id.* PARA's mission is to ensure social and economic justice and to protect the civil rights of retirees so they may enjoy dignity, personal fulfillment and family security as senior citizens. *Id.* ¶ 3. To advance that mission, PARA engages in efforts to protect and preserve programs vital to the health and economic security of its members. *Id.* ¶ 4. Like AFTPA, PARA dedicates significant resources to helping its members register and cast a ballot. *Id.* ¶¶ 5–6. And it, too, has fought for its members' right to vote in recent litigation. *Id.* ¶ 9.

PARA invests significant resources conducting voter education programs in Pennsylvania. *Id.* ¶ 10. Increasing voter turnout among its members is central to PARA's mission: by turning out such voters, PARA builds its constituency's political power. *Id.* ¶ 7. Because PARA's members are overwhelmingly retirees and registered to vote at extremely high rates, they are disproportionately vulnerable to voter roll purges. *Id.* ¶ 13. PARA's members also often have disabilities, illness, or mobility challenges that present barriers to voting. *Id.* ¶ 14. Because of these and other circumstances, it is common for PARA's members to be in the process of

relocating to assisted living facilities; to be closer to or move in with family; to transition to smaller homes for financial reasons; or to travel out of state to visit family or for personal travel. *Id.* As a result, and because Pennsylvania uses mailed notices to determine whether a voter is still a resident, retirees are at an increased risk of wrongful removal, making it more difficult to vote. *Id.* ¶¶ 14–15.

\* \* \*

Wrongful removals of voters from the Commonwealth's voter rolls will frustrate AFTPA's and PARA's missions of increasing voter turnout, protecting their members' and constituents' right to vote, and growing their political voice. Steinberg Decl. ¶¶ 5, 9; Crossey Decl. ¶ 17. Because AFTPA and PARA collectively have over 360,000 members and constituents, the far-ranging relief sought by Plaintiffs—removal of up to hundreds of thousands of Pennsylvanians from the voter rolls—is nearly certain to wrongfully sweep in Proposed Intervenors' members. Steinberg Decl. ¶¶ 2, 9; Crossey Decl. ¶¶ 2, 16.

Granting Plaintiffs' requested relief would also require Proposed Intervenors to divert their scarce resources—including staff and volunteer time—to assist impacted members. Proposed Intervenors would educate members and other voters about the need to confirm their voter registration status and what steps to take if they have been removed from the voter rolls. Steinberg Decl. ¶ 10; Crossey Decl. ¶ 18.

All of this would come at the expense of the organizations' other critical work, frustrating their overall missions. Steinberg Decl. ¶¶ 11–12; Crossey Decl. ¶ 19.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 24, a nonparty has a right to intervene if it can establish four requisite elements:

> [F]irst, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation.

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (discussing Fed R. Civ. P. 24(a)(2)).

Alternatively, on a timely motion, a nonparty may be permitted to intervene if it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## ARGUMENT

### I.    Proposed Intervenors are entitled to intervene as of right.

#### A.    The motion to intervene is timely and will not prejudice the parties.

"To determine whether [an] intervention motion is timely," courts in the Third Circuit consider: "(1) the stage of the proceeding; (2) the prejudice that delay may

cause the parties; and (3) the reason for the delay." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare*, 701 F.3d 939, 949 (3d Cir. 2012) (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995)).

Proposed Intervenors' motion is indisputably timely. Plaintiffs filed this lawsuit on October 29, 2024. *See* Compl. Proposed Intervenors filed the instant motion just nine days later while this case remains in its earliest stages. *See Land v. Del. River Basin Comm'n*, No. 3:16-CV-00897, 2017 WL 63918, at *3 (M.D. Pa. Jan. 5, 2017) (recognizing as timely an intervention motion filed "prior to the commencement of discovery and prior to the Court's ruling on any dispositive motion"). While Plaintiffs' emergency motion has been resolved, *see* ECF No. 20, no other substantive filings have been made and no case scheduling order has been entered.

There is also no possibility of delay or prejudice to the existing parties. Proposed Intervenors agree to abide by any schedule set by the Court and work with the existing parties with respect to future case deadlines. Given the early stages of this case and Proposed Intervenors' willingness to abide by any Court-sanctioned schedule, there is no risk of prejudice to the existing parties. *See Mountain Top Condo. Ass'n*, 72 F.3d at 370 (finding no prejudice where "there were no depositions taken, dispositive motions filed, or decrees entered during the four year period in question").

