# Exhibit A

# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 1789 FOUNDATION INC., d/b/a CITIZEN AG, and ANTHONY GOLEMBIEWSKI,<br><br>  *Plaintiffs*,<br>  v.<br><br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth, and the COMMONWEALTH OF PENNSYLVANIA,<br><br>  *Defendants*. | Case No. 3:24-cv-01865-RDM<br>(Hon. Robert D. Mariani) |

## DECLARATION OF ARTHUR G. STEINBERG

I, Arthur G. Steinberg, have personal knowledge of the following facts and declare as follows:

1. I am the President of AFT Pennsylvania ("AFTPA")—the state affiliate of the American Federation of Teachers and a union of professionals. I have held that position since 2019.

2. AFTPA represents over 25,000 members in more than 55 local affiliates throughout the Commonwealth. Our membership includes teachers and school-related personnel, higher education faculty members and other state employees such as social workers.

3. AFTPA's members engage with and pay dues to local AFT affiliates, who in turn contribute funds to AFTPA as a statewide organization. Members also elect delegates to a biannual statewide convention, which elects AFTPA's leadership.

4. AFTPA's mission is to champion fairness, democracy, economic opportunity, and high-quality public education, healthcare and public services for its members, their families, and their communities. AFTPA is committed to advancing its principles through community engagement, organizing, collective bargaining, and political activism. AFTPA also advocates for sound, commonsense public education policies, including high academic and conduct standards for students and greater professionalism for teachers and school staff, as well as excellence in public service through cooperative problem-solving and workplace innovations.

5. In furtherance of its mission, AFTPA and its members devote significant resources to advocating for education policies that improve the daily lives and livelihood of the AFTPA's members, as well as advocating for social justice and equality under the law. AFTPA's efforts include facilitating phone banks and canvassing, sending weekly email communications to members about important issues, helping members register to vote, and informing and encouraging members to vote, canvass, phone bank, and generally engage civically in their communities.

6. Our efforts have been successful: most of our members and constituents are registered to vote. Voting is an extremely important activity for many of our members, who view it as their opportunity to make their voice heard and to help further AFTPA's mission.

7. AFTPA also dedicates significant resources to ensuring that its members do not face barriers to vote. Doing so is critical to AFTPA's ability to advance the welfare of its members and accomplish its advocacy goals through the political process.

8. To that end, AFTPA has fought for the voting rights of its members in recent litigation in federal and state courts. *See, e.g.*, *Eakin v. Adams Cnty. Bd. of Elections*, No. 1:22-cv-340 (W. D. Pa.); *Genser v. Butler Cnty. Bd. of Elections*, Nos. 26 WAP 2024, 27 WAP 2024 (Pa.); *Center for Coalfield Justice v. Washington County Board of Elections*, No. 28 WAP 2024 (Pa.).

9. Because AFTPA's membership consists of tens of thousands of members, it is extremely likely that the far-ranging relief sought by Plaintiffs in this case—mass removal of Pennsylvanians from the voter rolls in sweeping voter purges—will wrongfully impact AFTPA members. Naturally, this would make it more difficult for AFTPA's members to vote.

10. If voters were removed from the Commonwealth's registration lists, AFTPA would be required to repurpose its scarce resources to ensure its members

and affiliated voters have not been deregistered and help those voters who have been removed reregister. For example, AFTPA would have to proactively reach out to members to confirm their registration status, help them locate and respond to any notices, and outline the steps they would need to take to get re-registered if they were in fact removed from the rolls.

11. Such efforts would come at the expense of our core mission-critical activities: engaging in collective bargaining negotiations; pursuing workplace safety for our members across the Commonwealth; and advocating for pro-worker and pro-education legislation, including fighting against voucher programs.

12. Moreover, AFTPA would also have fewer resources to devote to our other civic engagement efforts, such as encouraging members to register, canvass, phone bank, and generally engage with their communities, thereby impairing AFTPA's efforts to maximize voter turnout of its members and further harming its mission in the process.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 11/7/2024 _____

_____
Arthur G. Steinberg

4