# Exhibit B

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| 1789 FOUNDATION INC., d/b/a CITIZEN AG, and ANTHONY GOLEMBIEWSKI,<br><br>     *Plaintiffs*,<br><br> *v.*<br><br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth, and the COMMONWEALTH OF PENNSYLVANIA,<br><br>     *Defendants*. | Case No. 3:24-cv-01865-RDM<br>(Hon. Robert D. Mariani) |

## DECLARATION OF MIKE CROSSEY

I, Mike Crossey, have personal knowledge of the following facts and declare as follows:

1. I am the President of the Pennsylvania Alliance for Retired Americans ("PARA"), a 501(c)(4) nonprofit, social welfare organization incorporated in Pennsylvania. I have held this position since 2022.

2. PARA is a chartered state affiliate of the Alliance for Retired Americans, a grassroots organization with more than 4.4 million members nationwide. PARA serves and represents over 335,000 members across Pennsylvania. PARA's membership is composed of retirees, most of whom are over

the age of 65, from public and private sector unions and community organizations, as well as individual activists.

3.      PARA's mission is to ensure social and economic justice and full civil rights for all citizens so that they may enjoy dignity, personal fulfillment, and family security as senior citizens.

4.      To advance that mission, PARA engages in significant political efforts to protect and preserve programs vital to the health and economic security of its members and all retirees. Marshaling the ability of PARA's members to vote is critical to furthering our broader political goals.

5.      Accordingly, PARA invests significant resources conducting voter registration and get out the vote efforts in Pennsylvania. This work includes encouraging and helping our members register to vote and vote successfully in elections, as well as answering any questions our members may have about how to cast their ballot and make sure that they are counted.

6.      For example, across our many events and initiatives, PARA regularly encourages its members and senior citizens in Pennsylvania generally to ensure they are registered to vote.

7.      Increasing voting among its members and constituents is central to PARA's mission: By turning out such voters, PARA builds its constituency's political power.

8.      In the lead up to elections, including the November 2024 general election, PARA conducts outreach to voters who applied for, but had not yet returned, mail-in ballots to encourage them to cast their ballots. As the election draws near, these calls instead provide voters with information on voting in person by returning their mail-in ballots at their polling place, as allowed under Pennsylvania law. And on Election Day, PARA often arranges for drivers to assist in transporting voters to their polling places.

9.      And because ensuring the ability of our membership to vote is so critical to our mission, PARA has frequently fought for the voting rights of its members in litigation. *See, e.g., Genser v. Butler Cnty. Bd. of Elections*, Nos. 26 WAP 2024, 27 WAP 2024 (Pa.); *Center for Coalfield Justice v. Washington County Board of Elections*, No. 28 WAP 2024 (Pa.).

10.      PARA also engages in significant, mission-critical activities beyond voter registration and turnout. For example, PARA invests resources in educating our members about issues of most critical importance to retirees, including Social Security, Medicare, and Medicaid benefits. To advance these voter education initiatives, PARA conducts phone banking; sends weekly outreach emails to members; participates in community workshops across the Commonwealth; and distributes fliers to the public outlining candidate positions on key issues to retirees.

3

11.    PARA engages in legislative advocacy when bills of interest to PARA are introduced and debated. And PARA frequently hosts events and town halls across Pennsylvania to address members and other retirees about such issues. These town hall forums require significant investment of our limited staff resources.

12.    Our resources for pursuing all of this work are extremely limited. We are almost exclusively a volunteer organization, and we rely on a small handful of members that are available at any given time to engage in the work. We also have extremely limited financial resources, relying upon modest membership fees.

13.    The relief requested in this lawsuit poses a direct threat to the interests of PARA and its members. Because PARA's members are registered to vote at extremely high rates, they are disproportionately vulnerable when voting rolls are purged. And many of PARA's members have been registered to vote for decades and would have no reason to believe that their registration status was in doubt.

14.    PARA's members are also uniquely vulnerable to the sort of voter purges sought by this lawsuit. Most of our members are 55 or older, and often have disabilities, illness, or mobility challenges that present barriers to voting. Because of these and other circumstances, it is common for our members to be in the process of relocating to assisted living facilities; to be closer to or move in with family; or to transition to smaller homes for financial reasons. Retirees also often travel out of the state for long periods to visit family or for personal travel.

4

15.     For the reasons just described, our members and other retirees are at a particularly acute risk of failing to receive a notice that is mailed by election officials to inform them that their voter registration is subject to cancellation. As a result, any related purging of Pennsylvania's voter rolls would disproportionately impact PARA's members. Such purges could mean that one of our members will be removed from the rolls without their knowledge only to find out they cannot vote when they try to cast a ballot, when it is too late to re-register. Moreover, because many of our members are older, they often need assistance using technology to do things like confirming their registration status online.

16.     PARA is well-aware that voter removal programs often sweep up eligible voters. Given PARA's large membership—well over 300,000 Pennsylvanians—it is near certain that a largescale and haphazard purge process would put many of PARA's members' voter registrations in jeopardy.

17.     Removing voters from the Commonwealth's voter rolls will frustrate PARA's mission of increasing voter turnout, protecting its members' and constituents' right to vote, and growing its political voice.

18.     If the Court granted Plaintiffs' requested relief, PARA would have to divert its scarce financial and staff resources to ameliorating the harm of such a purge. This would require committing resources to educating members about how to

confirm their registration status and assisting purged voters with re-registering and ultimately casting a ballot.

19.    Such efforts would require PARA to divert resources from other essential tasks to focus on ensuring members remain registered and explaining what to do if they are removed from the rolls, thereby frustrating its overall mission and the ability of its members to vote. For example, we would have to redirect our limited staff resources away from advocating for legislation that protects social security and ensures healthcare towards assisting members who lose their registration status, or who require assistance confirming their registration. This reallocation of our resources necessarily harms our mission to ensure the health and security of our senior citizens.

I declare under penalty of perjury that the foregoing is true and correct.

11/7/2024

Executed on: _____

*Mike Crossey*

_____

Mike Crossey

6