**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| 1789 FOUNDATION INC., d/b/a CITIZEN AG, and ANTHONY , <br><br> *Plaintiffs*, <br><br> v. <br><br> AL SCHMIDT, in his official capacity as Secretary of State, and COMMONWEALTH OF PENNSYLVANIA, <br><br> *Defendants*. | Case No.  3:24-cv-01865-RDM |

<u>**PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT COMPLAINT**</u>

Pursuant to Federal Rule of Civil Procedure 15(a)(2) and (d), Plaintiffs 1789 Foundation, Inc. d/b/a Citizen AG ("Citizen AG") and Anthony Golembiewski ("Mr. Golembiewski") (collectively, "Plaintiffs"), respectfully submit this Motion for Leave to Supplement their Complaint.[1] (ECF No. 1).

<u>**BACKGROUND**</u>

Plaintiffs commenced this two-count action pursuant to the National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq*. ("NVRA " or "Act") on October 29, 2024. (ECF No. 1). The Complaint alleges that Defendant Al Schmidt, in his official capacity as Secretary of State ("Defendant Schmidt") violated federal election laws by failing to comply with the NVRA's public inspection[2] and list maintenance provisions regarding the failure to either (1) reactivate registered voters who should not be inactive, or alternatively, (2) the failure to remove inactive registrants who became ineligible voters after failing to vote in the 2022 Midterm Election.

---

[1] Plaintiffs proposed supplemental Complaint is attached hereto as <u>Exhibit 1</u>.
[2] Plaintiffs recognize the erroneous calculation as to the date by which a response was due, as identified by the Court in its November 4, 202 Order. (ECF No. 21).

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

The standard under Fed. R. Civ. P. 15(d) is "essentially the same" as that under Fed. R. Civ. P. 15(a) and leave to supplement should be granted unless it causes undue delay or undue prejudice. *Abney v. Younker*, No. 1:13-CV-1418, 2016 WL 1559154, at *1-2 (M.D. Pa. Apr. 18, 2016). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' *Foman v. Davis*, 371 U.S. 178, 182 (1962).

While an amended pleading covers matters that occurred at or before the time the original pleading was filed, a supplemental pleading covers matters that have occurred *after* a plaintiff files his Complaint. *See* Jack H. Friedenthal *et al.*, Civil Procedure 321-22 (5th ed. 2015). A supplemental pleading can be used to add related claims that have newly arisen. *See Griffin v. County School Board of Prince Edward County*, 377 U.S. 218, 227 (1964) (Rule 15(d) "plainly permits supplemental amendments to cover events happening after suit . . . . Such amendments are well within the basic aim of the rules to make pleadings a means to achieve an orderly and fair administration of justice.").

## PROCEDURAL BACKGROUND

Plaintiffs should be granted leave to supplement their Complaint because the facts sought to be added to their Complaint directly relate to, and arise from, the allegations upon which Plaintiffs' original Complaint is based.

On October 4, 2024, Citizen AG submitted an open records request to the Commonwealth seeking records, documents, and/or information Secretary Schmidt is required to maintain and make available for public inspection upon request pursuant to the NVRA's public inspection provision. (Complt. ¶ 43 (citing 52 U.S.C. § 20507(i)).

On October 4, 2024, Plaintiff 1789 Foundation, Inc. d/b/a "Citizen AG" submitted a public records request to Defendant Al Schmidt's office concerning the inspection of certain voter-related records required to be made available for public inspection pursuant to the National Voter Registration Act, 52 U.S.C. § 20507(i) ("NVRA"). *See* Exhibit 2.

On October 11, 2024, Secretary Schmidt's office responded by advising it needed a 30-day extension in order to respond. *See* Exhibit 3. On November 12, 2024, Defendant Schmidt's office advised that Citizen AG's request "is granted and enclosed is a record responsive to your request." *See* Exhibit 4.

The records Secretary Schmidt provided in granting Citizen AG's October 4, 2024 request contain a material admission that Secretary Schmidt has irrefutably violated the NVRA. More specifically, Item No. 8 on Citizen AG's October 4, 2024 records request asks Secretary Schmidt to make available for public inspection or otherwise produce the following:

> Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018 and November 3, 2020 who did not respond to the notice, did not vote on November 3, 2020, did not vote on November 8, 2022, and have not been removed from Pennsylvania's voter rolls as of present.

*See* Exhibit 2.

In response thereto, Secretary Schmidt admits that at least 77,188 registered Pennsylvania voters meet the aforesaid criteria above:

| 8 | Total from 6a not cancelled - overall total | | | 53588 |
|---|---|---|---|---|
| | Total from 6b not cancelled - overall total | | | 23600 |

*See* <u>Exhibit 4</u>.  It is this newly learned information that had not been known at the time this action was filed with which Plaintiffs now seek to supplement their Complaint.

<u>**ARGUMENT**</u>

Leave to supplement should be granted "unless it causes undue delay or undue prejudice[]" and neither basis exists in this case. *Abney*, 2016 WL 1559154, at *1-2; *see also Foman*, 371 U.S. at 182.

**I.  Granting Leave to Supplement Will Not Result in Undue Delay**

As whether granting leave to supplement would result in undue delay, Plaintiffs submit the relief requested actually expedites the litigation. By granting leave to supplement, Plaintiffs will not be compelled to file a separate action based on Defendant Schmidt's admitted non-compliance with the NVRA, which would result in unnecessary delay arising out of motions practice and the consolidation of two actions that arise out of the same common nucleus of operative fact.

**II.  Granting Leave to Supplement Does Not Unfairly Prejudice Defendants**

Granting the relief requested would not unfairly prejudice Defendants, either. Plaintiffs made clear in their Complaint that the information obtained on November 12 was not only sought prior to commencing this action, but obtaining this information was critical to determining whether the Commonwealth had violated the NVRA's list maintenance requirements. Plaintiffs explain this in paragraphs 34 and 35 of their Complaint, alleging as follows:

<u>**Paragraph 34**</u>:     The EAVS survey responses Pennsylvania's Secretary of State provided for both the 2020 and 2022 EAVS Reports include, without limitation, the following information:

     i.     how many confirmation notices the Commonwealth sent via forwarded mail;

     ii.    how many voters responded to the notices and whether the response indicates that a voter has or has not moved;

     iii.   the number of confirmation notices that were returned undeliverable;

     iv.    how many voters are listed as active/inactive;

     v.     the number of registrants the Commonwealth removed from its voter rolls;

vi.    the reasons for removal; and

vii.    how many voters were removed for each respective reason.

**Paragraph 35:**        These reports together provide the relevant information needed to determine whether Pennsylvania has complied with its federal obligations concerning list maintenance **with the exception of one variable—and that variable is the specific information contained in the records Citizen AG requested on October 4, 2024—a request which was denied[3] on October 11, 2024.**

(emphasis added).

Granting leave ensures that the case can remain on the current schedule and that Plaintiffs' legal challenges regarding the Commonwealth's non-compliance with its list-maintenance obligations under the NVRA (Count II) can be litigated together in a single proceeding. In contrast, should this Court decline to grant Plaintiffs leave to supplement their Complaint, Plaintiffs would have to file a separate action that includes the Commonwealth's November 12, 2024 admission that concedes Defendants have failed to remove 77,188 registered voters who are ineligible to vote as of November 9, 2022.

Each of these 77,188 voters was sent a confirmation notice prior to the 2020 General Election, did not respond to their confirmation notice, which was also sent via forwarded mail, not respond to their confirmation notice and thereafter, did not vote in either of the next two consecutive federal elections.[4]  This would give rise to an unnecessary delay that would postpone the pending litigation by months and serve no purpose other than to frustrate the judicial economy of this Court and the respective parties' resources.

---

[3] Plaintiffs are cognizant of the Court's order holding that Defendants' failure t produce the records by October 11, 2024 does not constitute a denial and this citation merely uses the verbatim language alleged in the Complaint.

[4] The two federal elections remain the 2020 General Election and the 2022 Midterm Election.

