## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

1789 FOUNDATION INC., d/b/a
CITIZEN AG, and ANTHONY
GOLEMBIEWSKI,

     *Plaintiffs*,

v.

AL SCHMIDT, in his official capacity
as Secretary of the Commonwealth,
and the COMMONWEALTH OF
PENNSYLVANIA,

     *Defendants*,

AFT PENNSYLVANIA, and the
PENNSYLVANIA ALLIANCE FOR
RETIRED AMERICANS,

     *Intervenor-Defendants*.

Case No.: 3:24-cv-01865-RDM
(Hon. Robert D. Mariani)

---

## BRIEF IN OPPOSITION TO SECRETARY OF STATE AL SCHMIDT'S MOTION TO DISMISS THE SUPPLEMENTAL COMPLAINT

Dated: March 5, 2025

Respectfully submitted,

/s/ *Rachel L. Dreher*
Rachel L. Dreher
CITIZEN AG
111 NE 1st St, 8th Floor
Miami, FL 33132
Tel: (442) 427-8136
rachel@citizenag.org
*Counsel for Plaintiffs*

# TABLE OF CONTENTS

DESCRIPTION                                                              PAGE

INTRODUCTION ...................................................................................1

FACTUAL BACKGROUND ....................................................................3

STANDARD OF REVIEW.......................................................................6

ARGUMENT .........................................................................................8

   I.  THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS.............8

     A. THE NOTICE REQUIREMENT IS WAIVED IF THE NVRA VIOLATION
       OCCURS WITHIN 30 DAYS OF A FEDERAL ELECTION .................................. 9

     B. PLAINTIFFS' CLAIMS ARE NOT MOOT ....................................................... 13

     C. THIS COURT HAS BROAD AUTHORITY TO AWARD BOTH INJUNCTIVE
       AND DECLARATORY RELIEF TO ENFORCE NVRA COMPLIANCE ............. 14

  II. MR. GOLEMBIEWSKI HAS ARTICLE III STANDING ..............................17

  III. PLAINTIFFS' NVRA CLAIMS ARE WELL-PLED .....................................20

     A. SECRETARY SCHMIDT HAS ALREADY ADMITTED TO VIOLATING
       THE NVRA BY FAILING TO REMOVE 77,188 INELIGIBLE VOTERS.............20

     B. SECRETARY SCHMIDT'S POST-HOC JUSTIFICATIONS DO NOT EXCUSE
       VIOLATIONS OF THE NVRA .....................................................................21

     C. THE NVRA REQUIRES FUTURE COMPLIANCE, NOT JUST CORRECTIONS
       OF PAST VIOLATIONS ..............................................................................24

CONCLUSION ................................................................................. 26

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE

*Arizona v. Inter-Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013) ....................................................................................................23

*Askew v. Church of the Lord Jesus Christ*,
684 F.3d 413 (3d Cir. 2012) ......................................................................................7

*Bellitto v. Snipes*,
268 F. Supp. 3d 1328 (S.D. Fla. 2017) ....................................................................15

*Bognet v. Sec'y of Commonwealth of Pa.*,
980 F.3d 336 (3d Cir. 2020) ....................................................................................17

*Common Cause Ind. v. Lawson*,
937 F.3d 944 (7th Cir. 2019) ....................................................................................18

*Constitution Party v. Aichele*, No. 12–2726,
2013 WL 867183, at *4 (E.D. Pa. Mar. 8, 2013) ......................................................7

*FEC v. Wisconsin Right to Life, Inc.*,
551 U.S. 449 (2007) ................................................................................................14

*Fed. Election Comm'n v. Akins*,
524 U.S. 11, 21 (1998) ............................................................................................18

*Foglia v. Renal Ventures Mgmt., LLC*,
754 F.3d 153 (3d Cir. 2014) ................................................................................. 7-8

*Gould Elecs. Inc. v. United States*,
220 F.3d 169 (3d Cir. 2000) ................................................................................. 6-7

*Husted v. Philip A. Randolph Institute*,
584 U.S. 756 (2018) ......................................................................................20, 22, 24

*In re Schering Plough Corp. Intron*,
678 F.3d 235 (3d Cir. 2012) ................................................................................. 6-7

*Judicial Watch, Inc. v. Lamone*,
399 F. Supp. 3d 425 (D. Md. 2019) .................................................................11, 16

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...........................................................................................17

*Mayer v. Belichick*,
605 F.3d 223 (3d Cir. 2010) .................................................................................8

*Moore v. Ogilvie*,
394 U.S. 814 (1969) .......................................................................................2, 13

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
549 F.2d 884 (3d Cir. 1977) ............................................................................. 6-7

*Pa. Prison Soc. v. Cortes*,
508 F.3d 156 (3d Cir. 2007) ............................................................................. 5-6

