**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| 1789 FOUNDATION INC., d/b/a CITIZEN AG, and ANTHONY GOLEMBIEWSKI, | |
| *Plaintiffs*, | |
| v. | Case No.: 3:24-cv-01865-RDM (Hon. Robert D. Mariani) |
| AL SCHMIDT, in his official capacity as Secretary of the Commonwealth, and the COMMONWEALTH OF PENNSYLVANIA, | |
| *Defendants*, | |
| AFT PENNSYLVANIA, and the PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS, | |
| *Intervenor-Defendants*. | |

**BRIEF IN OPPOSITION TO AFT PENNSYLVANIA and the
PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS' MOTION
TO DISMISS THE SUPPLEMENTAL COMPLAINT**

Dated: March 5, 2025

Respectfully submitted,

/s/ *Rachel L. Dreher*
Rachel L. Dreher
CITIZEN AG
111 NE 1st St, 8th Floor
Miami, FL 33132
Tel: (442) 427-8136
rachel@citizenag.org
*Counsel for Plaintiffs*

## TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

INTRODUCTION ......................................................................................... 1

FACTUAL BACKGROUND ......................................................................... 3

STANDARD OF REVIEW............................................................................ 6

ARGUMENT .............................................................................................. 8

  I.  THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS............. 8

    A. THE SUPPLEMENTAL COMPLAINT SUFFICIENTLY ALLEGES AN
       INJURY-IN-FACT THAT CONFERS STANDING UNDER ARTICLE III ............... 9

    B. PLAINTIFFS HAVE STANDING TO ASSERT THEIR PUBLIC INSPECTION
       PROVISION CLAIM UNDER THE NVRA ...................................................... 12

  II. PLAINTIFFS' NVRA CLAIMS ARE WELL-PLED ....................................... 13

    A. SECRETARY SCHMIDT HAS ALREADY ADMITTED TO VIOLATING
       THE NVRA BY FAILING TO REMOVE 77,188 INELIGIBLE VOTERS............. 13

    B. THE NVRA'S NOTICE REQUIREMENT IS INAPPLICABLE WHEREAS
       VIOLATIONS OCCUR WITHIN 30 DAYS OF A FEDERAL ELECTION ............... 14

    CONCLUSION ...................................................................................... 18

# TABLE OF AUTHORITIES

CASES                                                                         PAGE

*Askew v. Church of the Lord Jesus Christ*,
684 F.3d 413 (3d Cir. 2012) .................................................................... 7

*Bellitto v. Snipes*,
268 F. Supp. 3d 1328 (S.D. Fla. 2017) ................................................ 15

*Bognet v. Sec'y of Commonwealth of Pa.*,
980 F.3d 336 (3d Cir. 2020) .................................................................. 17

*Common Cause Ind. v. Lawson*,
937 F.3d 944 (7th Cir. 2019) ................................................................ 18

*Constitution Party v. Aichele, No. 12–2726*,
2013 WL 867183, at *4 (E.D. Pa. Mar. 8, 2013) ...................................... 7

*FEC v. Wisconsin Right to Life, Inc.*,
551 U.S. 449 (2007) .............................................................................. 14

*Fed. Election Comm'n v. Akins*,
524 U.S. 11, 21 (1998) .......................................................................... 18

*Foglia v. Renal Ventures Mgmt., LLC*,
754 F.3d 153 (3d Cir. 2014) .............................................................. 7-8

*Gould Elecs. Inc. v. United States*,
220 F.3d 169 (3d Cir. 2000) .............................................................. 6-7

*In re Schering Plough Corp. Intron*,
678 F.3d 235 (3d Cir. 2012) .............................................................. 6-7

*Judicial Watch, Inc. v. Lamone*,
399 F. Supp. 3d 425 (D. Md. 2019) ................................................ 11, 16

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .............................................................................. 17

*Mayer v. Belichick*,
605 F.3d 223 (3d Cir. 2010) ........................................................................ 8

*Moore v. Ogilvie*,
394 U.S. 814 (1969) ...............................................................................2, 13