**B.     Proposed Intervenors have significantly protectable interests in this litigation.**

To satisfy "this prong, the Supreme Court has held that an applicant must assert an interest that is significantly protectable" by "demonstrat[ing] that its interest is specific to it, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Pennsylvania v. President U.S.*, 888 F.3d 52, 58 (3d Cir. 2018) (cleaned up). Satisfying this requirement is *less* demanding than establishing an Article III injury-in-fact. *See Am. Farm Bureau Fed'n v. E.P.A.*, 278 F.R.D. 98, 107 n.3 (M.D. Pa. 2011) (collecting authority). Proposed Intervenors have significantly protectable interests at stake here in the ability of their members to remain on the rolls and successfully vote, as well as in preserving their scarce resources.

*First*, as numerous courts have recognized in cases seeking to remove voters from the rolls, organizations like Proposed Intervenors have significant interests in the voting rights of their members and ensuring that those members remain registered to vote. *See, e.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *1 (N.D. Ill. July 18, 2024); *Bellitto v. Snipes*, No. 16-

cv-61474, 2016 WL 5118568, at *2–3 (S.D. Fla. Sept. 21, 2016).[5] In *Judicial Watch*, for example, two labor unions—collectively representing hundreds of thousands of workers and teachers in Illinois—were found to have "an associational interest in protecting their members from unlawful removal from the voter rolls should Plaintiffs succeed in obtaining their requested relief." 2024 WL 3454706, at *3. Likewise, in *Bellitto*, a labor union representing tens of thousands of healthcare workers and retirees in Florida was found to have a protectable interest in avoiding "the court-ordered 'voter list maintenance' sought by Plaintiffs." 2016 WL 5118568, at *1–2. The same is true here—AFTPA and PARA collectively represent hundreds of thousands of lawful Pennsylvania voters who stand to be wrongfully swept up in the voter purges threatened by this suit, thereby threatening their voting rights. *See* Steinberg Decl. ¶ 9; Crossey Decl. ¶ 16.

*Second*, Proposed Intervenors have an interest in preserving their resources, including financial and staff resources. Both AFTPA and PARA devote considerable resources to ensuring that their members are registered and able to vote. Steinberg Decl. ¶¶ 5–8; Crossey Decl. ¶¶ 5–9. At the same time, both organizations have

---

[5] *See also Pub. Int. Legal Found. v. Winfrey*, 463 F. Supp. 3d 795, 799–800, 802 (E.D. Mich. 2020) (granting organization permissive intervention in NVRA list maintenance case); Order, *Daunt v. Benson*, 1:20-cv-522 (W.D. Mich. Sept. 28, 2020), ECF No. 30 (same); Order, *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, No. 5:16-cv-683 (E.D.N.C. Dec. 1, 2016), ECF No. 26 (granting voters permissive intervention).

missions that extend beyond voting and require them to dedicate resources to other goals. *See* Steinberg Decl. ¶¶ 5, 11; Crossey Decl. ¶¶ 10–12. AFTPA and PARA would be forced to divert resources from these other goals towards helping members impacted by the voter removals Plaintiffs seek. *See* Steinberg Decl. ¶¶ 10–12; Crossey Decl. ¶¶ 16–19; *see also Jud. Watch, Inc.*, 2024 WL 3454706, at *3 (finding that labor unions had "organizational interest in avoiding adverse reallocation of resources to protect the voting rights of their members"); *Issa v. Newsom*, No. 2:20-CV-01044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (finding significant protectable interest in organizations "diverting their limited resources to educate their members on the election procedures"); *Paher v. Cegavske*, No. 3:20-CV-00243, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (finding "significant protectable interest" in "organizational intervenors' efforts to promote the franchise").

### C. The disposition of this action threatens to impair Proposed Intervenors' interests.

"To meet this requirement, an applicant 'must demonstrate that [its] legal interests may be affected or impaired[] as a practical matter by the disposition of the action.'" *President U.S.*, 888 F.3d at 59 (alterations in original) (quoting *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992)). Here, the "practical consequences of th[is] litigation," *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 162 (3d Cir. 1995), are clear and detrimental to Proposed

Intervenors' interests. Plaintiffs seek to remove up to 277,768 registrants from Pennsylvania's voter rolls, despite conceding that some of these registrants may be eligible voters. *See* Compl. ¶ 98.