Finally, Plaintiffs have informed the Court and all parties of their intent to seek the relief requested herein, and as of the date of this filing, Plaintiffs have not received any opposition or objection to the relief sought.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Plaintiffs' leave to file their proposed supplemental Complaint. A copy of the proposed supplemental Complaint is attached here

Dated: December 27, 2024

Respectfully submitted,
1789 FOUNDATION, INC. d/b/a
CITIZEN AG and ANTHONY GOLEMBIEWSKI

By:  /s/ *Rachel L. Dreher*
Rachel L. Dreher * (FL #32092)
CITIZEN AG
111 NE 1st St, 8th Floor
Miami, FL 33132
Tel: (561) 801-8661
rachel@citizenag.org
*admitted *pro hac vice*

*Attorney for Plaintiffs*

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| 1789 FOUNDATION INC., d/b/a CITIZEN AG, and ANTHONY GOLEMBIEWSKI, | Case No.  3:24-cv-01865-RDM |
| *Plaintiffs*, | **[PROPOSED] SUPPLEMENTAL COMPLAINT** |
| v. | 1. **Injunctive Relief** |
| AL SCHMIDT, in his official capacity as Secretary of State, and COMMONWEALTH OF PENNSYLVANIA, | 2. **Declaratory Judgment**<br>3. **Violation of the National Voter Registration Act, 52 U.S.C. § 20501, *et seq.*** |
| *Defendants*. |  |

Plaintiffs 1789 Foundation, Inc. d/b/a Citizen AG ("Citizen AG") and Anthony Golembiewski ("Mr. Golembiewski") (collectively, "Plaintiffs"), by and through undersigned counsel and pursuant to the National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq.* ("NVRA" or "Act"), file this Supplemental Complaint for declaratory relief against Defendants Al Schmidt, in his official capacity as Pennsylvania's Secretary of State, and the Commonwealth of Pennsylvania (collectively, "Defendants", "Pennsylvania", or the "State") on the grounds set forth as follows:

### NATURE OF THE ACTION

This lawsuit seeks to enforce the public inspection and list maintenance provisions of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20501 *et seq.*, requiring Pennsylvania to maintain accurate voter registration lists by removing ineligible voters based on residency changes. Under the NVRA, voter removal is mandated when: (1) a registrant provides written confirmation of a move, or (2) a registrant fails to respond to a confirmation notice and does not vote in the next two federal elections. 52 U.S.C. § 20507.

1

The NVRA provides registrants who fail to respond to confirmation notices significant protections against pre-mature or improper removal; the most notable of which is its statutory waiting period that gives registrants who don't respond multiple years to multiple minutes' worth of action—action that, once taken by the registrant, frees any worry of removal.

Of course, there must be some means of delineating voters who respond to their confirmation notices and those who do not. For that reason, those who do not respond to confirmation notices are referred to as "inactive" registrants. The term "inactive" does not mean the registrant is not eligible to vote or otherwise prohibited from voting—in fact, all inactive registrants are registered voters. An "inactive" registration status is merely a demarcation attributed to registrants who do not respond to confirmation notices that remains in place during the multiple *years* the registrant has to take the simple action of confirming his or her residence by either (A) notifying their registrar, which the registrant can do both in person or even in writing; or (B) by simply voting in one of the next two federal elections.

The NVRA, however, is also cognizant of the need to protect the fundamental right to vote held by active registered voters, too. For that reason, registrants who have not responded to their confirmation notice and then do not vote in either of the next two federal elections (i.e., the statutory waiting period) must be removed from the voter rolls. 52 U.S.C. § 20507(b)(2)(B) (requirement to "remove an individual from the official list of eligible voters if the individual . . . has not voted or appeared to vote in 2 or more consecutive general elections for Federal office"); *see also Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 767 (2018) ("**federal law makes this removal mandatory**.") (emphasis added).

According to the statistics Pennsylvania's Secretary of State reported to the Election Assistance Commission ("EAC"), there are at least 277,768 inactive registrants who were sent confirmation notices prior to the 2020 General Election via forwarded mail who did not respond,

| | |
|---|---|
| | **Deleted:** (e.g., 2 federal elections ago) |

and at least 2 federal elections have since elapsed—yet all 277,768 of 277,768 names remain registered to vote in the November 5, 2024 federal election.

Upon learning this on or about October 3, 2024, Citizen AG immediately submitted an open-records request on October 4, 2024 and pursuant to the NVRA's public inspection provision and Pennsylvania state law, requesting to inspect or receive copies of records reflecting how many of the subject 277,768 voters had cast a ballot in the 2020 General Election or the 2022 Midterm Election. *See* Exhibit 1.

On October 11, 2024, Secretary Schmidt's office sent an "interim response" stating that the Commonwealth would require an additional thirty (30) days to comply with Citizen AG's request and provided an expected response date of November 12, 2024. *See* Exhibit 2. On November 12, 2024, Defendant Schmidt's office advised that Citizen AG's request "is granted and enclosed is a record responsive to your request." *See* Exhibit 3. But despite granting the request, Secretary Schmidt has failed to produce responsive data or information to all of the inquires Citizen AG requested.

More specifically, Secretary Schmidt's responsive production omitted the number of voters who responded to their confirmation notices by informing the Secretary of State that their address was valid (i.e., the voter still lives at their registered voting address and therefore, should have their status reactivated). This variable is important because a response without indication as to whether the response advised the voter still resided at the address at which they are registered to vote results in the reactivation of the voter, while a response indicating that the address was invalid would result in the immediate removal of the voter.

In addition to the failure to produce all responsive information requested by Citizen AG, Secretary Schmidt's response contains inconsistencies and a material, irrefutable admission that Defendants have violated the NVRA's list maintenance provisions. Item No. 8 on Citizen AG's

3

October 4, 2024 records request asks Secretary Schmidt to make available for public inspection or otherwise produce the following:

> Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018 and November 3, 2020 who did not respond to the notice, did not vote on November 3, 2020, did not vote on November 8, 2022, and have not been removed from Pennsylvania's voter rolls as of present.

*See* Exhibit 1.

In response thereto, Secretary Schmidt admits that at least 77,188 registered Pennsylvania voters meet the aforesaid criteria above:

| 8 | Total from 6a not cancelled - overall total | | | 53588 |
|---|---|---|---|---|
| | Total from 6b not cancelled - overall total | | | 23600 |

*See* Exhibit 3.  The information requested in Item No. 8 is definitionally the standard and criteria the NVRA sets forth that requires the Commonwealth to remove any voter defined therein, and as shown above, Secretary Schmidt has admitted that at least 77,188 registrants were not removed on or before the November 5, 2024 federal election.

Plaintiffs now commence this action to redress Defendants' failure to timely produce responsive records, data, or information Citizen AG's lawful request sought—all of which records are required to be maintained and made available pursuant to the NVRA's public inspection provision, 52 U.S.C. § 20507(i). This action also s to protect the fundamental right to vote for all Pennsylvanians and to ensure no eligible voter's fundamental right to vote is undermined because of vote dilution caused by Defendants' failure to maintain accurate voter rolls. Absent the relief requested herein, there is no way to enforce the NVRA's mandatory list maintenance provisions as to, at a minimum, the 77,188 voters Secretary Schmidt has admittedly failed to remove in violation of 52 U.S.C. § 20507(b)(2)(B). (Setting forth requirement to "remove an individual from the official list of eligible voters if the individual . . . has not voted or appeared to vote in 2 or more

4

---

Formatted: Indent: First line:  0", Don't adjust right indent when grid is defined, Don't snap to grid

Deleted:  Under Pennsylvania law, this constitutes a denial as November 12, 2024 is more than  30 days following the five business days allowed for in section 901. *See* 65 Pa. Stat. § 67.902(b) ("If the date that a response is expected to be provided is in excess of 30 days, following the five business days allowed for in section 901, the request for access shall be deemed denied unless the requester has agreed in writing to an extension to the date specified in the notice.").