*Public Interest Legal Foundation v. Boockvar*,
431 F.Supp.3d 553 (2019) ...................................................................................22

*Reynolds v. Sims*,
377 U.S. 533 (1964) ...........................................................................................17

*True the Vote, Inc. v. Hosemann*,
43 F. Supp. 3d 693 (S.D. Miss. 2014) ........................................................... 14-15

*Young v. Fordice*,
520 U.S. 273 (1997) ...........................................................................................23

**FEDERAL STATUTES**                                                        **PAGE**

Fed. R. Civ. P. 12(b)(1) .................................................................................. 6-7

Fed. R. Civ. P. 12(b)(6) ..................................................................................6, 8

52 U.S.C. § 20510(b) .......................................................................................14

52 U.S.C. § 20510(b)(1) .....................................................................................8

52 U.S.C. § 20510(b)(2) ............................................................................... 8

52 U.S.C. § 20510(b)(3) ...................................................................... 2, 9, 12

52 U.S.C. §  20507(a)(4) ............................................................................. 3

52 U.S.C. § 20507(i) ................................................................................. 11

## **INTRODUCTION**

This case arises out of the Commonwealth's failure to adhere to the well-established requirements of the National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq*. ("NVRA") which, among other things, requires Pennsylvania's Secretary of State to maintain accurate voter rolls throughout the Commonwealth. Defendants' Motion to Dismiss must be denied because it fundamentally misstates the legal and factual basis of Plaintiffs' claims under the NVRA.

This case is about the Defendants' failure to comply with their legal obligations under the NVRA to maintain accurate voter registration lists and provide public access to voter list maintenance records. The Secretary of the Commonwealth has admitted that at least 77,188 registrants remained on Pennsylvania's voter rolls despite meeting the NVRA's mandatory removal criteria after failing to respond to confirmation notices and not voting in two consecutive federal elections. Plaintiffs seek to ensure compliance with federal law and to protect the integrity of Pennsylvania's electoral process.

Secretary Schmidt now moves to dismiss this case by arguing that this Court lacks jurisdiction, that Plaintiffs lack standing, and that Plaintiffs fail to state a claim. But as detailed herein, Plaintiffs have clearly demonstrated this Court has jurisdiction over their claims as well as the fact that Plaintiffs have sufficiently

alleged concrete injuries that are redressable in full satisfaction of Article III's demands.

Secretary Schmidt also asserts that if this Court does have standing, it should nevertheless still dismiss this action on mootness grounds. However, this case is anything but moot because Secretary Schmidt has not yet fully responded to Citizen AG's public records request despite claiming the October 4, 2024 request was "granted." At its core, an incomplete or otherwise defective response does not satisfy the Commonwealth's obligations under the NVRA's public inspection provision, nor does it alleviate Secretary Schmidt of liability simply because he violated the law "long enough" to preclude Plaintiffs of the redress they seek.

Boiled down to its essence, Defendants' assertion that Plaintiffs failed to provide adequate pre-suit notice under the NVRA is legally and factually incorrect as the notice requirement is waived when the NVRA violation occurs within thirty days of a federal election, *see* 52 U.S.C. § 20510(b)(3), Plaintiffs sufficiently plead facts and demonstrate they have Article III standing, and it is not subject to reasonable dispute that their NVRA claims are *not* moot under "Capable of Repetition Doctrine" set forth by the United States Supreme Court  more than half a century ago. *See Moore v. Ogilvie*, 394 U.S. 814 (1969).

For these reasons, and as set forth more fully below, Defendants' Motion to Dismiss should be denied in its entirety.

2

## FACTUAL BACKGROUND

The National Voter Registration Act of 1993 ("NVRA") mandates that each state conduct a general program to remove ineligible voters from the official list of eligible voters, particularly those who have changed residence. Supplemental Complaint at ¶¶ 8, 9. Under 52 U.S.C. § 20507(a)(4), voter registration may only be canceled for a change of residence if the registrant either confirms the change in writing or fails to respond to an address-confirmation notice (the "Confirmation Notice") and does not vote in two consecutive federal general elections. *Id.* ¶ 11. The NVRA requires that a Confirmation Notice be a prepaid, preaddressed return card sent via forwardable mail, asking the registrant to confirm their residence. *Id.* ¶ 10. If a registrant fails to respond and does not vote in the following two general elections, their registration must be canceled. *Id.* ¶ 11. The U.S. Supreme Court has affirmed that such removals are mandatory under federal law. *Id.* ¶ 11; *see also Husted v. Philip A. Randolph Institute*, 584 U.S. 756, 767 (2018).