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
549 F.2d 884 (3d Cir. 1977) ................................................................... 6-7

*Pa. Prison Soc. v. Cortes*,
508 F.3d 156 (3d Cir. 2007) ................................................................... 5-6

*Reynolds v. Sims*,
377 U.S. 533 (1964) ...................................................................................17

*True the Vote, Inc. v. Hosemann*,
43 F. Supp. 3d 693 (S.D. Miss. 2014) ............................................... 14-15

| FEDERAL STATUTES | PAGE |
|---|---|

Fed. R. Civ. P. 12(b)(1) ............................................................................ 6-7

Fed. R. Civ. P. 12(b)(6) ...........................................................................6, 8

52 U.S.C. § 20510(b) ..................................................................................14

52 U.S.C. § 20510(b)(1) .............................................................................. 8

52 U.S.C. § 20510(b)(2) .............................................................................. 8

52 U.S.C. § 20510(b)(3).........................................................................2, 9, 12

52 U.S.C. §  20507(a)(4) ............................................................................. 3

52 U.S.C. § 20507(i) .............................................................................10, 16

**INTRODUCTION**

This case arises out of the Commonwealth's failure to adhere to the well-established requirements of the National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq*. ("NVRA") which, among other things, requires Pennsylvania's Secretary of State to maintain accurate voter rolls throughout the Commonwealth. Defendants' Motion to Dismiss must be denied because it fundamentally misstates the legal and factual basis of Plaintiffs' claims under the NVRA.

This case is about the Defendants' failure to comply with their legal obligations under the NVRA to maintain accurate voter registration lists and provide public access to voter list maintenance records. The Secretary of the Commonwealth has admitted that at least 77,188 registrants remained on Pennsylvania's voter rolls despite meeting the NVRA's mandatory removal criteria after failing to respond to confirmation notices and not voting in two consecutive federal elections. Plaintiffs seek to ensure compliance with federal law and to protect the integrity of Pennsylvania's electoral process.

AFT Pennsylvania and Pennsylvania Alliance for Retired Americans' (hereinafter, "Defendants") now move to dismiss this case by arguing that this Court lacks jurisdiction, that Plaintiffs lack standing, and that Plaintiffs fail to state a claim. But as detailed herein, Plaintiffs have clearly demonstrated this Court has jurisdiction over their claims as well as the fact that Plaintiffs have sufficiently

alleged concrete injuries that are redressable in full satisfaction of Article III's demands.

Defendants also assert that in the event this Court holds that Plaintiffs do have standing, it should nevertheless still dismiss this action under Fed. R. 12(b)(6) for a purported failure to state a claim. However, this argument is fatally flawed by the fact that Secretary Schmidt himself has already admitted to violating the NVRA and as of the date of this filing, the Commonwealth has not yet fully responded to Citizen AG's public records request despite claiming the October 4, 2024 request was "granted."

At its core, an incomplete or otherwise defective response does not satisfy the Commonwealth's obligations under the NVRA's public inspection provision, nor does it alleviate Secretary Schmidt of liability simply because he violated the law "long enough" to preclude Plaintiffs of the redress they seek. And perhaps most indicative of all, not a single individual within either of Defendants' organizations is subject to removal under the claims asserted herein.

Boiled down to its essence, Defendants' assertion that Plaintiffs lack Article III standing is meritless, and their argument that Plaintiffs failed to provide adequate pre-suit notice under the NVRA is legally and factually incorrect. And for the forthcoming reasons detailed herein, Defendants' Motion to Dismiss should be denied in its entirety.