The risk of eligible voters being caught up in a voter purge—particularly a rushed purge sought by outside activists—is not an idle concern. It is well-established that "voter purges have often had the effect of clearing eligible voters from state registration lists and in a manner that tends to discriminate by race and nationality." Lydia Hardy, *Voter Suppression Post-Shelby: Impacts and Issues of Voter Purge and Voter Id Laws*, 71 Mercer L. Rev. 857, 866 (2020).[6] That risk is acute where, as Plaintiffs seek here, states engage in a "maximum effort at purging voting lists," which increases the risk of "remov[ing] eligible voters." *PILF v. Winfrey*, 463 F. Supp. 3d 795, 801 (E.D. Mich. 2020) (quoting *Bellitto*, 935 F.3d at 1198). Indeed, early this year, a county clerk in Michigan errantly removed over 1,000 voters from the rolls, including an active-duty Air Force officer, at the demand

---

[6] *See also* Gilda Daniels, *Democracy's Destiny*, 109 Cal. L. Rev. 1067, 1088 (2021) ("[V]oter purges can also cause the removal or invalidation of eligible and legal voters from voter registration lists."); Sarah M.L. Bender, *Algorithmic Elections*, 121 Mich. L. Rev. 489, 503 (2022) (describing instances of voter purges removing eligible voters); Naila S. Awan, *When Names Disappear: State Roll-Maintenance Practices*, 49 U. Mem. L. Rev. 1107, 1108 (2019) (similar); Daniel P. Tokaji, *Voter Registration and Election Reform*, 17 Wm. & Mary Bill Rts. J. 453, 478 (2008) ("An overly aggressive program of removing voters believed to be ineligible threatens to result in erroneous deletion of some who are eligible.").

of outside groups.[7] Plaintiffs seek similar relief here—a haphazard and maximalist purge based on threadbare allegations that the NVRA is not being followed. The breadth of Plaintiffs' requested relief thus creates an unacceptable risk that Proposed Intervenors' members across the Commonwealth may be subjected to wrongful removal from the voter rolls. *See Jud. Watch, Inc.*, 2024 WL 3454706, at *4 (recognizing removal from voter rolls, as well as the risk that such removal is erroneous, are protectable interests that would be impaired by voter roll purge).

Moreover, any judicially-imposed purge would force AFTPA and PARA to commit resources to mitigate the impact of such voter purges, including outreach to members and assistance re-registering, and responding to removal notices. Steinberg Decl. ¶¶ 9–12; Crossey Decl. ¶¶ 12–18; *see also supra* Section I.B. The disposition of this case thus threatens the voting rights of Proposed Intervenors' members across the state, as well as both organizations' limited resources.

---

[7] *See* Alexandra Berzon & Nick Corasaniti, *Trump's Allies Ramp Up Campaign Targeting Voter Rolls*, N.Y. Times (March 3, 2024), https://www.nytimes.com/2024/03/03/us/politics/trump-voter-rolls.html; *see also* Peg McNichol, *Voter rolls targeted in run-up to November election, highlighted by recent efforts in Waterford*, The Oakland Press (March 18, 2024), https://www.theoaklandpress.com/2024/03/18/voter-rolls-targeted-in-run-up-to-november-election/.

**D.    Proposed Intervenors' interests are not adequately represented by existing parties.**

Given their critical interests at stake, Proposed Intervenors cannot rely upon the existing parties to protect their interests. "[A]n applicant's interests are not adequately represented if they diverge sufficiently from the interests of the existing party, such that the existing party cannot devote proper attention to the applicant's interests." *President U.S.*, 888 F.3d at 60 (cleaned up). Because "[t]his burden is generally treated as minimal and requires the applicant to show that representation of his interest '*may be*' inadequate," *id*. (cleaned up), courts are "liberal in finding" this requirement to be met, 7C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1909 (3d ed. 2024) (noting that "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests.").

Plaintiffs naturally do not represent Proposed Intervenors' interests, as it is their requested relief that threatens to impair those interests. And while Secretary Schmidt is on the same side of the lawsuit that Proposed Intervenors seek to join, as a state official, he does not represent the specific interests of the Proposed Intervenors, who are exclusively interested in protecting their membership's voting rights and preserving their resources. In other words, the existing State Defendants' views "are necessarily colored by [their] view of the public welfare," whereas proposed intervenors are interested only in their more "parochial" interests. *Yock*,

701 F.3d at 958 (quoting *Kleissler*, 157 F.3d at 972) (explaining proposed intervenors face a "light" burden in showing inadequate representation in such instances). The Supreme Court emphasized this point just recently, observing that public officials must "bear in mind broader public-policy implications" that private intervenors do not share. *See Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–339 & n.10 (1972)).