Deleted: denial

Deleted: of

Deleted: that

Deleted:

Deleted: and

Deleted: against improper removal

Deleted: injunctive

Deleted: distinguish which of the 277,768 registrants currently registered to vote as active, eligible voters and how many of the 277,768 registrants should have

Deleted:  been removed from the voter rolls pursuant to

consecutive general elections for Federal office"); *see also Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 767 (2018) ("**federal law makes this removal mandatory**.") (emphasis added).

Citizen AG and its Pennsylvania members have legitimate concerns about the fundamental right to vote being undermined, and when state officials blatantly ignore and violate their duties under well-established federal law, judicial intervention is the only means left to ensuring we maintain the integrity of our electoral process.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, and in particular, 52 U.S.C. §§ 20507 and 20510(b).

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because at least one defendant resides in this district and all defendants reside in Pennsylvania, and because a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

3.     The allegations raised herein pertain to one or more violations of the NVRA that occurred within thirty (30) days of a federal election, including without limitation, Defendant's spectacularly caviler failure to maintain accurate voter rolls; so much so that tens of thousands of ineligible voters remained registered as "inactive" more than two (2) years after their removal was compelled, including at a time and throughout the entirety of a Presidential election. As such, since the violations occurred within thirty (30) days of a federal election, any notice-related conditions precedent to maintaining this action are waived entirely pursuant to 52 U.S.C. § 20510(b)(3).

## PARTIES

4.     Plaintiff 1789 Foundation, Inc. d/b/a Citizen AG ("Citizen AG") is a nonprofit organization organized under the laws of the State of Florida dedicated to educating Americans about their rights and advocating, protecting, and preserving American civil liberties and

---

Deleted: , those concerns are only exacerbated

Deleted: Millions of Pennsylvanians are concerned with the integrity of the electoral process and this concern translates into discouragement to participate in the democratic process and eligible registered voters become filled with fear that legitimate votes will be nullified or diluted, or their right to cast a vote will be stripped away entirely.

Deleted: Due to the irreparable harm Citizen AG has suffered and will continue to suffer (as detailed below), and because Mr. Golembiewski will be irreparably injured absent the injunctive relief requested herein, Plaintiffs also file an Emergency *Ex Parte* Motion for a Temporary Restraining Order and Preliminary Injunction that asks the Court to enjoin Secretary Schmidt and the Commonwealth of Pennsylvania from ignoring the explicit and express requirements of the NVRA, and specifically, the public inspection provisions requiring the Commonwealth to make the records Citizen AG requested available for inspection pursuant to 52 U.S.C. § 20507(i), and the provisions of 52 U.S.C. § 20507(e), which set forth the procedure for a registrant to vote after failing to respond to a confirmation notice. ¶

Deleted: and therefore, any

Formatted: Font: 12 pt, Complex Script Font: 12 pt

constitutional rights through an array of means that includes without limitation, engaging in litigation. Citizen AG, through its associational standing established by its Pennsylvania members, and co-Plaintiff Anthony Golembiewski, seek declaratory relief pursuant to 52 U.S.C. § 20510(b)(1), which authorizes a private citizen to bring this suit to enforce the NVRA, and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

Deleted: and injunctive

5.      Plaintiff Anthony Golembiewski is an adult resident, a Citizen AG member, and an active registered voter of Allegheny County whose fundamental right to vote was undermined directly and proximately because of Defendants' noncompliance with the NVRA.

Deleted: is in jeopardy of
Deleted: being

6.      Defendant Commonwealth of Pennsylvania is covered by the requirements of the NVRA with respect to elections for Federal office. *See* 52 U.S.C. § 20502(4), § 20503(b).

7.      Defendant Al Schmidt is the Secretary of State for the Commonwealth of Pennsylvania. Section 10 of the NVRA requires that "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this Act." 52 U.S.C. § 20509. Pennsylvania law establishes that the Secretary of State is "the chief state election officer for the purposes of the National Voter Registration Act of 1993." 25 Pa. Stat. § 2621(a). Secretary Schmidt is being sued in his official capacity.

## STATUTORY BACKGROUND

8.      Section 8 of the NVRA provides "each State shall … conduct a general program that makes a reasonable effort to remove … from the official lists of eligible voters" the names of voters who have become ineligible by reason of . . . a change of residence. 52 U.S.C. § 20507(a)(4).

9.      With respect to voters who have changed residence, Section 8 provides that no registration may be cancelled on that ground unless the registrant either (1) confirms this fact in writing, or (2) fails to timely respond to an address-confirmation notice described by the statute (the "Confirmation Notice"). 52 U.S.C. § 20507(d)(1)(B).

10.    A Confirmation Notice is a "postage prepaid and preaddressed return card, sent by forwardable mail," that asks the registrant to confirm his or her residence address. *Id*. at (d)(2).

11.    If a registrant fails to respond to a Confirmation Notice, and then fails to vote (or contact the registrar) during a statutory waiting period extending from the date of the notice through the next two general federal elections, the registration is cancelled. *Id*. at (d)(1)(B). These cancellations are mandatory under federal law. *Husted v. A. Philip Randolph Inst*., 584 U.S. 756, 767 (2018) ("**federal law makes this removal mandatory.**") (emphasis added).

12.    A voter's registration status is referred to as "inactive" during the statutory waiting period, which runs from the notice mailing until the day following the second consecutive federal election that occurs thereafter. 52 U.S.C. § 20507(b)(2)(B).

13.    A voter with an inactive registration may still vote even on election day of the second federal election, so long as he or she complies with the requirements set forth under 52 U.S.C. § 20507(d)(2)(A). Accordingly, inactive voters are still registered voters.

14.    In June of each odd-numbered year, the U.S. Election Assistance Commission ("EAC") is required by law to report to Congress its findings relating to state voter registration practices. 52 U.S.C. § 20508(a)(3).

15.    Federal regulations require states to provide various kinds of NVRA-related data to the EAC for use in its biennial report. 11 C.F.R. § 9428.7.

16.    Section 8(i) of the NVRA grants the public the right to request information concerning voter list maintenance and provides in pertinent part:

> Each State shall maintain for at least 2 years and shall make available for public inspection"
> and copying "all records concerning the implementation of programs and activities
> conducted for the purpose of ensuring the accuracy and currency of official lists of eligible
> voters.[1]

---

[1] 52 U.S.C. § 20507(i).

17.     Though not purporting to be an exhaustive list, Section 8(i)(2) provides specific examples of responsive records: "The records maintained . . . shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made." 52 U.S.C. § 20507(i)(2).

18.     The NVRA provides that "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter." 52 U.S.C. § 20509. Pennsylvania law designates the Secretary of State as this official. 25 Pa. Stat. § 2621(a).

19.     The NVRA affords a private right of action to any "person who is aggrieved by a violation" of the Act. 52 U.S.C. § 20510(b). Ordinarily, a private litigant is required to send notice of a violation to the chief State election official 90 days prior to commencing a lawsuit. *Id.* § 20510(b)(1), (2). However, "[i]f the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State . . . before bringing a civil action . . .". *Id.* § 20510(b)(3)

20.     Because Defendants violated the NVRA within thirty (30) days of a federal election, as more fully explained below, the notice requirement is waived entirely. *Id.*

## STATEMENT OF FACTS

**I.  Background of the NVRA**

21.     The NVRA has two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls. *See* 52 U.S.C. § 20501(b).

22.     To achieve the latter goal, the NVRA requires States to "conduct a general program that makes a reasonable effort to remove the names" of voters who are ineligible "by reason of" *inter alia* a change in residence. 52 U.S.C. § 20507(a)(4).

23.     The NVRA contains two (2) express requirements that must be met before a State removes a name from its voter rolls based on change-of-residence grounds. 52 U.S.C. §§ 20507(b), (c), (d). These requirements exist to protect the fundamental right to vote held by those who otherwise could potentially be removed improperly.