During the statutory waiting period between the mailing of a confirmation notice and the completion of the two-election cycle, a voter's status is classified as "inactive." Supp. Compl. ¶¶ 12-13. However, inactive voters remain registered and eligible to vote until the statutory removal requirements are met. *Id.* The NVRA also imposes transparency obligations, requiring states to maintain and publicly disclose voter registration records, including information on confirmation notices sent,

responses received, and voter removals. *Id.* ¶¶ 14-18. The U.S. Election Assistance Commission ("EAC") is required to report biennially to Congress on state voter registration practices, based on data provided by state election officials. *Id.* ¶¶ 14-15, 30-35. These reports serve as a critical tool for assessing compliance with federal voter list maintenance obligations. *Id.* ¶¶ 36-40.

Pennsylvania is bound by these statutory requirements.. The EAC's Election Administration and Voting Survey ("EAVS") reports include Pennsylvania's self-reported data on voter list maintenance. *Id.* ¶¶ 36-40. The 2020 EAVS report shows that Pennsylvania sent 753,942 confirmation notices prior to the 2020 election, yet only 116,042 registrants responded. *Id*. This means that at least 637,900 voters were marked inactive before the 2020 election due to their failure to respond. *Id.* The 2022 EAVS report further revealed that Pennsylvania removed only 360,132 of those inactive registrants after the 2022 midterm elections, leaving 277,768 inactive registrants still on the rolls. *Id.*

Despite the NVRA's clear requirements, Pennsylvania failed to remove at least 77,188 ineligible voters who should have been removed as of November 9, 2022, the date following the second consecutive federal election. *Id.* ¶¶ 47-49. Because Pennsylvania's failure to comply with the NVRA by way of its failure to respond to Plaintiffs' request for records under the NVRA's public inspection provision occurred less than 30 days prior to a federal election, and because the

Commonwealth's refusal to fulfil its list maintenance obligations persisted within thirty days of the November 5, 2024, federal election, the statute's 90-day pre-suit notice requirement is waived.  *Id.* ¶¶ 3, 30.

In light of these failures, Plaintiffs submitted an NVRA records request on October 4, 2024, seeking data on the 277,768 inactive registrants, specifically requesting records indicating how many of them had voted in the 2020 or 2022 elections and how many had been removed from the voter rolls. *Id.* ¶¶ 42-45.  On November 12, 2024, Secretary Al Schmidt responded and admitted that at least 77,188 registrants, who had neither responded to confirmation notices nor voted in the 2020 and 2022 elections, remained on the rolls despite federal law mandating their removal. *Id.* ¶¶ 47-49.

Pennsylvania's failure to conduct proper list maintenance harms Citizen AG and its members. Citizen AG is a nonprofit organization committed to election integrity and the enforcement of voter registration laws. *Id.* ¶¶ 51-62. Its members, including Pennsylvania voter Anthony Golembiewski, are harmed by the state's failure to remove ineligible voters, which undermines voter confidence, creates opportunities for election fraud, and dilutes the votes of eligible citizens. *Id*. To address these concerns, Citizen AG has expended significant resources investigating Pennsylvania's noncompliance, diverting time and funding that would otherwise be used for its core mission. *Id.* ¶¶ 91-93.  This constitutes an injury sufficient to confer

standing under *Pa. Prison Soc. v. Cortes*, 508 F.3d 156 (3d Cir. 2007); *see also* Supp. Compl. ¶¶ 94-95.

Defendants' continued failure to comply with their NVRA obligations constitutes an ongoing violation of federal law. *Id.* ¶¶ 97-120. In sum, the NVRA mandates the removal of ineligible voters, and Secretary Schmidt has failed to enforce these provisions demands judicial intervention. *Id.* ¶¶ 63-88. Citizen AG has demonstrated a legally sufficient claim, and Defendants' motion to dismiss should be denied. *Id.* ¶¶ 62-63.

## STANDARD OF REVIEW

When evaluating a Rule 12(b)(1) motion, a court must first determine whether the motion presents a facial or factual attack on jurisdiction. *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The nature of the attack dictates the applicable standard of review. A facial attack challenges the sufficiency of the complaint's jurisdictional allegations without disputing the underlying facts. *Mortensen*, 549 F.2d at 891. In reviewing a facial challenge, a court must apply the same standard as a Rule 12(b)(6) motion, meaning it must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). The inquiry is limited to the allegations in the complaint and any documents referenced

therein. *In re Schering Plough Corp.*, 678 F.3d at 243. When reviewing a facial attack, the court must accept all allegations in the complaint as true and construe them in favor of the plaintiff. *Mortensen*, 549 F.2d at 891. If, however, the court improperly weighs evidence or resolves factual disputes, it erroneously treats a facial challenge as a factual one. Such an error undermines the plaintiff's procedural protections and may warrant reversal. *Constitution Party v. Aichele*, *No. 12–2726, 2013 WL 867183*, at *4 (E.D. Pa. Mar. 8, 2013) (improperly treating a facial attack as factual by disregarding plaintiff's allegations).