## FACTUAL BACKGROUND

The National Voter Registration Act of 1993 ("NVRA") mandates that each state conduct a general program to remove ineligible voters from the official list of eligible voters, particularly those who have changed residence. Supplemental Complaint at *Id.*¶ 98-102. Under 52 U.S.C. § 20507(a)(4), voter registration may only be canceled for a change of residence if the registrant either confirms the change in writing or fails to respond to an address-confirmation notice (the "Confirmation Notice") and does not vote in two consecutive federal general elections. *Id.*¶ *Id.*¶ 8-13, 98-102. The NVRA requires that a Confirmation Notice be a prepaid, preaddressed return card sent via forwardable mail, asking the registrant to confirm their residence. *Id.*¶ 8-13. If a registrant fails to respond and does not vote in the following two general elections, their registration must be canceled. *Id.*¶ 8-13, 98-102. The U.S. Supreme Court has affirmed that such removals are mandatory under federal law. "Husted, 584 U.S. at 767 ("federal law makes this removal mandatory.") (emphasis added).".

During the statutory waiting period between the mailing of a confirmation notice and the completion of the two-election cycle, a voter's status is classified as "inactive." *Id.*¶ 8-13. However, inactive voters remain registered and eligible to vote until the statutory removal requirements are met. *Id.*¶ 8-13. The NVRA also imposes transparency obligations, requiring states to maintain and publicly disclose

voter registration records, including information on confirmation notices sent, responses received, and voter removals. *Id.* ¶ 16,75, 84. The U.S. Election Assistance Commission ("EAC") is required to report biennially to Congress on state voter registration practices, based on data provided by state election officials. *Id.* ¶ 14-15. These reports serve as a critical tool for assessing compliance with federal voter list maintenance obligations.  *Id.* ¶ 14-16

Pennsylvania is bound by these statutory requirements. The EAC's Election Administration and Voting Survey ("EAVS") reports include Pennsylvania's self-reported data on voter list maintenance. *Id.* ¶ 33-41. The 2020 EAVS report shows that Pennsylvania sent 753,942 confirmation notices prior to the 2020 election, yet only 116,042 registrants responded. *Id.* ¶ 33-41. This means that at least 637,900 voters were marked inactive before the 2020 election due to their failure to respond. *Id.* ¶ 33-41.  The 2022 EAVS report further revealed that Pennsylvania removed only 360,132 of those inactive registrants after the 2022 midterm elections, leaving 277,768 inactive registrants still on the rolls.  *Id.* ¶ 33-41.

Despite the NVRA's clear requirements, Pennsylvania failed to remove at least 77,188 ineligible voters who should have been removed as of November 9, 2022, the date following the second consecutive federal election. *Id.* ¶ 33-48. Because Pennsylvania's failure to comply with the NVRA by way of its failure to respond to Plaintiffs' request for records under the NVRA's public inspection

provision occurred less than 30 days prior to a federal election, and because the Commonwealth's refusal to fulfil its list maintenance obligations persisted within thirty days of the November 5, 2024, federal election, the statute's 90-day pre-suit notice requirement is waived. *Id.* ¶ 3.

In light of these failures, Plaintiffs submitted an NVRA records request on October 4, 2024, seeking data on the 277,768 inactive registrants, specifically requesting records indicating how many of them had voted in the 2020 or 2022 elections and how many had been removed from the voter rolls. *Id.* ¶ 33-49.   On November 12, 2024, Secretary Al Schmidt responded and admitted that at least 77,188 registrants, who had neither responded to confirmation notices nor voted in the 2020 and 2022 elections, remained on the rolls despite federal law mandating their removal. *Id.* ¶ 33-49.

Pennsylvania's failure to conduct proper list maintenance harms Citizen AG and its members. Citizen AG is a nonprofit organization committed to election integrity and the enforcement of voter registration laws. *Id.* ¶ 91-95. Its members, including Pennsylvania voter Anthony Golembiewski, are harmed by the state's failure to remove ineligible voters, which undermines voter confidence, creates opportunities for election fraud, and dilutes the votes of eligible citizens. *Id.* ¶¶ 115-117. To address these concerns, Citizen AG has expended significant resources investigating Pennsylvania's noncompliance, diverting time and funding that would

otherwise be used for its core mission. *Id.*¶ 112.  This constitutes an injury sufficient to confer standing under *Pa. Prison Soc. v. Cortes*, 508 F.3d 156 (3d Cir. 2007); *see also* Supp. Compl.¶ .