The divergence of interests between government officials and private parties is particularly sharp in actions like this one seeking to identify and remove voters from the rolls. *See, e.g.*, *Winfrey*, 463 F. Supp. 3d at 799–800; *Jud. Watch, Inc.*, 2024 WL 3454706, at *4–5. The NVRA imposes "twin objectives" on Secretary Schmidt and the Commonwealth, including both "easing barriers to registration and voting, while at the same time protecting electoral integrity and the maintenance of accurate voter rolls." *Bellitto*, 935 F.3d at 1198. This "naturally create[s] some tension" as to the Secretary's obligations and views. *Id.* at 1198. Indeed, as the Complaint notes, the Secretary has certain obligations to conduct list maintenance that Proposed Intervenors simply do not share. *Cf.* Compl. ¶ 95 (alleging that Defendant Schmidt already removed over 360,000 registrants pursuant to his duties under the NVRA). Proposed Intervenors do not face the same tension as the Secretary—they are exclusively interested "in preserving *their* resources and protecting the voting rights

of *their* members," while Secretary Schmidt "has no obligation to protect these specific resources or voting interests." *Jud. Watch, Inc.*, 2024 WL 3454706, at *4, *6 (granting intervention as of right in NVRA case); *see also Winfrey*, 463 F. Supp. 3d at 799–800 (granting permissive intervention in NVRA case). Because the NVRA imposes obligations on the existing Defendants that Proposed Intervenors do not share—and indeed, at times conflict with Proposed Intervenors' goals—the State Defendants do not adequately represent the interests of Proposed Intervenors.

## II.    Proposed Intervenors should alternatively be granted permissive intervention.

Rule 24(b) "provides that a 'court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.'" *United States v. Virgin Islands*, 748 F.3d 514, 524 (3d Cir. 2014) (quoting Fed. R. Civ. P. 24(b)(1)(B)). In weighing permissive intervention, courts "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* (quoting Fed. R. Civ. P. 24(b)(3)).

The relevant Rule 24(b) considerations weigh in favor of permitting intervention. As noted, this motion is timely and risks no prejudice to the existing parties. *See supra* Section I.A. Proposed Intervenors' defenses to Plaintiffs' claims and requested relief also concern common questions of law and fact with those already raised in the Complaint, including proper construction of the NVRA and the

appropriateness of Plaintiffs' demanded relief. *See generally* Proposed Answer, ECF No. 22-1. Thus, the necessary elements for permissive intervention are satisfied.

Furthermore, under Rule 24(b), courts may "consider whether the proposed intervenors will add anything to the litigation." *Kitzmiller v. Dover Area Sch. Dist.,* 229 F.R.D. 463, 471 (M.D. Pa. 2005). Proposed Intervenors will do just that. As explained, Proposed Intervenors stand in different shoes than the existing Defendants and are the only parties seeking to protect the voters who are at risk of wrongful removal from the rolls as a consequence of Plaintiffs' suit. *See supra* Section I.D. Accordingly, Proposed Intervenors will provide the Court with a distinct viewpoint unencumbered by Defendants' obligations under the NVRA to balance competing policy objectives. *Id.* Thus "the presence of the intervenors [will] serve to clarify issues and, perhaps, contribute to resolution of this matter." *Am. Farm Bureau Fed'n*, 278 F.R.D. at 111.

In sum, permissive intervention under Rule 24(b) is appropriate.

## CONCLUSION

For the foregoing reasons, the Court should grant Proposed Intervenors' motion to intervene.

Dated: November 7, 2024

Respectfully submitted,
/s/ Omeed Alerasool

Adam C. Bonin (PA 80929)
**THE LAW OFFICE OF
ADAM C. BONIN**
121 South Broad Street, Suite 400
Philadelphia, PA 19107
Telephone: (267) 242-5014
Facsimile: (215) 827-5300
adam@boninlaw.com

Lalitha D. Madduri*
Christopher D. Dodge*
Omeed Alerasool (PA 332873)
James J. Pinchak*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
lmadduri@elias.law
cdodge@elias.law
oalerasool@elias.law
jpinchak@elias.law

Makeba A.K. Rutahindurwa*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
Telephone: (202) 968-4599
mrutahindurwa@elias.law

* Petition for special admission *pro hac
vice* forthcoming

*Counsel for Proposed Intervenors AFT Pennsylvania and the Pennsylvania
Alliance for Retired Americans*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8**

The undersigned hereby certifies that this document contains 4,754 words, according to the word count feature on Microsoft Word, and therefore complies with the length limitations for briefs under Local Rule 7.8(b)(2).

*/s/ Omeed Alerasool*
Omeed Alerasool

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 7th day of November, 2024, with a copy of this document via the Court's CM/ECF system.

*/s/ Omeed Alerasool*
Omeed Alerasool