24.     On the other hand, Congress was also cognizant of the importance of ensuring eligible voters' fundamental right to vote is also protected against vote dilution. For that reason, the NVRA makes it mandatory that the States remove voters, based on change-of-residence grounds, when these two requirements are met.

25.     The first and most important of the two requirements is a prior notice obligation. Before the NVRA, some States removed registrants without giving any notice.  But this is no longer an issue because the NVRA limits States and only permits the removal of a registrant's name from the rolls based upon change-of-residence grounds to situations when (A) the registrant confirms in writing that he or she has moved; or (B) the registrant fails to return the preaddressed, postage prepaid "return card" that is included with the confirmation notices sent by the States via forwarded mail to registrants the State suspects may have moved out of the district in which they are registered.

26.     These return cards provide the explicit instructions as to what a registrant who receives a confirmation notice but has not moved must do in order to remain on the voter rolls: the voter must either (1) return the card confirming his or her residence or vote in at least one of the next two general federal elections.  52 U.S.C. § 20507(d)(2)(A).

27.     For the benefit of those who have moved, the return card also contains "information concerning how the registrant can continue to be eligible to vote." 52 U.S.C. § 20507(d)(2)(B).

28.     These safeguards protect against the improper removal of a registered voter on change-of-residence grounds; however, the fundamental right to vote must also be protected for

those who remain actively registered, too. To accomplish this, the NVRA makes mandatory the removal of all voters who (A) fail to return the card confirming his or her residence and (B) do not vote in at least one of the next two general federal elections.

29.    The removal of voters who do not return the card confirming his or her residence and do not vote in either of the next two federal elections is mandatory.

**II.  The Election Administration Commission's EAVS Reports**

30.    The U.S. Election Assistance Commission ("EAC") is an independent federal agency dedicated to improving the administration of elections across the country.

31.    Since 2004, the EAC has furthered its objectives by conducting the Election Administration and Voting Survey ("EAVS") following each federal general election.

32.    The EAVS asks Pennsylvania and the remaining 49 U.S. states, as well as five U.S. territories—American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands—to provide data about the ways Americans vote and how elections are administered.

33.    The EAVS is sent to the chief election officials of the states, which here, is Secretary Schmidt, who then provides responses to the survey's questions that cover various aspects of Pennsylvania's election administration.

34.    The EAVS survey responses Pennsylvania's Secretary of State provided for both the 2020 and 2022 EAVS Reports include, without limitation, the following information:

    i.    how many confirmation notices the Commonwealth sent via forwarded mail;

    ii.    how many voters responded to the notices and whether the response indicates that a voter has or has not moved;

    iii.    the number of confirmation notices that were returned undeliverable;

    iv.    how many voters are listed as active/inactive;

    v.    the number of registrants the Commonwealth removed from its voter rolls;

vi.    the reasons for removal; and

vii.    how many voters were removed for each respective reason.

35.    These reports and Defendant Schmidt's November 12, 2024 response to Item No. 8 on Citizen AG's October 4, 2024 open records request, provide the relevant information needed to determine whether Pennsylvania has complied with its federal obligations concerning list maintenance obligations.

## III.    Pennsylvania's Self-Reported Voter-Related Statistics

36.    In reviewing Defendants'[2] responses to the 2020 EAVS Report[3], Pennsylvania sent 753,942 registered voters confirmation notices (inclusive of return cards) via forwarded mail prior to the 2020 General Election.

37.    Of the 753,942 confirmation notices sent to registered Pennsylvania voters, only 116,042 registrants responded.

38.    Based on these figures, a minimum of 637,900 registrants were sent confirmation notices via forwarded mail and did not respond, resulting in their registration statuses being switched to "inactive" prior to the 2020 General Election.

39.    After the 2022 Midterm Election, Pennsylvania reported to the EAC[4] that it removed 360,132 registrants of the 637,900 registrants who did not respond to the confirmation notices sent to them by the Commonwealth via forwarded mail.

40.    When taking the 637,900 registrants who did not respond to their confirmation notices before the 2020 General Election and subtracting the 360,132 registrants that Secretary

---

[2] Reference to actions taken by "Defendants" shall be construed to mean the Commonwealth of Pennsylvania and its Secretary of State and does not mean Al Schmidt as an individual, who is only sued in his official capacity.
[3] *See* Exhibit 5, 2020 EAC EAVS Report.
[4] *See* Exhibit 6, 2022 EAVS Report.

Schmidt reported the Commonwealth removed after the next 2 federal elections, there remains a total of 277,768 registered voters on Pennsylvania's voter rolls as of the filing date.

41.    Due to the fact that it is statistically improbable, if not impossible, that 277,768 out of 277,768 inactive registrants reactivated their registration statuses in compliance with 52 U.S.C. § 20507(e), and in light of the threat posed by inactive registrants remaining on the voter rolls Congress sought to eradicate with the enactment of the NVRA, Citizen AG submitted sought records to determine how many of the 277,768 inactive registrants reactivated their registration statuses by voting in the 2020 or 2022 Midterm Elections.

### IV.  Plaintiff's Open Records Request Pursuant to 52 U.S.C. § 50207(i)

42.    On October 4, 2024[5], Citizen AG submitted an open records request seeking records, documents, and/or information Defendants are required to maintain and make available for public inspection upon request pursuant to the NVRA's public inspection provision. 52 U.S.C. § 20507(i). *See* Exhibit 4, Decl. of Eric Scharfenberger at ¶¶ 14-15.

43.    In particular, Citizen AG's records request sought records concerning the voter history of the 277,768 inactive registrants to determine how many of these registrants voted in the 2020 General Election or 2022 Midterm Election.

44.    Specifically, Citizen AG's request sought records that would evidence how many of the subject 277,768 inactive registrants voted in either the 2020 and/or 2022 federal elections, as such registrants should have had their voter registration statuses reactivated and all other inactive registrants should have been removed as they had met the requisite standard that compels

---

[5] *See* Exhibit 1, Records Request, dated Oct. 4, 2024.

removal under the NVRA (i.e., not responding to a confirmation notice and failing to vote in the next 2 consecutive federal elections).[6]

45.    The remaining registrants  (all who are presently still registered as inactive), while any of the 277,768 inactive registrants who did *not* vote in 2020 or 2022 were required to have been removed as of November 9, 2022—the date following the second consecutive federal election and the first day following the expiration of the statutory waiting period. 52 U.S.C. § 20507(b)(2)(B) (requirement to "remove an individual from the official list of eligible voters if the individual . . . has not voted or appeared to vote in 2 or more consecutive general elections for Federal office"); *see also Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 767 (2018) ("**federal law makes this removal mandatory**.") (emphasis added).

46.    Among others items, Citizen AG specifically requested that Secretary Schmidt provide the following:

    Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018 and November 3, 2020 who did not respond to the notice, did not vote on November 3, 2020, did not vote on November 8, 2022, and have not been removed from Pennsylvania's voter rolls as of present.

47.    On November 12, 2024, Secretary Schmidt responded to Citizen AG's October 4 records request. In doing so, Secretary Schmidt made an admission that the Commonwealth had not removed *at least* 77,188 registrants who, as of November 9, 2022, were ineligible to vote absent re-registering him or herself:

| 8 | Total from 6a not cancelled - overall total | | | 53588 |
|---|---|---|---|---|
| | Total from 6b not cancelled  - overall total | | | 23600 |

---

[6] These removals should have begun on November 9, 2022 — the date following the second consecutive federal election.

48.    Specifically, Secretary Schmidt has now admitted 77,188 registered Pennsylvania voters,

i.    Were sent confirmation notices between November 7, 2018 and November 3, 2020;

ii.    Did not respond to the confirmation notice;

iii.    Did not vote in the November 3, 2020 federal election;

iv.    Did not vote in the November 8, 2022 federal election; an

v.    Have not been removed from the voter rolls.