A factual attack, in contrast, disputes the existence of subject matter jurisdiction based on extrinsic evidence. *Mortensen*, 549 F.2d at 891. In resolving a factual attack, a court may consider evidence outside the pleadings and has discretion to weigh competing facts without affording the plaintiff's allegations a presumption of truth. *Gould Elecs. Inc.*, 220 F.3d at 176. However, a factual attack cannot occur until the defendant has filed an answer or presented competing evidence. *Mortensen*, 549 F.2d at 892 n.17.

If a defendant moves to dismiss under Rule 12(b)(1) before answering the complaint or producing contrary evidence, the motion must be treated as a facial attack. *Askew v. Church of the Lord Jesus Christ*, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial.").

For purposes of reviewing a motion to dismiss under Rule 12(b)(6), courts are are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir. 2014) (quotation marks and citation omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## **ARGUMENT**

## I.   **THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS**

Defendant's motion to dismiss rests primarily on three assertions: ***first***, Secretary Schmidt argues that this court lacks jurisdiction over Plaintiffs NVRA claims because "[t]he NVRA requires that 'written notice' of a purported violation be provided 'to the chief election official of the State involved,' and authorizes the commencement of litigation 'if the violation is not corrected within 90 days' of such notice." Def.'s Mot. at 5 (citing 52 U.S.C. § 20510(b)(1), (2)). But Defendant ignores 52 U.S.C. § 25010(b)(3), which creates an exception to the 90-day notice requirement, stating "[i]f the violation occurred within 30 days before the date of an

election for Federal office, the aggrieved person need not provide notice to the chief election official of the State . . . before bringing a civil action . . .". *Id.*

Presumably aware of subsection (b)(3), Secretary Schmidt next pivots to challenging jurisdiction on the basis that Plaintiffs allegedly lack Article III standing because the Supplemental Complaint fails to sufficiently allege an injury-in-fact.

The third and final argument concerning jurisdiction is that even if the notice requirement were not applicable, and even if the Supplemental Complaint sufficiently alleges an injury-in-fact, the court cannot redress the NVRA violations and therefore, Article III standing does not exist because the claims lack redressability.

As explained below, Plaintiffs satisfy all jurisdictional requirements, their claims are well-pled, and the only available outcome in ruling on Defendant's motion to dismiss is its denial.

## A. The Notice Requirement is Waived if the NVRA Violation Occurs within 30 Days of a Federal Election.

Secretary Schmidt asks that this Court take a general rule and applies it as if Congress drafted it to be absolute and free of any exception. While it is true that the NVRA generally requires a pre-suit notice be sent to the state before commencing a federal action, Congress carved out an exception to this general rule. Pursuant to 52 U.S.C. § 20510(b)(3), if an NVRA violation "occur[s] within 30 days before the date

of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State . . . before bringing a civil action . . .".

On October 4, 2024, Plaintiffs submitted an open-records request pursuant to the NVRA's public inspection provision that asked the Commonwealth to either produce or make available for inspection records that reflected how many of the subject 277,768 inactive registrants[1] had cast a ballot in the 2020 General Election or the 2022 Midterm Election. Supp. Compl. at 3. On October 11, 2024, Secretary Schmidt's office sent an "interim response" stating that the Commonwealth would require an additional thirty (30) days to comply with the open-records request, even though the election was just twenty-five (25) days away. *Id*. at 3; ¶ 4. On November 12, 2024, Secretary Schmidt "granted" the records request as evidenced by the letter sent on November 12, 2024, the response notably failed to produce all responsive data or information that had been requested, which under the RTKL, constitutes a denial.

Only one of two things can be true: (1) the failure to respond with the information requested on or before October 11, 2024 constitutes a denial and violation of the NVRA's public inspection provision within thirty (30) days of the November 5, 2024 federal election; or alternatively, (2) the fact that the

---

[1] The term "subject inactive registrants" pertains to the 277,768 ineligible voters detailed and described in paragraphs 36-41 of the Supplemental Complaint (ECF No. 46).

Commonwealth can unilaterally extend the deadline to respond by invoking a 30-day extension when such extension runs in direct conflict with the NVRA's public inspection provision and its express waiver of the notice requirement within thirty (30) days of a federal election renders the RTKL's unilateral extension provision unconstitutional pursuant to the Supremacy Clause of the United States Constitution.

The NVRA's public inspection provision, 52 U.S.C. § 20507(i), requires states to make election-related list maintenance records available for public inspection and copying upon request. Courts have consistently held that unreasonable delays or refusals to provide requested NVRA records constitute a violation of the Act. *See Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 441 (D. Md. 2019) (holding that failure to provide voter registration records in a timely manner violated the NVRA's public disclosure mandate).