The Commonwealth's continued failure to comply with their NVRA obligations constitutes an ongoing violation of federal law. *Id.*¶ 88-96.  In sum, the NVRA mandates the removal of ineligible voters, and Secretary Schmidt has failed to enforce these provisions demands judicial intervention. *Id.*¶ 88-96Citizen AG has demonstrated a legally sufficient claim, and Defendants' motion to dismiss should be denied. *Id.*¶ 88-96

## <u>STANDARD OF REVIEW</u>

When evaluating a Rule 12(b)(1) motion, a court must first determine whether the motion presents a facial or factual attack on jurisdiction. *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The nature of the attack dictates the applicable standard of review. A facial attack challenges the sufficiency of the complaint's jurisdictional allegations without disputing the underlying facts. *Mortensen*, 549 F.2d at 891. In reviewing a facial challenge, a court must apply the same standard as a Rule 12(b)(6) motion, meaning it must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). The

inquiry is limited to the allegations in the complaint and any documents referenced therein. *In re Schering Plough Corp.*, 678 F.3d at 243. When reviewing a facial attack, the court must accept all allegations in the complaint as true and construe them in favor of the plaintiff. *Mortensen*, 549 F.2d at 891. If, however, the court improperly weighs evidence or resolves factual disputes, it erroneously treats a facial challenge as a factual one. Such an error undermines the plaintiff's procedural protections and may warrant reversal. *Constitution Party v. Aichele*, *No. 12–2726, 2013 WL 867183, at \*4 (E.D. Pa. Mar. 8, 2013)* (improperly treating a facial attack as factual by disregarding plaintiff's allegations).

A factual attack, in contrast, disputes the existence of subject matter jurisdiction based on extrinsic evidence. *Mortensen*, 549 F.2d at 891. In resolving a factual attack, a court may consider evidence outside the pleadings and has discretion to weigh competing facts without affording the plaintiff's allegations a presumption of truth. *Gould Elecs. Inc.*, 220 F.3d at 176. However, a factual attack cannot occur until the defendant has filed an answer or presented competing evidence. *Mortensen*, 549 F.2d at 892 n.17.

If a defendant moves to dismiss under Rule 12(b)(1) before answering the complaint or producing contrary evidence, the motion must be treated as a facial attack. *Askew v. Church of the Lord Jesus Christ*, 684 F.3d 413, 417 (3d Cir. 2012)

("As the defendants had not answered and the parties had not engaged in discovery, the first motion to dismiss was facial.").

For purposes of reviewing a motion to dismiss under Rule 12(b)(6), courts are are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir. 2014) (quotation marks and citation omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## ARGUMENT

## I.  THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS

Defendants' motion to dismiss rests primarily its contention that this court lacks jurisdiction over Plaintiffs' NVRA claims because "concerns about election integrity and vote dilution are speculative, generalized grievances." Defs,' Mot. at 9. But contrary to their assertion, binding precedent holds otherwise and a plain reading of the Supplemental Complaint makes clear that Plaintiffs have sufficiently alleged an injury-in-fact sufficient to confer Article III standing. Therefore, this Court must

deny Defendants' motion to dismiss for any purported defect concerning subject matter jurisdiction.

//

### A. The Supplemental Complaint Sufficiently Alleges an Injury-in-Fact that Confers Standing under Article III.

Under Article III of the U.S. Constitution, a plaintiff must demonstrate (1) injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Mr. Golembiewski, as a registered Pennsylvania voter, has sufficiently alleged injury-in-fact by establishing multiple concrete harms resulting from Pennsylvania's failure to comply with the NVRA, 52 U.S.C. § 20507.

Specifically, the Supplemental Complaint establishes that Pennsylvania failed to remove at least 77,188 ineligible voters who were required to be removed under the NVRA. Maintaining these ineligible voters dilutes the votes of lawful voters, including Mr. Golembiewski, because the resultant impact of maintaining ineligible voters as registered voters results in fraudulent or improper votes being cast. Courts have recognized that vote dilution is a concrete injury that satisfies Article III standing. *Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *Bognet v. Sec'y of Commonwealth of Pa.*, 980 F.3d 336, 355 (3d Cir. 2020) (explaining that "unlawfully counted votes dilute the weight of lawfully cast ballots"). The Supreme Court could not be clearer:

> The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by dilution just as effectively as by outright prohibition.