49.    Secretary Schmidt is and was at all time relevant required to produce the information concerning voter history and removals pursuant to Citizen AG's request. *See e.g.,* *Voter Reference Foundation, LLC v. Torrez*, 2024 WL 1347204 at *139 (D.N.M. Mar. 29, 2024) (holding the Secretary of State's Office violated the NVRA by failing to produce "[c]urrent voter registration data, **including voter history**, for all active, **inactive**, suspended, and cancelled status voters.") (emphasis added).

50.    Defendants violated the NVRA by denying failing to remove ineligible voters for a period of nearly two entire years, including each day of the 30 days leading up to the November 5, 2024 election.

## PLAINTIFF'S INTERESTS

51.    Plaintiff Citizen AG's mission is to educate Americans about their rights and preserve our civil rights and liberties in the courts. The organization fulfills its mission through public records requests and litigation, among other means.

52.    Citizen AG is supported in its mission by tens of thousands of individuals across the nation. An individual becomes a member of Citizen AG by making a financial contribution, in any amount, to the organization. Members' financial contributions are by far the single most important source of income to Citizen AG and provide the means by which the organization

14

finances its activities in support of its mission. Citizen AG in turn represents the interests of its members.

53.    Over the past several years, Citizen AG's members have become increasingly concerned about the state of the nation's voter registration rolls, including whether state and local officials are complying with the NVRA's voter list maintenance obligations. They are concerned that failing to comply with the NVRA's voter list maintenance obligations impair the integrity of elections by increasing the opportunity for ineligible voters or voters intent on fraud to cast ballots.

54.    Defendants' failure to comply with their NVRA voter list maintenance obligations burden the federal and state constitutional rights to vote of all individual members of Citizen AG who are lawfully registered to vote in Pennsylvania by undermining their confidence in the integrity of the electoral process, discouraging their participation in the democratic process, and instilling in them the fear that their legitimate votes will be nullified or diluted.

55.    Protecting the voting rights of Citizen AG members who are lawfully registered to vote in Pennsylvania is germane to Citizen AG's mission. It also is well within the scope of the reasons why members of Citizen AG join the organization and support its mission.

56.    Because the relief sought herein will inure to the benefit of Citizen AG members who are lawfully registered to vote in Pennsylvania, neither the claims asserted, nor the relief requested requires the participation of Citizen AG's individual members.

57.    In response to the concerns of its members, Citizen AG commenced a nationwide program to monitor state and local election officials' compliance with their NVRA list maintenance obligations.  As part of this program, Citizen AG utilizes public records laws to request and receive records and data from jurisdictions across the nation about their voter list maintenance efforts. It then analyzes these records and data and publishes the results of its findings to the jurisdictions, to its members, and to the general public.

58.    Citizen AG's concerns with Pennsylvania's list maintenance practices led it to send the October 2024 correspondence described in this complaint and to request documents relating to the state's list maintenance practices, and to analyze the Commonwealth's responses.

59.    Citizen AG's concerns also led it to conduct analyses of Pennsylvania's registration rates, removal rates, Confirmation Notice statistics, and inactive rates.

60.    Citizen AG has expended substantial resources, including staff time, investigating Defendants' failure to comply with their NVRA voter list maintenance obligations, communicating with Pennsylvania officials and concerned members about Defendants' failure, and researching statements made by Defendants in their correspondence.

61.    The resources expended by Citizen AG to investigate, address, research, and counteract Defendants' failure to comply with their NVRA voter list maintenance obligations are distinct from and above and beyond Citizen AG's regular, programmatic efforts to monitor state and local election officials' NVRA compliance.

62.    Were it not for Defendants' failure to comply with their NVRA voter list maintenance obligations, Citizen AG would have expended these same resources on its regular, programmatic activities or would not have expended them at all. Instead, it diverted its resources to counteract Defendants' noncompliance and to protect members' rights.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE NVRA, 52 U.S.C. § 20507(i)**
**Failure to Make Records Available for Inspection**
*(Citizen AG against Secretary Schmidt and Commonwealth of Pennsylvania)*

63.    Citizen AG incorporates by reference all preceding paragraphs as if fully set forth herein.

64.    On or about October 4, 2024, Citizen AG submitted a public records request to Secretary Schmidt' office pursuant to 52 U.S.C. § 20507(i) and in full compliance with the

provisions of the Commonwealth's Right-to-Know Law.

65.    Citizen AG's request sought records or information sought records concerning voter history and information as to the number of the subject 277,768 inactive registrants who reactivated their registration statuses by voting in the 2020 or 2022 federal elections.

66.    Defendants' response to Citizen AG's request was due within 5 business days of receiving it, which was October 11, 2024.

67.    On October 11, 2024, the Secretary of State's office sent an "interim response" stating that it needed more time, until November 12, 2024, to send a final response.

68.    On November 12, 2024, Secretary Schmidt issued a response, stating that Citizen AG's October 4, 2024 records request was granted. Accompanying the response letter was a single-page datasheet that provided some—but not all—of the information sought by Citizen AG in its October 4 records request.

69.    Specifically, Item No. 2 in Citizen AG's request asked for the following:

> Records and/or data that reflect the total number of responses to the aforesaid notices you or the State of Pennsylvania received **confirming the recipient is an eligible voter;**

70.    No response to this request was included, and the deadline to respond under the RTKL has since expired.

71.    Under 65 Pa. Stat. § 67.902, this constitutes a denial because November 12, 2024 is more than 30 days following the five business days allowed for in section 901. *See* 65 Pa. Stat. § 67.902(b) ("If the date that a response is expected to be provided is in excess of 30 days, following the five business days allowed for in section 901, the request for access shall be deemed denied unless the requester has agreed in writing to an extension to the date specified in the notice.").

72.    Section 8(i) of the National Voter Registration Act (NVRA) requires that Defendants retain and make available for public inspection, for **at least two years**, **all** records

concerning voter list maintenance activities, such as removals, confirmations of voter eligibility, and updates to voter registration lists, as well as any records regarding the implementation of programs and activities conducted to ensure the accuracy and currency of official lists of eligible voters. *See* 52 U.S.C. § 20507(i).

73. The 2022 Midterm Election took place on November 8, 2022, and therefore, records regarding the 2022 Midterm Election are less than two (2) years old and Pennsylvania is required to have, at a minimum, records that Citizen AG requested in its October 4, 2024 open records request pertaining to the 2022 Midterm Election in its possession pursuant to 52 U.S.C. § 20507(i).

74. Citizen AG's request sought records from the 2022 Midterm Election, including the number of persons who voted in the 2022 Midterm Election even though they had previously received and failed to respond to a confirmation notice prior to the 2020 General Election.

75. The NVRA's public inspection provision is a floor, not a ceiling, insofar as Pennsylvania is required to maintain records for at least two years; there is no prohibition concerning Pennsylvania's maintenance of records responsive to Citizen AG's request for more than (2) years, and thus, Pennsylvania could—and should—have records regarding the 2020 General Election that are responsive to Citizen AG's October 4 open records request.

76. The NVRA compels states to remove inactive registrants based on change-of-residence grounds when the inactive registrant fails to respond to a confirmation notice and thereafter does not vote in either of the next two consecutive federal elections.

77. There are a minimum of 277,768 inactive registrants who were subject to removal as of November 9, 2022 that remain registered to vote in Pennsylvania.

78. Pennsylvania's data also contains inconsistencies that make it impossible to ascertain true and accurate voter-related numbers.

79. Any registrant who (1) did not respond to their confirmation notice sent prior to the

18

**Deleted:** .

**Formatted:** Not Highlight

2020 federal election; **and** (2) did not vote in the 2020 federal election; **and** (3) did not vote in 2022 federal election was required to have been removed from the voter rolls.

80.     Alternatively, any registrant who (1) did not respond to their confirmation notice sent prior to the 2020 federal election; **but** (2) did vote in either (or both) the 2020 federal election and/or 2022 federal election; **and** (3) did not vote in 2022 federal election was required to have been removed from the voter rolls.

81.     All 277,768 inactive registrants failed to respond to confirmation notices that were sent via forwarded mail prior to the 2020 General Election.