Here, the Commonwealth, relying solely on *state law*, unreasonably extended the response period from 5 business days, or October 11, 2024, until November 12, 2024, despite there being no question that Plaintiffs were undoubtedly entitled to the records they requested. Thereafter, the Commonwealth acknowledged that it was "granting" the request, yet it still failed to provide all the information requested. In doing so, the Commonwealth unreasonably delayed responding in violation of the NVRA, and to the extent the delay is deemed reasonable solely because the RTKL

11

permits extensions of an additional thirty (30) days, such provision is unconstitutional as it directly conflicts with what is reasonable under federal law.

Congress enacted the 30-day waiver provision to ensure that states cannot evade NVRA compliance by delaying disclosure of election records until after an election has passed. To hold otherwise would permit election officials to run out the clock on transparency and prevent legal challenges from being filed in time to secure meaningful relief. When Congress enacted 52 U.S.C. § 20510(b)(3), it expressly waived the NVRA's pre-suit notice requirement for violations occurring within 30 days of a federal election. Congress could have chosen to exclude violations of the NVRA's public inspection provision from this waiver—but it did not. The statutory text does not distinguish between different types of NVRA violations. Therefore, any attempt by the Commonwealth to invoke a state law extension to delay compliance would contradict federal law and undermine the entire purpose of the NVRA's 30-day waiver provision.

As such, and because this denial occurred within 30 days of the November 5, 2024 election, the NVRA's waiver of the 90-day notice requirement under 52 U.S.C. § 20510(b)(3) was directly triggered, thereby vacating Plaintiffs need to provide written notice as a condition precedent to maintaining this action. And to the extent this Court finds the denial did not occur until November 12, 2024, the result is the same as the delay was unreasonable. Secretary Schmidt's reliance on Pennsylvania's

RTKL to unreasonably delay is *per se* unconstitutional because state law (e.g., the RTKL) cannot conflict with federal law (e.g., the NVRA) as made clear by the Supremacy Clause. Accordingly, and assuming *arguendo* this court were to find that the denial did not occur until November 12, 2024, such holding facially demonstrates the very conflict at issue between the Commonwealth's RTKL and well-established federal law. Under such circumstances, the state law (or related relevant provision) must fall and be struck as unconstitutional.

### B.   Plaintiffs' Claims Are Not Moot.

Federal elections occur every two (2) years, and as demonstrated by way of Defendant's own admission, the Commonwealth does not make reasonable efforts to maintain accurate voter rolls; otherwise, 77,188 ineligible voters who should have been removed in November of 2022 would not have remained registered to vote on November 5, 2024. Supp. Compl. at 4. It is well-established that issues capable of repetition, including those related to elections, cannot evade review based on mootness. *See Moore v. Ogilvie*, 394 U.S. 814 (1969).

Plaintiffs' claims are not moot merely because the 2024 federal election has passed. The NVRA imposes non-delegable, mandatory, ongoing compliance obligations that Secretary Schmidt, as the state's chief election official, must comply. Indeed, issues related to voter registration and list maintenance are not confined to a single election cycle but are continuous and therefore, the failure to maintain

accurate voter rolls, especially in light of the admission that at least 77,188 ineligible voters have not been removed, makes it indisputable that, absent a court order compelling the Commonwealth to fulfill its list maintenance obligations, Pennsylvania will continue to ignore its duties expressly compelled of it under federal law. *Husted*, 584 U.S. 756 (2018).

The claims are not moot because courts recognize that NVRA violations are 'capable of repetition, yet evading review.' *Moore*, 394 U.S. at 821, established that election-related challenges remain justiciable even after an election has passed. Similarly, in *FEC v. Wisconsin Right to Life, Inc*., 551 U.S. 449, 462 (2007), the Supreme Court reaffirmed that cases involving electoral integrity warrant ongoing judicial scrutiny.

### C.  This Court Has Broad Authority to Award Both Injunctive and Declaratory Relief to Enforce NVRA Compliance.

The NVRA explicitly authorizes courts to grant injunctive and declaratory relief to remedy violations and ensure future compliance. Under 52 U.S.C. § 20510(b), "[a] person who is aggrieved by a violation" of the NVRA may bring a civil action for "declaratory or injunctive relief." The statute does not limit such relief to correcting past violations but instead ensures that courts can enforce ongoing and future compliance with federal voter list maintenance obligations.

Defendants cannot evade accountability simply because an election has passed. Courts have repeatedly held that NVRA violations are subject to continuing

judicial oversight, as compliance with the statute is an ongoing duty, not a one-time obligation. *See, e.g., True the Vote, Inc. v. Hosemann*, 43 F. Supp. 3d 693, 725 (S.D. Miss. 2014) (holding that a state's NVRA obligations persist beyond a single election and allowing claims to proceed despite the passage of an election). At its core, voter list maintenance obligations must be continuous and ongoing in order to serve one or more of the purposes Congress sought to effectuate when it imposed the obligation by enacting the NVRA. Thus, because list maintenance obligations inherently must occur on a rolling basis and affects multiple election cycles, declaratory and injunctive relief remain appropriate even if a specific election has already occurred.