*Id.* This holding establishes that vote dilution is a judicially cognizable injury because it directly affects an individual's ability to participate in fair and equal elections. It reinforces that any practice that results in the weighting of votes unequally or allows ineligible votes to impact election outcomes constitutes an injury-in-fact sufficient for standing under Article III.

In direct alignment with binding Supreme Court precedent as stated above, the Supplemental Complaint alleges that Defendants' failure to remove ineligible voters undermines the integrity of Pennsylvania's elections and erodes public confidence in their legitimacy and courts have found that harm to election integrity and trust in the democratic process constitutes a cognizable injury. *Id.*¶ 91-95; *see also Common Cause Ind. v. Lawson*, 937 F.3d 944, 949 (7th Cir. 2019) (holding the same).

The NVRA, 52 U.S.C. § 20507(i), mandates public access to voter list maintenance records, which Pennsylvania failed to provide. *Id.*¶ 16. As a member of Citizen AG, Mr. Golembiewski was deprived of his statutory right to review these records, which thereby constitutes a cognizable and concrete injury sufficient to established Article III standing. *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21

(1998) (denial of information that a plaintiff has a legal right to obtain is a sufficient Article III injury).

Pennsylvania, through Secretary Schmidt, has admitted that 77,188 ineligible voters remain on the voter rolls despite federal law requiring their removal. *Id.* ¶ 110. The continued presence of ineligible voters creates an increased risk of fraudulent votes, directly impacting the integrity of elections in which Mr. Golembiewski participates. The state's failure to disclose requested voter list maintenance records under the NVRA definitionally deprives Mr. Golembiewski of his right to review public election data in unequivocal violation of well-established federal law.

To establish Article III standing's third element—redressability—a plaintiff must show that a court ruling in their favor would remedy the injury (Lujan, 504 U.S. at 561). Here, a court order would directly address Mr. Golembiewski's injuries by mandating and ensuring Pennsylvania's compliance with the NVRA's voter list maintenance requirements. The equitable relief sought in the complaint also would compel Pennsylvania to disclose the records that Plaintiffs requested and at all times relevant, were entitled to either inspect or receive, thereby bringing the Commonwealth into compliance with federal election laws now and in the future.

For example, this Court has the authority to order Pennsylvania to remove the 77,188 ineligible voters Secretary Schmidt has already admittedly not removed, resulting in the elimination of vote dilution and the restoration of integrity in the

Commonwealth's elections. The Court can also order Pennsylvania to release the requested records Secretary Schmidt, as of the date of this filing, *still* has not produced. The impact of such an order necessarily would result in Mr. Golembiewski finally having access to the information to which he is legally entitled under the NVRA. Indeed, a judicial order enforcing compliance with the NVRA would protect Mr. Golembiewski's fundamental right to vote, ensuring that Pennsylvania does not repeat these violations in future elections.

Accordingly, Mr. Golembiewski has sufficiently alleged an Article III injury-in-fact because he has suffered vote dilution, loss of election integrity, and a statutory informational injury due to Pennsylvania's failure to remove ineligible voters and provide public records as required under the NVRA. His injuries are fairly traceable to Pennsylvania's unlawful conduct and are redressable by a favorable court decision.

### B. Plaintiffs Have Standing to Assert their Public Inspection Provision Claim under the NVRA.

In an apparent throwaway argument, Defendants allege that Plaintiffs do not have standing to assert their public inspection claim under the NVRA despite the statute on its face making clear that the Commonwealth is obligated to produce for inspection or otherwise tender copies of records concerning *inter alia* election-related matters. Even more compelling is the fact that the Commonwealth *granted* Plaintiffs' request for records, thereby evidencing two outcome determinative facts:

(1) Plaintiffs were entitled to request the records they sought; and (2) Defendants failed to respond to their request with full and complete, accurate records or information. *Id.* ¶ 16,74

There simply is no other way to state this: Plaintiffs sought records, their request was allegedly granted, and the Commonwealth did not produce all records requested that Plaintiffs were entitled to receive or inspect.