82.     In light of the NVRA's two-federal-election provision governing removals, Pennsylvania is also required to maintain records, including voter history records, for a minimum of four (4) years; otherwise, failing to maintain such records would preclude Pennsylvania from ever complying with 52 U.S.C. § 20507(d)(1)(B) as it applies to mandatory removals based on change-of-residence grounds.

83.     Removals or voter registration cancellations based on change-of-residence grounds are mandatory under both federal and Pennsylvania law. *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 767 (2018) ("**federal law makes this removal mandatory**") (emphasis added).

84.     No exception exists that otherwise would exempt this information and these records from the public inspection provisions of the NVRA.

85.     The failure to produce or otherwise make available for inspection all records Citizen AG requested in its October 4, 2024 open records request violates the NVRA's public inspection provision, 52 U.S.C. § 20507(i) that requires Pennsylvania to maintain and make available for inspection the records Citizen AG requested for a minimum of two years.

86.     Citizen AG's October 4, 2024 records request sought records that were less than two years old, but Defendants denied Citizen AG's request on October 11, 2024.

---

**Formatted:** Font: Bold, Complex Script Font: Bold, Not Highlight

**Formatted:** Not Highlight

**Deleted:** the

87.     The two-year records maintenance requirement is a floor, not a ceiling. In order to comply with the list maintenance obligations, the Commonwealth must maintain at a minimum the records regarding voter removals as a result of their failure to respond to confirmation notices for a period of no less than two federal elections (e.g., 4 years). Otherwise, compliance with this obligation would necessarily be impossible.

88.     In reviewing the partially responsive information Defendants produced on November 12, 2024, the numbers do not add up. For example, of the 277,768 voters who did not respond to their confirmation notices that were sent prior to the 2020 federal election:

    i.   134,744 registrants voted in 2020;

    ii.  10,912 registrants voted in 2022;[8]

    iii. 297,380 registrants did not vote in 2020 or 2022;[9]

89.     Of the 297,380 inactive registrants that *Defendants themselves admit* did not respond to a confirmation notice or vote in either the 2020 or 2022 federal elections, Defendants also admit that just 132,575 registrants were removed, and 77,188 registrants were *not removed*. But this only accounts for 209,763 inactive registrants of the 297,380 inactive registrants in dispute. There is no indication as to wether the remaining 87,617 inactive registrants are still registered but inactive; registered as an active voter, or whether the Commonwealth actually removed these voters.

90.     Had the Commonwealth provided specific information that was true, accurate, and correct to each of the eight (8) enumerated items listed in Citizen AG's October 4 request. This

---

[8] The records are unclear as to how many of the 10,912 registrants also voted in 2020. Plaintiffs reserve the right to, and do contend that some or all of these 10,912 registrants who voted in 2022 also voted in 2020, but for purposes of illustrating the discrepancies (or the need for more accurate responses) Plaintiffs give Defendants the benefit of the doubt and construe these as an additional 10,912 registrants without any duplicate voters being reflected in the 134,744 total from 2020.

[9] Notably, Defendants responses indicate that the number of subject voters at issue is actually 29,612 inactive registrants *greater* than the number of inactive/ineligible registrants Plaintiffs initially placed in dispute.

disrecpancy would not exist if the Commonwealth adhered to the NVRA's mandates concerning public records inspection and voter list maintenance.

91.    As a direct and proximate result of Defendants' acts and/or omissions and failures complained of herein, Citizen AG has expended substantial resources, including staff time, investigating Defendants' failure to comply with their NVRA voter list maintenance obligations, communicating with Pennsylvania officials and concerned members about Defendants' failure, and researching statements made by Defendants in their correspondence.

92.    The resources expended by Citizen AG to investigate, address, research, and counteract Defendants' failure to comply with their NVRA voter list maintenance obligations are distinct from and above and beyond Citizen AG's regular, programmatic efforts to monitor state and local election officials' NVRA compliance.

93.    Were it not for Defendants' failure to comply with their NVRA voter list maintenance obligations, Citizen AG would have expended these same resources on its regular, programmatic activities or would not have expended them at all. Instead, Citizen AG diverted its resources to counteract Defendants' noncompliance and to protect members' rights.

94.    Citizen AG has been deprived of the opportunity to inspect and review records concerning voter list maintenance, which is critical towards its mission and frustrates its purpose of preserving constitutional rights and civil liberties, including those of its members such as Mr. Golembiewski, who himself is directly injured as a registered and eligible voter of the Commonwealth of Pennsylvania.

95.    Defendants' failure to comply with the NVRA's public inspection provision has caused the aforesaid injuries and harm to Plaintiffs, and Defendants will continue to refuse to comply with the NVRA resulting in more injury to Citizen AG and Mr. Golembiewski absent the injunctive relief requested herein.

96.    Plaintiffs respectfully asks this Court to issue an emergency ex parte temporary restraining order prohibiting Defendants from further violating 52 U.S.C. § 20507(i) and compel Defendants to provide public access to the records Citizen AG requested on October 4, by November 2, 2024.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE NVRA, 52 U.S.C. §§ 20501(b),(c), (d).**
**Failure to Maintain Accurate/Current Voter Registration Lists**
***(Citizen AG and Anthony Golembiewski against all Defendants)***

97.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

98.    Section 8 of the NVRA makes mandatory and imposes a non-discretionary duty upon Defendants to establish a removal-from-registration program that "makes a reasonable effort" to remove voters who become ineligible for reasons that include, without limitation, change-of-residence grounds.

99.    At all times relevant, it is Defendants' obligation to "ensure that accurate and current voter registration rolls are maintained."  52 U.S.C. §§ 20501(b)(3), (4).

100.    Subsection (d) of the NVRA is the provision that governs removals based "on the ground that the registrant has changed residence."

101.    Under subsection (d) of the NVRA, a registrant becomes ineligible on change-of-residence grounds if the registrant "(i) has failed to respond to a notice" and "(ii) has not voted or appeared to vote . . . during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice." 52 U.S.C. § 20507(d)(1)(B).

102.    A registrant's failure to respond to a notice and failure to vote in either of the next two subsequent elections is evidence of a registrant's ineligibility based upon change-of-residence grounds.

103.    Defendants sent 753,942 registered voters confirmation notices, inclusive of return cards, via forwarded mail prior to the 2020 General Election.

104.    A total of 116,042 of 753,942 registrants responded to the confirmation notices.

105.    Of the remaining 637,900 registrants who were sent confirmation notices via forwarded mail and did not respond, Secretary Schmidt reported removing just 360,132 of 637,900 registrants—less than 50%—after the next 2 consecutive federal elections had elapsed and the statutory waiting period concluded.

106.    As of November 9, 2022, each of the 277,768 inactive registrants who did not respond to confirmation notices that were sent before the 2020 General Election, but *did* vote in 2020 or 2022 should have had their registration statuses switched to "active".

107.    As of November 9, 2022, each of the 277,768 inactive registrants who did not respond to confirmation notices that were sent before the 2020 General Election ***and did not*** vote in either 2020 or 2022 should have should have been removed because 52 U.S.C. § 20507(b)(2)(B) (requirement to "remove an individual from the official list of eligible voters if the individual . . . has not voted or appeared to vote in 2 or more consecutive general elections for Federal office"); *see also Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 767 (2018) ("**federal law makes this removal mandatory**.") (emphasis added).

108.    As of the date of this filing, 100% of the 277,768 inactive registrants at issue in this case should be listed as "active" voters or entirely removed from the rolls.

109.    Despite this, 277,768 registrants remain inactive despite there being no basis for these registrants to not have been removed or reactivated.

110.    Of the 277,768 voters whose registration and/or registration status are at issue, Secretary Schmidt has admitted that Pennsylvania failed to remove 77,188 of the aforesaid voters in violation of the NVRA's mandatory list maintenance provisions.

111.    In addition to the 77,188 inactive registrants who became ineligible on November 9, 2022—the day following the conclusion of the second federal election that had elapsed after receiving and failing to respond to a confirmation notice—Secretary Schmidt's responses contain inconsistencies and omissions, including those as described above in paragraphs 87-91.