Moreover, courts routinely compel prospective compliance with the NVRA, recognizing that failure to adhere to the law in one election cycle strongly indicates a likelihood of continued noncompliance absent judicial intervention. *See Bellitto v. Snipes*, 268 F. Supp. 3d 1328, 1336-38 (S.D. Fla. 2017) (rejecting claims of mootness and issuing declaratory and injunctive relief to enforce NVRA compliance despite the passage of an election). This precedent confirms that Defendants' ongoing failure to maintain accurate voter rolls is not a past, isolated violation, but a systemic failure that requires court-ordered remedies to ensure full and continued compliance.

The importance of declaratory and injunctive relief is further underscored by Defendants' repeated failures to enforce the NVRA's mandatory list maintenance

provisions. Pennsylvania has admitted that at least 77,188 ineligible voters remained on its rolls despite meeting the statutory criteria for removal. *Id.*¶ 48. Given Defendants' history of delayed or inadequate compliance, coupled with its admitted failure to remove ineligible voters prior to the 2024 election—all of whom were required to have been removed in November 2022 under to federal law—leaves no doubt as to the strong likelihood of continued violations, making prospective relief not only appropriate but necessary to uphold the integrity of Pennsylvania's voter registration system.

Finally, the public interest strongly favors injunctive relief to enforce the NVRA. Election integrity is a fundamental aspect of democracy, and the presence of ineligible voters on the rolls undermines public confidence in electoral outcomes and creates opportunities for fraud and administrative errors. The removal of ineligible voters is not discretionary—it is federally mandated. *Id.*¶ 98. Courts have consistently ruled that systemic failures in voter list maintenance demand judicial intervention to protect the legitimacy of elections and preserve the rights of lawful voters. *See Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 441 (D. Md. 2019) (granting relief under the NVRA due to state election officials' failure to maintain accurate voter rolls).

//

//

16

## II.  MR. GOLEMBIEWSKI HAS ARTICLE III STANDING.

Under Article III of the U.S. Constitution, a plaintiff must demonstrate (1) injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Mr. Golembiewski, as a registered Pennsylvania voter, has sufficiently alleged injury-in-fact by establishing multiple concrete harms resulting from Pennsylvania's failure to comply with the NVRA, 52 U.S.C. § 20507.

Specifically, the Supplemental Complaint establishes that Pennsylvania failed to remove at least 77,188 ineligible voters who were required to be removed under the NVRA. Maintaining these ineligible voters dilutes the votes of lawful voters, including Mr. Golembiewski, because the resultant impact of maintaining ineligible voters as registered voters results in fraudulent or improper votes being cast.  Courts have recognized that vote dilution is a concrete injury that satisfies Article III standing. *Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *Bognet v. Sec'y of Commonwealth of Pa.*, 980 F.3d 336, 355 (3d Cir. 2020) (explaining that "unlawfully counted votes dilute the weight of lawfully cast ballots"). The Supreme Court could not be more clear:

> The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by dilution just as effectively as by outright prohibition.

*Id.* This holding establishes that vote dilution is a judicially cognizable injury because it directly affects an individual's ability to participate in fair and equal elections. It reinforces that any practice that results in the weighting of votes unequally or allows ineligible votes to impact election outcomes constitutes an injury-in-fact sufficient for standing under Article III.

In direct alignment with binding Supreme Court precedent as stated above, the Supplemental Complaint alleges that Defendants' failure to remove ineligible voters undermines the integrity of Pennsylvania's elections and erodes public confidence in their legitimacy and courts have found that harm to election integrity and trust in the democratic process constitutes a cognizable injury. *Id.*¶ 91-95; *see also Common Cause Ind. v. Lawson*, 937 F.3d 944, 949 (7th Cir. 2019) (holding the same).

The NVRA, 52 U.S.C. § 20507(i), mandates public access to voter list maintenance records, which Pennsylvania failed to provide. *Id.*¶ 16, 67-70. As a member of Citizen AG, Mr. Golembiewski was deprived of his statutory right to review these records, which thereby constitutes a cognizable and concrete injury sufficient to established Article III standing. *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998) (denial of information that a plaintiff has a legal right to obtain is a sufficient Article III injury).

Pennsylvania, through Secretary Schmidt, has admitted that 77,188 ineligible voters remain on the voter rolls despite federal law requiring their removal. *Id.* ¶ 110 – 112. The continued presence of ineligible voters creates an increased risk of fraudulent votes, directly impacting the integrity of elections in which Mr. Golembiewski participates. The state's failure to disclose requested voter list maintenance records under the NVRA definitionally deprives Mr. Golembiewski of his right to review public election data in unequivocal violation of well-established federal law.