## II.  PLAINTIFFS' NVRA CLAIMS ARE WELL-PLED.

### A.  Secretary Schmidt Has Already Admitted to Violating the NVRA by Failing to Remove 77,188 Ineligible Voters

Defendants' own admissions establish their noncompliance with the NVRA's voter list maintenance provisions. *Id.* ¶ 47. The NVRA mandates that states remove from voter rolls individuals who have failed to respond to a Confirmation Notice and who have not voted in two consecutive federal elections. *Id.* ¶ 21-29. The U.S. Supreme Court has affirmed that these removals are mandatory under federal law. Husted, 584 U.S. at 767 (2018) ("federal law makes this removal mandatory.") (emphasis added). Despite this requirement, Secretary Schmidt's response to Citizen AG's records request revealed that at least 77,188 ineligible registrants remained on Pennsylvania's voter rolls as of November 9, 2022, when they should have been removed. *Id.* ¶ 47.

Defendants' continued retention of ineligible voters on the rolls constitutes an ongoing violation of the NVRA. The fact that these individuals remained registered

two years after they should have been removed demonstrates systemic noncompliance with federal law. The Election Assistance Commission's data further corroborates these failures, as Pennsylvania's 2020 and 2022 self-reported figures confirm that a significant number of inactive registrants who met the criteria for removal were not taken off the rolls as required.  *Id.* ¶ 36-41.

Defendants cannot credibly dispute these violations when their own records confirm the failure to conduct timely and complete list maintenance. The NVRA is not optional. Plaintiffs' claims are therefore well-founded and supported by substantial evidence, including Defendants' own admissions.

### B.   The NVRA's Notice Requirement is Inapplicable Whereas Violations Occur within 30 Days of a Federal Election.

Defendants' argue that this Court take a general rule and applies it as if Congress drafted it to be absolute and free of any exception. While it is true that the NVRA generally requires a pre-suit notice be sent to the state before commencing a federal action, Congress carved out an exception to this general rule. Pursuant to 52 U.S.C. § 20510(b)(3), if an NVRA violation "occur[s] within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State . . . before bringing a civil action . . .".

On October 4, 2024, Plaintiffs submitted an open-records request pursuant to the NVRA's public inspection provision that asked the Commonwealth to either produce or make available for inspection records that reflected how many of the

subject 277,768 inactive registrants[1] had cast a ballot in the 2020 General Election or the 2022 Midterm Election. Supp. Compl. at 3. On October 11, 2024, Secretary Schmidt's office sent an "interim response" stating that the Commonwealth would require an additional thirty (30) days to comply with the open-records request, even though the election was just twenty-five (25)  days away. *Id.pg 3 ¶ 3.*

On November 12, 2024, Secretary Schmidt "granted" the records request as evidenced by the letter sent on November 12, 2024, the response notably failed to produce all responsive data or information that had been requested, which under the RTKL, constitutes a denial.

Only one of two things can be true: (1) the failure to respond with the information requested on or before October 11, 2024 constitutes a denial and violation of the NVRA's public inspection provision within thirty (30) days of the November 5, 2024 federal election; or alternatively, (2) the fact that the Commonwealth can unilaterally extend the deadline to respond by invoking a 30-day extension when such extension runs in direct conflict with the NVRA's public inspection provision and its express waiver of the notice requirement within thirty (30) days of a federal election renders the RTKL's unilateral extension provision unconstitutional pursuant to the Supremacy Clause of the United States Constitution.

---

[1] The term "subject inactive registrants" pertains to the 277,768 ineligible voters detailed and described in paragraphs 36-41 of the Supplemental Complaint (ECF No. 46).