112.    As a direct and proximate result of Defendants' failure to comply with the NVRA's list maintenance provision, 52 U.S.C. § 20507(d)(1)(B), Citizen AG has expended substantial resources, including staff time, investigating Defendants' failure to comply with their NVRA voter list maintenance obligations, communicating with Pennsylvania officials and concerned members about Defendants' failure, and researching statements made by Defendants in their correspondence.

113.    The resources expended by Citizen AG to investigate, address, research, and counteract Defendants' failure to comply with their NVRA voter list maintenance obligations are distinct from and above and beyond Citizen AG's regular, programmatic efforts to monitor state and local election officials' NVRA compliance.

114.    Were it not for Defendants' failure to comply with their NVRA voter list maintenance obligations, Citizen AG would have expended these same resources on its regular, programmatic activities or would not have expended them at all. Instead, it diverted its resources to counteract Defendants' noncompliance and to protect members' rights.

115.    Citizen AG on its own and on behalf of its members, including Pennsylvania registered voter Anthony Golembiewski, have been deprived of the opportunity to inspect and review records concerning voter list maintenance, which is critical to ensuring transparency and accountability in the administration of Pennsylvania's voter rolls.

116.    As a direct and proximate result of Defendants' failure to comply with the NVRA's list maintenance provision, 52 U.S.C. § 20507(d)(1)(B), Mr. Golembiewski will be irreparably harmed

as a Pennsylvania voter absent the injunctive relief requested as his fundamental right to vote will be undermined.

117.    The Supreme Court enacted the NVRA's list maintenance provisions pursuant to the constitutionally protected and fundamental right to vote, which includes *inter alia* protections against vote dilution.

118.    Plaintiffs have no other option than to seek the emergency *ex parte* relief requested in the accompanying motion for emergency *ex parte* temporary restraining order and preliminary injunction and supporting memorandum of law and points and authorities filed contemporaneously with this action.

119.    Defendants' failure to comply with the NVRA's public inspection provision has caused harm and absent the emergency *ex parte* injunctive relief requested herein, Plaintiffs will continue to be harmed irreparably.

120.    WHEREFORE, Plaintiffs respectfully request that this Court enjoin Defendants from allowing any inactive registrant that (1) failed to respond to a confirmation notice sent prior to the 2020 General Election; and (2) did not vote in either the 2020 or 2022 federal elections, to remain registered to vote when federal law compels their removal, especially after now what has been *three* federal elections.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court:

(A)    Enter an order declaring that Defendants' refusal to remove from its voter rolls prior to the 2024 General Election the 77,188 registrants who became ineligible voters on November 9, 2022  constitutes a violation of the NVRA's list maintenance provisions, 52 U.S.C. § 20507(c);

(B)    Issue a Permanent Injunction that enjoins Defendants from allowing any inactive registrant that (1) failed to respond to a confirmation notice; and (2) who did not vote in either of

[PROPOSED] SUPPLEMENTAL COMPLAINT

the next two consecutive federal elections, to remain listed on the Commonwealth's voter rolls;

(C)     Enter an order declaring that Defendants have violated 52 U.S.C. § 20507(d)(1)(B) by failing to remove inactive voters who received confirmation notices and did not respond, and thereafter, did not vote in the next two consecutive federal elections, yet still remain registered to vote;

(D)     Issue an order compelling Defendants to affirmatively administer an adequate general program of list maintenance in compliance with the requirements of Section 8 of the NVRA in elections;

(E)     Grants any further relief that is deemed just and proper, including attorney's fees and costs incurred in bringing this action.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: December 27, 2024                          Respectfully submitted,
                                                  1789 FOUNDATION, INC. d/b/a
                                                  CITIZEN AG and ANTHONY GOLEMBIEWSKI

                          By:     /s/ Gregory A. Stapp
                                  Gregory A. Stapp (PA #78247)
                                  153 West Fourth Street, Suite 6
                                  Williamsport, PA 17701
                                  Tel: (570) 326-1077
                                  Fax: (570) 651-9420
                                  gstapp@stapplaw.net


                          By:     /s/ Rachel L. Dreher
                                  Rachel L. Dreher * (FL #32092)
                                  CITIZEN AG
                                  111 NE 1st St, 8th Floor
                                  Miami, FL 33132
                                  Tel: (561) 801-8661
                                  rachel@citizenag.org
                                  *admitted pro hac vice

                                  Attorney for Plaintiffs

| Page 14: [1] Deleted | Citizen AG | 12/27/24 1:06:00 PM |
|---|---|---|

| Page 14: [2] Deleted | Citizen AG | 12/27/24 2:45:00 AM |
|---|---|---|

# EXHIBIT 2

Pennsylvania Secretary of State
401 North Street, Rm 206
Harrisburg, PA 17120

Dear Secretary of State,

I am writing to request specific information and records related to your compliance with Section 8 of the National Voter Registration Act and its relevant provisions that require inactive voters who have not voted for two (2) federal election cycles to be removed from your State's voter rolls.

As such, I specifically request the following:

1. Records and/or data that reflect the total number of confirmation notices sent to Pennsylvania voters from November 7, 2018 through November 3, 2020;

2. Records and/or data that reflect the total number of responses to the aforesaid notices you or the State of Pennsylvania received confirming the recipient is an eligible voter;

3. Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018 and November 3, 2020 who did not respond to the notice;

4. Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018 and November 3, 2020 who did not respond to the notice but voted on November 3, 2020;

5. Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018 and November 3, 2020 who did not respond to the notice and did not vote on November 3, 2020, but did vote on November 8, 2022.

6. Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018 and November 3, 2020 who did not respond to the notice, did not vote on November 3, 2020, and did not vote on November 8, 2022.

7. Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018 and November 3, 2020 who did not respond to the notice, did not vote on November 3, 2020, did not vote on November 8, 2022, and have been removed from Pennsylvania's voter rolls at any time from November 9, 2022 through present.

8. Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018 and November 3, 2020 who did not respond to the notice, did not vote on November 3, 2020, did not vote on November 8, 2022, and have been not been removed from Pennsylvania's voter rolls as of present.

I would appreciate it if this information could be provided in a digital format, if available. Thank you for your time and attention to this matter. I look forward to your prompt response.


Sincerely,
Eric
eric@citizenag.org

# EXHIBIT 3



COMMONWEALTH OF PENNSYLVANIA
**DEPARTMENT OF STATE**
HARRISBURG, PENNSYLVANIA
17120

**Right-to-Know Law Office**
**Room 306, North Office Building**
**401 North Street**
**Harrisburg, PA  17120-0500**
**Fax:  717-214-9899**

**Mailing Date: October 11, 2024**

**Eric**
**eric@citizenag.org**

**RE:  Right-to-Know Law Request No.  2024-604**

Dear Eric:

On October 4, 2024, the Department of State Right to Know Office received your request for information pursuant to the Pennsylvania Right-to-Know Law, 65 P.S. §§ 67.101, et seq. (RTKL), wherein you requested: "information and records related to your compliance with Section 8 of the National Voter Registration Act and its relevant provisions that require inactive voters who have not voted for two (2) federal election cycles to be removed from Pennsylvania's voter rolls. As such, I specifically request the following: (1) Records and/or data that reflect the total number of confirmation notices sent to Pennsylvania voters from November 7, 2018, through November 3, 2020; (2) Records and/or data that reflect the total number of responses to the aforesaid notices you or the State of Pennsylvania received confirming the recipient is an eligible voter; (3) Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018, and November 3, 2020, who did not respond to the notice; (4) Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018, and November 3, 2020, who did not respond to the notice but voted on November 3, 2020; (5) Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018, and November 3, 2020, who did not respond to the notice and did not vote on November 3, 2020, but did vote on November 8, 2022; (6) Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018, and November 3, 2020, who did not respond to the notice, did not vote on November 3, 2020, and did not vote on November 8, 2022; (7) Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018, and November 3, 2020, who did not respond to the notice, did not

vote on November 3, 2020, did not vote on November 8, 2022, and have been removed from Pennsylvania's voter rolls at any time from November 9, 2022, through present; and (8) Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018, and November 3, 2020, who did not respond to the notice, did not vote on November 3, 2020, did not vote on November 8, 2022, and have not been removed from Pennsylvania's voter rolls as of present."