To establish Article III standing's third element—redressability—a plaintiff must show that a court ruling in their favor would remedy the injury (Lujan, 504 U.S. at 561). Here, a court order would directly address Mr. Golembiewski's injuries by mandating and ensuring Pennsylvania's compliance with the NVRA's voter list maintenance requirements. The equitable relief sought in the complaint also would compel Pennsylvania to disclose the records that Plaintiffs requested and at all times relevant, were entitled to either inspect or receive, thereby bringing the Commonwealth into compliance with federal election laws now and in the future.

For example, this Court has the authority to order Pennsylvania to remove the 77,188 ineligible voters Secretary Schmidt has already admittedly not removed, resulting in the elimination of vote dilution and the restoration of integrity in the Commonwealth's elections. The Court can also order Pennsylvania to release the

requested records Secretary Schmidt, as of the date of this filing, *still* has not produced. The impact of such an order necessarily would result in Mr. Golembiewski finally having access to the information to which he is legally entitled under the NVRA. Indeed, a judicial order enforcing compliance with the NVRA would protect Mr. Golembiewski's fundamental right to vote, ensuring that Pennsylvania does not repeat these violations in future elections.

Accordingly, Mr. Golembiewski has sufficiently alleged an Article III injury-in-fact because he has suffered vote dilution, loss of election integrity, and a statutory informational injury due to Pennsylvania's failure to remove ineligible voters and provide public records as required under the NVRA. His injuries are fairly traceable to Pennsylvania's unlawful conduct and are redressable by a favorable court decision.

## III.  PLAINTIFFS' NVRA CLAIMS ARE WELL-PLED.

### A.  Secretary Schmidt Has Already Admitted to Violating the NVRA by Failing to Remove 77,188 Ineligible Voters

Defendants' own admissions establish their noncompliance with the NVRA's voter list maintenance provisions. *Id.*¶ 47-48. The NVRA mandates that states remove from voter rolls individuals who have failed to respond to a Confirmation Notice and who have not voted in two consecutive federal elections. *Id.*¶ 9-11. The U.S. Supreme Court has affirmed that these removals are mandatory under federal

law. *Husted*, 584 U.S. at 767 ("**federal law makes this removal mandatory**.") (emphasis added).

Despite this requirement, Secretary Schmidt's response to Citizen AG's records request revealed that at least 77,188 ineligible registrants remained on Pennsylvania's voter rolls as of November 9, 2022, when they should have been removed. *Id.* ¶ 110-112.

Defendants' continued retention of ineligible voters on the rolls constitutes an ongoing violation of the NVRA. The fact that these individuals remained registered two years after they should have been removed demonstrates systemic noncompliance with federal law. The Election Assistance Commission's data further corroborates these failures, as Pennsylvania's 2020 and 2022 self-reported figures confirm that a significant number of inactive registrants who met the criteria for removal were not taken off the rolls as required. *Id.* ¶ 36-41

Defendants cannot credibly dispute these violations when their own records confirm the failure to conduct timely and complete list maintenance. The NVRA is not optional. Plaintiffs' claims are therefore well-founded and supported by substantial evidence, including Defendants' own admissions.

### B. Secretary Schmidt's Post-Hoc Justifications Do Not Excuse Violations of the NVRA

Defendants attempt to justify their failure to comply with the NVRA through post-hoc rationalizations that do not absolve them of their statutory obligations.

Pennsylvania law requires the Secretary of the Commonwealth to coordinate the state's compliance with the NVRA, yet Secretary Schmidt now claims that any failures were the responsibility of county election officials.  However, this argument is contradicted by Pennsylvania's own admissions in its Election Assistance Commission reports and the Secretary's partial response to Citizen AG's records request.

The NVRA imposes specific obligations on states to maintain accurate and current voter registration rolls. Under the NVRA, states are required to make a "reasonable effort" to remove ineligible voters from the registration lists. *Id.* ¶ 98 ; *see also Husted*, 584 U.S. 756 (2018). This includes conducting a general program to remove the names of ineligible voters due to *inter alia* change of residence.  52 U.S.C. §  20507. The NVRA mandates that any state program or activity designed to protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration rolls must be uniform, nondiscriminatory, and in compliance with the Voting Rights Act. *Public Interest Legal Foundation v. Boockvar*, 431 F.Supp.3d 553 (2019).

The NVRA does not allow states to remove registrants solely for failure to vote. *Husted*, 584 U.S. 756 (2018). However, states can use non-voting as a trigger to send a notice to verify a registered voter's residency, provided the process is uniform and nondiscriminatory *Id.* The NVRA also requires that any removal of

voters must follow specific procedures, including sending a notice and allowing the voter to respond before removal. 52 U.S.C. § 20507.