The NVRA's public inspection provision, 52 U.S.C. § 20507(i), requires states to make election-related list maintenance records available for public inspection and copying upon request. Courts have consistently held that unreasonable delays or refusals to provide requested NVRA records constitute a violation of the Act. *See Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 441 (D. Md. 2019) (holding that failure to provide voter registration records in a timely manner violated the NVRA's public disclosure mandate).

Here, the Commonwealth, relying solely on *state law*, unreasonably extended the response period from 5 business days, or October 11, 2024, until November 12, 2024, despite there being no question that Plaintiffs were undoubtedly entitled to the records they requested. Thereafter, the Commonwealth acknowledged that it was "granting" the request, yet it still failed to provide all the information requested. In doing so, the Commonwealth unreasonably delayed responding in violation of the NVRA, and to the extent the delay is deemed reasonable solely because the RTKL permits extensions of an additional thirty (30) days, such provision is unconstitutional as it directly conflicts with what is reasonable under federal law.

Congress enacted the 30-day waiver provision to ensure that states cannot evade NVRA compliance by delaying disclosure of election records until after an election has passed. To hold otherwise would permit election officials to run out the clock on transparency and prevent legal challenges from being filed in time to secure

meaningful relief. When Congress enacted 52 U.S.C. § 20510(b)(3), it expressly waived the NVRA's pre-suit notice requirement for violations occurring within 30 days of a federal election. Congress could have chosen to exclude violations of the NVRA's public inspection provision from this waiver—but it did not. The statutory text does not distinguish between different types of NVRA violations. Therefore, any attempt by the Commonwealth to invoke a state law extension to delay compliance would contradict federal law and undermine the entire purpose of the NVRA's 30-day waiver provision.

As such, and because this denial occurred within 30 days of the November 5, 2024 election, the NVRA's waiver of the 90-day notice requirement under 52 U.S.C. § 20510(b)(3) was directly triggered, thereby vacating Plaintiffs need to provide written notice as a condition precedent to maintaining this action. And to the extent this Court finds the denial did not occur until November 12, 2024, the result is the same as the delay was unreasonable. Secretary Schmidt's reliance on Pennsylvania's RTKL to unreasonably delay is *per se* unconstitutional because state law (e.g., the RTKL) cannot conflict with federal law (e.g., the NVRA) as made clear by the Supremacy Clause. Accordingly, and assuming *arguendo* this court were to find that the denial did not occur until November 12, 2024, such holding facially demonstrates the very conflict at issue between the Commonwealth's RTKL and well-established

federal law. Under such circumstances, the state law (or related relevant provision) must fall and be struck as unconstitutional.

Simply stated, Defendants cannot ignore 52 U.S.C. § 25010(b)(3) only to then argue a 90-day notice requirement bars this action. It is black letter law that "[i]f the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State . . . before bringing a civil action . . .". *Id.* For that reason, and based on the NVRA violation that occurred within 30 days of a federal election, Defendants' motion to dismiss must be denied on any purportedly defective pre-suit notice requirement grounds.

## **<u>CONCLUSION</u>**

For the foregoing reasons, AFT Pennsylvania and Pennsylvania Alliance for Retired Americans' to Dismiss should be denied in its entirety.

Dated: March 5, 2025

Respectfully submitted,

/s/ *Rachel L. Dreher*
Rachel L. Dreher
CITIZEN AG
111 NE 1st St, 8th Floor
Miami, FL 33132
Tel: (442) 427-8136
rachel@citizenag.org

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that, in accordance with Local Rule 7.8, Plaintiffs' principal brief is no more than 7,500 words. This Brief in Opposition to Defendant's Motion to Dismiss the Supplemental Complaint is 4,134 words. I have used the word count feature of the word processing system to make this certification.

Dated: March 5, 2025

/s/ <i>Rachel L. Dreher</i>
RACHEL L. DREHER

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 5, 2025, a true copy of the foregoing was filed and served via the Court's CM/ECF and/or NextGen electronic system upon all parties of record.

Dated: March 5, 2025

/s/ *Rachel L. Dreher*
RACHEL L. DREHER