Under the RTKL, a written response to your request is due on or before October 11, 2024.

This is an interim response, not a final response, to your request. Under the provisions of 65 P.S. §67.902(b)(2), you are hereby notified that your request is being reviewed pursuant to §67.902(a)(4), and the Department of State will require up to an additional 30 days, i.e., November 12, 2024, in which to provide a final written response to your request.

The extent and nature of your request precludes a response within the five-day time period. Due to this reason, the total for the estimated or actual fees that will be owed when the records become available will be included in our subsequent response.

Many of the records that might possibly be included in your request may also be exempt under section 708(b) of the RTKL. The Department of State reserves the right to review and assert any such exemptions.

Should you have any questions, please feel free to contact me.

Respectfully,

*Janelle S. Hawthorne*

Janelle S. Hawthorne, J.D.
Agency Open Records Officer
306 North Office Building
401 North Street
Harrisburg, PA  17120
717-317-5340

# EXHIBIT 4



COMMONWEALTH OF PENNSYLVANIA
**DEPARTMENT OF STATE**
HARRISBURG, PENNSYLVANIA
17120

**Right-to-Know Law Office
Room 306, North Office Building
401 North Street
Harrisburg, PA  17120-0500
Fax:  717-214-9899**

**Mailing Date: November 12, 2024**

**Eric
eric@citizenag.org**

**RE:  Right-to-Know Law Request No.  2024-604**

Dear Eric:

On October 4, 2024, the Department of State Right to Know Office received your request for information pursuant to the Pennsylvania Right-to-Know Law, 65 P.S. §§ 67.101, et seq. (RTKL), wherein you requested the following information:

> (1) Records and/or data that reflect the total number of confirmation notices sent to Pennsylvania voters from November 7, 2018, through November 3, 2020;
> (2) Records and/or data that reflect the total number of responses to the aforesaid notices you or the State of Pennsylvania received confirming the recipient is an eligible voter;
> (3) Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018, and November 3, 2020, who did not respond to the notice;
> (4) Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018, and November 3, 2020, who did not respond to the notice but voted on November 3, 2020;
> (5) Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018, and November 3, 2020, who did not respond to the notice and did not vote on November 3, 2020, but did vote on November 8, 2022;

(6) Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018, and November 3, 2020, who did not respond to the notice, did not vote on November 3, 2020, and did not vote on November 8, 2022;

(7) Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018, and November 3, 2020, who did not respond to the notice, did not vote on November 3, 2020, did not vote on November 8, 2022, and have been removed from Pennsylvania's voter rolls at any time from November 9, 2022, through present; and,

(8) Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018, and November 3, 2020, who did not respond to the notice, did not vote on November 3, 2020, did not vote on November 8, 2022, and have not been removed from Pennsylvania's voter rolls as of present.

On October 11, 2024, a letter indicating the Department required a 30-day extension in order to respond to your request was forwarded to you.

Your request is granted and enclosed is a record responsive to your request. Please note that the Department includes both National Change of Address (NCA) notices *and* Address Verification Notices (AVN) when it reports the total number of "confirmation notices" sent for the purposes of the Election Administration and Voting Survey (EAVS). With respect to the responsive record, the Department also notes the following: 1) AVNs are sent for reasons other than a non-response to, or the undeliverability of, an NCA notice; 2) NCA notices, and thus AVNs, are sent as a result of moves within Pennsylvania, even if the voter moved within their county; 3) A voter record can be changed from inactive to active status and thus avoid cancellation even where the voter does not vote. For example, if a voter contacts the election office or attempts to re-register to vote, their status may be changed to active; 4) a voter record may be cancelled due to reasons other than inactivity for a period of two federal general elections. For example, a voter record may be cancelled upon request of the voter or as a result of Pennsylvania's Five-Year Notice (FYN) list maintenance program.

*For* additional information regarding your request, the annual voter registration reports may be found on the Department's website at Annual Reports on Voter Registration (pa.gov). There is no fee due to the Department's policy of not charging if the file is sent electronically.

You have a right to appeal this response in writing to Office of Open Records (OOR), 333 Market Street, 16th Floor, Harrisburg, PA 17126-0333. If you choose to file an appeal, you must do so within 15 business days of the mailing date of this response and send to the OOR:

1) this response;
2) your request; and
3) the reason why you think the agency is wrong in its response.

Also, the OOR has an appeal form available on the OOR website at:
https://www.openrecords.pa.gov/Appeals/AppealForm.cfm

Respectfully,

*Janelle S. Hawthorne*

Janelle S. Hawthorne, J.D.
Agency Open Records Officer
Department of State
Room 306, North Office Building
401 North Street
Harrisburg, PA  17120-0500
717-317-5340

| | | Total | Reponse | No Response or undeliverable |
|---|---|---|---|---|
| 1 | Total number of NCA notices sent between 11/7/2018 and 11/3/2020 | | | |
| | 2019 | | | |
| | ERICIC | 92894 | 18424 | 74470 |
| | ERICOC | 28167 | 3966 | 24201 |
| | ERICOS | 61197 | 15790 | 45407 |
| | 2020 | | | |
| | ERICIC | 79814 | 15029 | 64785 |
| | ERICOC | 23502 | 3269 | 20233 |
| | ERICOS | 56044 | 13075 | 42969 |
| | NCOA Total | 341618 | 69553 | 272065 |
| 2 | Total number of AVN notices sent between 11/7/2018 and 11/3/2020 due to NCOA | | | |
| | 2019 | | | |
| | ERICIC | 61221 | 4501 | 56720 |
| | ERICOC | 17986 | 1288 | 16698 |
| | ERICOS | 40834 | 3737 | 37097 |
| | 2020 | | | |
| | ERICIC | 31618 | 2248 | 29370 |
| | ERICOC | 9382 | 571 | 8811 |
| | ERICOS | 24246 | 1972 | 22274 |
| | PA-PVN total | 185287 | 14317 | 170970 |
| 4 | Total voted in 2020 where there was no response to NCOA | | | |
| | ERICIC | | | 74626 |
| | ERICOC | | | 4751 |
| | ERICOS | | | 6265 |
| | Total | | | 85642 |
| | Total voted in 2020 where there was no response to AVN | | | |
| | ERICIC | | | 42398 |
| | ERICOC | | | 2827 |
| | ERICOS | | | 3877 |
| | Total | | | 49102 |
| 5 | Total voted in 2022 where there was no response to NCOA and did not vote in 2020 | | | |
| | ERICIC | | | 4087 |
| | ERICOC | | | 949 |
| | ERICOS | | | 1591 |
| | Total | | | 6627 |
| | Total voted in 2022 where there was no response to AVN and did not vote in 2020 | | | |
| | ERICIC | | | 2639 |
| | ERICOC | | | 516 |
| | ERICOS | | | 1130 |
| | Total | | | 4285 |
| 6 | Total  not voted in 2022 or 2020 where there was no response to NCOA | | | |
| | ERICIC | | | 60543 |
| | ERICOC | | | 38734 |
| | ERICOS | | | 80520 |
| | Total | | | 179797 |
| | Total not voted in 2022 or 2020  where there was no response to AVN | | | |
| | ERICIC | | | 41053 |
| | ERICOC | | | 22166 |
| | ERICOS | | | 54364 |
| | Total | | | 117583 |
| | | | | |
| 7 | Total from 6a cancelled after 11/9/2022 | | | 69093 |
| | Total from 6b cancelled after 11/9/2022 | | | 63482 |
| | | | | |
| 8 | Total  from 6a not  cancelled  - overall total | | | 53588 |
| | Total  from 6b  not  cancelled   - overall total | | | 23600 |