In short, the NVRA sets forth clear requirements and procedures that must be followed to maintain voter registration rolls; post-hoc justifications by a Secretary of State for failing to comply with the NVRA would not excuse the violation. States must comply with these federal requirements regardless of any conflicting state laws. *See Young v. Fordice*, 520 U.S. 273 (1997). The United States Supreme Court has explicitly held that the NVRA preempts state laws that are inconsistent with its provisions. *Arizona v. Inter-Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

In summary, the Secretary of State cannot excuse violating the NVRA with post-hoc justifications. The NVRA requires states to maintain accurate voter rolls through specific, federally mandated procedures, and compliance with these procedures is mandatory regardless of state law provisions. *Id.* ¶ 98-102.

Additionally, Defendants' suggestion that the continued presence of ineligible voters on the rolls may be due to some voters "reactivating" their registration status is speculative and unsupported by any factual evidence. The NVRA allows inactive voters to reactivate their registration only by responding to election officials or by voting. However, Pennsylvania has provided no data showing that the 77,188 ineligible registrants engaged in either activity. Instead, Defendants rely on vague possibilities rather than demonstrating actual compliance with federal law.

The NVRA does not permit states to ignore list maintenance requirements simply because of administrative burdens or alleged oversight. Nor can Defendants retroactively claim compliance based on unverifiable justifications that contradict their own data. Courts have repeatedly held that compliance with the NVRA is not discretionary, and states must adhere to its voter roll maintenance requirements in real time—not only when forced to do so by litigation. *Id.*¶ 98-101. Defendants' excuses fail to negate the evidence demonstrating Pennsylvania's widespread NVRA violations.

### C. The NVRA Requires Future Compliance, Not Just Corrections of Past Violations

Even if Defendants had recently corrected Pennsylvania's NVRA violations—which no evidence or information give rise to even the slightest inference that the Commonwealth has—such corrective action does not shield Secretary Schmidt from judicial enforcement of his ongoing obligations under the federal law. The NVRA requires future compliance beyond mere corrections of past violations and mandates that states—not counties or cities—must make a "reasonable effort" to remove ineligible voters from the registration lists and maintain accurate and current voter registration rolls. *Husted*, 584 U.S. 756 (2018). This ongoing obligation leave no room for reasonable dispute that compliance with the NVRA is not limited to correcting past violations but includes continuous efforts to ensure the integrity of voter registration lists.

The NVRA is not merely a retrospective statute that requires states to correct past mistakes; rather, it mandates continuous compliance to ensure the integrity and accuracy of voter registration rolls. Courts have consistently recognized that violations of the NVRA require ongoing oversight and injunctive relief is necessary to prevent future noncompliance.

Plaintiffs' claims are not limited to past violations but also seek to ensure that Defendants follow the NVRA's list maintenance procedures going forward. Pennsylvania's failure to remove tens of thousands of ineligible voters from its rolls over a multi-year period demonstrates a systemic deficiency in its voter registration maintenance practices. Without judicial intervention, there is no guarantee that Defendants will comply with their obligations in future election cycles. The fact that Defendants failed to comply for years, and only addressed these deficiencies in response to litigation, underscores the need for court-ordered relief to ensure lasting adherence to the NVRA.

Moreover, the NVRA's public inspection provision grants Plaintiffs the right to monitor compliance by requesting and reviewing voter list maintenance records. Defendants' past failures to produce responsive records in a timely manner further justify judicial oversight to ensure transparency and accountability. The relief sought in this case is not just about correcting prior violations but about preventing future

ones and ensuring that Pennsylvania maintains an accurate and lawful voter registration system.

Accordingly, Plaintiffs' claims are well-pled, supported by clear factual evidence, and necessary to compel Defendants' full compliance with the NVRA moving forward. Accordingly, Defendants' motion to dismiss should be denied.

## **CONCLUSION**

For the foregoing reasons, Secretary Schmidt's Motion to Dismiss should be denied in its entirety.

Dated: March 5, 2025

Respectfully submitted,

/s/ *Rachel L. Dreher*
Rachel L. Dreher
CITIZEN AG
111 NE 1st St, 8th Floor
Miami, FL 33132
Tel: (442) 427-8136
rachel@citizenag.org

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that, in accordance with Local Rule 7.8, Plaintiffs' principal brief is no more than 7,500 words. This Brief in Opposition to Defendant's Motion to Dismiss the Supplemental Complaint is 5,813 words. I have used the word count feature of the word processing system to make this certification.

Dated: March 5, 2025

/s/ *Rachel L. Dreher*
RACHEL L. DREHER

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 5, 2025, a true copy of the foregoing was filed and served via the Court's CM/ECF and/or NextGen electronic system upon all parties of record.

Dated: March 5, 2025

/s/ *Rachel L. Dreher*
RACHEL L. DREHER