**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| 1789 FOUNDATION INC., d/b/a CITIZEN AG, and ANTHONY GOLEMBIEWSKI, | |
| *Plaintiffs*, | Case No. 3:24-cv-01865-RDM (Hon. Robert D. Mariani) |
| *v.* | |
| AL SCHMIDT, in his official capacity as Secretary of the Commonwealth, | |
| *Defendant*, | |
| AFT PENNSYLVANIA, and the PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS, | |
| *Intervenor-Defendants*. | |

**REPLY BRIEF IN SUPPORT OF AFT PENNSYLVANIA AND THE
PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS'
MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................... 1

ARGUMENT ..................................................................................... 3

    I.    Plaintiffs fail to plead Article III standing. ..................................... 3

        A.   Plaintiffs lack standing for their list-maintenance claim (Count II). ..... 3

        B.   Plaintiffs lack standing for their record-inspection claim (Count I). ..... 9

    II.   Plaintiffs fail to state a claim upon which relief may be granted. .............. 10

        A.   Plaintiffs do not adequately allege that Pennsylvania has failed to make reasonable efforts to maintain its voter rolls .............................. 11

        B.   Plaintiffs have not complied with the NVRA's notice requirement. ... 15

CONCLUSION ................................................................................... 19

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8 ........................... 21

CERTIFICATE OF SERVICE ................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ACLU v. Phila. City Comm'rs,*
    872 F.3d 175 (3d Cir. 2017).................................................................18

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .........................................................................13

*Baker v. Carr,*
    369 U.S. 186 (1962) ..........................................................................5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .........................................................................13

*Bognet v. Sec'y Commonwealth of Pa.,*
    980 F.3d 336 (3d Cir. 2020).............................................................7, 8

*Bost v. Ill. State Bd. of Elections,*
    114 F.4th 634 (7th Cir. 2024)..............................................................6

*Campaign Legal Ctr. v. Scott,*
    49 F.4th 931 (5th Cir. 2022).............................................................10

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ..........................................................................9

*Common Cause Ind. v. Lawson,*
    937 F.3d 944 (7th Cir. 2019)..............................................................5

*Donald J. Trump for President, Inc. v. Boockvar,*
    493 F. Supp. 3d 331 (W.D. Pa. 2020).................................................8

*Donald J. Trump for President, Inc. v. Boockvar,*
    502 F. Supp. 3d 899 (M.D. Pa. 2020)................................................8

*Drouillard v. Roberts*,
No. 24-cv-06969-CRB, 2024 WL 4667163 (N.D. Cal. Nov. 4, 2024)............14

*Election Integrity Project Cal., Inc. v. Weber*,
113 F.4th 1072 (9th Cir. 2024)....................................................................6

*Est. of Van Emburgh ex rel. Van Emburgh v. United States*,
95 F.4th 795 (4th Cir. 2024).......................................................................4

*Fed. Election Comm'n v. Akins*,
524 U.S. 11 (1998) .....................................................................................9

*Free Speech Coal., Inc. v. Att'y Gen.*,
974 F.3d 408 (3d Cir. 2020).......................................................................4

*Hedges v. United States*,
404 F.3d 744 (3d Cir. 2005).......................................................................3

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ...................................................................................4

*Jud. Watch, Inc. v. Lamone*,
399 F. Supp. 3d 425 (D. Md. 2019) ...........................................................17

*Jud. Watch, Inc. v. Pennsylvania*,
524 F. Supp. 3d 399 (M.D. Pa. 2021) .........................................................17

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
926 F.2d 1406 (3d Cir. 1991).....................................................................3

*Kelly v. RealPage Inc.*,
47 F.4th 202 (3d Cir. 2022)........................................................................10

*Lance v. Coffman*,
549 U.S. 437 (2007) ...................................................................................5

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
800 F.3d 99 (3d Cir. 2015).........................................................................1

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................5

*NetworkIP, LLC v. FCC*,
    548 F.3d 116 (D.C. Cir. 2008) ......................................................................4

*O'Rourke v. Dominion Voting Sys. Inc.*,
    No. 20-CV-03747-NRN, 2021 WL 1662742 (D. Colo. Apr. 28, 2021)............6

*Parkell v. Markell*,
    622 Fed. App'x 136 (3d Cir. 2015).................................................................13

*Pub. Int. Legal Found. v. Benson*,
    721 F. Supp. 3d 580 (W.D. Mich. 2024) .......................................................14

*Pub. Int. Legal Found. v. Boockvar*,
    370 F. Supp. 3d 449 (M.D. Pa. 2019) ..................................................... 16, 19

*Pub. Int. Legal Found. v. Boockvar*,
    495 F. Supp. 3d 354 (M.D. Pa. 2020) ...........................................................13

*Republican Nat'l Comm. v. Benson*,
    No. 1:24-cv-262, 2024 WL 4539309 (W.D. Mich. Oct. 22, 2024) .... 10, 13, 14

*Reschenthaler v. Schmidt*,
    No. 1:24-CV-1671, 2024 WL 4608582 (M.D. Pa. Oct. 29, 2024) ...................8

*Reynolds v. Sims*,
    377 U.S. 533 (1964) ........................................................................................5

*Scott v. Schedler*,
    771 F.3d 831 (5th Cir. 2014).........................................................................17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ........................................................................................7

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................................9

iv

*United States v. Craig*,
No. CR 21-338, 2024 WL 449386 (W.D. Pa. Feb. 6, 2024) ..........................18

*United States v. Munsingwear, Inc.*,
340 U.S. 36 (1950) ......................................................................7

*Victor v. Varano*,
No. 3:11-CV-891, 2012 WL 2367095 (M.D. Pa. June 21, 2012)......................2

*W.C. Motor Co. v. Talley*,
63 F. Supp. 3d 843 (N.D. Ill. 2014) ..................................................4

*In re W.R. Grace & Co.*,
475 B.R. 34 (D. Del. 2012) ...........................................................7

*Walsh v. Fusion Japanese Steakhouse, Inc.*,
No. 2:19-CV-00496, 2021 WL 2917795 (W.D. Pa. July 12, 2021) .................4

*Wood v. Raffensperger*,
981 F.3d 1307 (11th Cir. 2020)......................................................6

## STATUTES

25 Pa. C.S. § 1901...................................................................14

52 U.S.C. § 20507 ............................................................... 2, 13

52 U.S.C. § 20510...................................................................15

## RULES

Fed. R. Civ. P. 12(b) ......................................................... 1, 2, 19

Fed. R. Civ. P. 15 ...............................................................2, 9

## INTRODUCTION

Plaintiffs' election-eve gambit to upend Pennsylvania's voter rolls has now fizzled into a confused attempt to indiscriminately disenfranchise tens of thousands of voters. Plaintiffs' ever-changing theory of the case is riddled with holes that require dismissal. They fail to advance any legally sound theory for standing, fail to grapple with limitations in the snapshot registration data they rely on, and fail to excuse themselves from complying with the NVRA's clear pre-suit notice requirement.

On standing, Plaintiffs push forward solely with a widely discredited "vote dilution" theory of injury that the Third Circuit, alongside many other federal courts, has rightly rejected. Notably, Plaintiffs assert this flawed standing theory only as to the individual Plaintiff, Mr. Golembiewski. As to the organizational Plaintiff, Citizen AG, Plaintiffs are simply silent. By identifying no injury at all to Citizen AG in their response briefs, Plaintiffs ignore that the "burden of establishing federal jurisdiction rests" with them as "the party asserting its existence." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). Because Plaintiffs cannot carry their burden as to standing, the case must be dismissed under Rule 12(b)(1).

Plaintiffs' pleadings on the merits are similarly flawed, though the Court need not reach them. To plausibly allege a violation of the NVRA's list-maintenance requirements, Plaintiffs must plead facts showing Pennsylvania is not "conduct[ing]

a general program that makes a reasonable effort to remove the names of ineligible voters[.]" 52 U.S.C. § 20507(a)(4). Yet they do not allege any specific breakdown or legals deficiency in Pennsylvania's list-maintenance policies and practices. Instead, they continue to misconstrue the data they received from the Secretary, ignoring that the thousands of voters they target could have remained properly on the rolls under the NVRA. In short, Plaintiffs' allegations nowhere offer a plausible inference that the Commonwealth is not engaged in "reasonable" efforts at list maintenance. As for Plaintiffs' record-inspection claim, any alleged violation by the Secretary occurred *after* the 2024 general election, meaning Plaintiffs were required to provide written notice of any alleged NVRA violation. They failed to do so, which is fatal to their claim. Plaintiffs' contrary arguments find no textual support in the NVRA and confuse state law public records rules with federal law—a point on which Plaintiffs have seesawed back and forth as it suits them. At bottom, their failure to provide the NVRA's required notice dooms their record-inspection claim. Accordingly, Plaintiffs' pleadings may alternatively be dismissed under Rule 12(b)(6).[1]

---

[1] Under Rule 15(d), Plaintiffs' supplemental complaint "does not replace [the] extant pleading, but instead supplements that pleading." *Victor v. Varano*, No. 3:11-CV-891, 2012 WL 2367095, at *6 (M.D. Pa. June 21, 2012). Thus, if the Court grants either motion to dismiss here, it should dismiss the Complaint and the Supplemental Complaint, both of which remain operative as pleadings.

# ARGUMENT

## I. Plaintiffs fail to plead Article III standing.

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). But Plaintiffs still fail to put forward a cognizable theory of injury. On their list-maintenance claim (Count II), Plaintiffs have forfeited any argument for Citizen AG's organizational or associational standing, and their speculative theories about voter fraud and vote dilution have been widely rejected as generalized grievances that do not confer Article III standing. As for their record-inspection claim (Count I), Plaintiffs do not identify *any* concrete adverse consequences stemming from the alleged denial of their record request.

### A. Plaintiffs lack standing for their list-maintenance claim (Count II).

Plaintiffs fail to adequately allege that either Citizen AG or Mr. Golembiewski has standing to demand that Pennsylvania purge thousands of voters from its registration rolls. As for Citizen AG, Plaintiffs do not even *try* to explain why the group has standing, including under either an organizational or associational standing theory. In fact, Plaintiffs' briefs simply ignore Citizen AG's standing altogether, notwithstanding that both Intervenors and the Secretary challenged the group's standing in their motions to dismiss. *Compare* ECF No. 54 ("Intervenors'

Br.") at 9–16 (challenging Citizen AG's standing), *with* ECF No. 57 ("Opp'n") at 9–13 (ignoring arguments), *and* ECF No. 56 at 17–20 (same). By failing to respond to these arguments, Plaintiffs have forfeited any argument in support of Citizen AG's standing. *See Walsh v. Fusion Japanese Steakhouse, Inc.*, No. 2:19-CV-00496, 2021 WL 2917795, at *5 (W.D. Pa. July 12, 2021) ("A party that fails to address an argument in its brief in opposition . . . waives that argument" (collecting authority)).[2] And in any event, Plaintiffs have plainly failed to carry their burden of persuasion as to Citizen AG's standing and offer nothing to remedy the Court's "grave concerns as to [its] standing." ECF No. 20 at 15.[3]

---

[2] While arguments *challenging* a federal court's subject matter jurisdiction cannot be forfeited, the reverse is not true—"the *proponent* of subject matter jurisdiction, as with any party that bears the burden on a particular point, may forfeit an argument that could have been made to *support* jurisdiction." *W.C. Motor Co. v. Talley*, 63 F. Supp. 3d 843, 852 (N.D. Ill. 2014) (collecting cases); *see also Est. of Van Emburgh ex rel. Van Emburgh v. United States*, 95 F.4th 795, 800 (4th Cir. 2024) ("a plaintiff may forfeit an argument *in favor of* subject matter jurisdiction"); *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) ("arguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice").

[3] Even if Plaintiffs had not forfeited any argument about Citizen AG's standing, Mr. Golembiewski's clear lack of standing means Plaintiffs have failed to establish that Citizen AG has "members [who] would otherwise have standing to sue in their own right"—the first element necessary for associational standing. *Free Speech Coal., Inc. v. Att'y Gen.*, 974 F.3d 408, 421 (3d Cir. 2020) (cleaned up) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)); *see* ECF No. 46 ("Suppl. Compl.") ¶ 4 (alleging "associational standing established by its Pennsylvania members").

Plaintiffs fare no better when it comes to Mr. Golembiewski because they fail to explain how he has suffered a "concrete and particularized" injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). They assert only one theory of injury on his behalf, namely that "[m]aintaining ineligible voters [on the voter rolls] dilutes the votes of lawful voters" like Mr. Golembiewski. Opp'n at 9. But as Plaintiffs' own argument makes clear, such an injury is equally shared by *all* "lawful voters"— a classic generalized grievance insufficient to confer standing. *See Lance v. Coffman*, 549 U.S. 437, 441–42 (2007). Plaintiffs simply ignore the mountain of case law cited by Intervenors making clear that such a generalized theory of harm is not cognizable. *See* Intervenors' Br. at 10–12 (collecting cases).

Rather than grapple with these applicable authorities, Plaintiffs instead rely on a single inapposite case, *Reynolds v. Sims*, addressing vote dilution in a distinct context. *See* Opp'n at 9–10. *Reynolds* recognized that vote dilution can be a concrete injury when "the right to vote of certain citizens [i]s effectively impaired" from the "debase[ment] and dilut[ion]" caused by legislative malapportionment. 377 U.S. 533, 556 (1964) (citing *Baker v. Carr*, 369 U.S. 186 (1962)).[4] But this is not a

---

[4] Plaintiffs also cite *Common Cause Ind. v. Lawson*, 937 F.3d 944, 949 (7th Cir. 2019), for the proposition that allegations about harm to election integrity and loss of public confidence in elections can supply standing. *See* Opp'n at 10. *Lawson* says

redistricting case, and courts have consistently distinguished vote dilution theories in "racial gerrymandering and malapportionment contexts" from cases like this one. *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (holding that vote dilution may be a basis for standing where state weighs one ballot more than another but is otherwise a "generalized grievance" where each vote is weighed similarly). Standing doctrine in vote dilution claims in the malapportionment context has no application here—no Pennsylvania voter's ballot is impacted more or less by the alleged presence of improper registrants on the rolls. Even if true, all lawful voters would be impacted similarly. That is why "every court to have considered a 'vote dilution' claim analogous to the one raised by [Plaintiffs] in this case has rejected the claim." *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1089 n.13 (9th Cir. 2024) (collecting cases); *see also Bost v. Ill. State Bd. of Elections*, 114 F.4th 634, 640–41 (7th Cir. 2024); *Wood*, 981 F.3d at 1314–15; *O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-03747-NRN, 2021 WL 1662742, at *9 (D. Colo. Apr. 28, 2021) (recognizing "veritable tsunami of decisions finding no Article

---

no such thing. That case held that voting rights organizations adequately pled organizational standing where, supported by declarations, they alleged that a state law making it *easier* to remove voters from the registration rolls harmed the organizations directly by forcing them to divert resources to uphold their voter registration missions. *See Lawson*, 937 F.3d at 950–52. Nowhere does the decision suggest that abstract theorization about election integrity in an effort to purge voters suffices to supply an Article III injury.

III standing in near identical cases to the instant suit"), *aff'd*, No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022).

The Third Circuit is squarely among this chorus of courts, holding in *Bognet v. Secretary Commonwealth of Pennsylvania* that this kind of "alleged vote dilution" is "not [] a concrete injury." 980 F.3d 336, 354 (3d Cir. 2020), *vacated sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021). *Bognet* distinguished "gerrymandering cases in which votes were weighted differently," and rejected vote dilution standing premised on the "dilution of lawfully cast ballots by the 'unlawful' counting of invalidly cast ballots," which is precisely what Plaintiffs allege here. *Id.* at 355. As *Bognet* concluded, "[a]ny alleged harm of vote dilution that turns not on the proportional influence of votes,"—such as in the redistricting and malapportionment contexts—"strikes us as quintessentially abstract . . . and 'divorced from any concrete harm.'" *Id.* at 356 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). That is exactly the case here.[5]

Plaintiffs puzzlingly suggest that *Bognet* actually supports them. According to them, *Bognet* says that "unlawfully counted votes dilute the weight of lawfully

---

[5] The Supreme Court's vacatur of *Bognet* was not based on the merits or the decision but rather in keeping with its practice of vacating opinions that become moot on appeal. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). The decision "remains useful for persuasive authority purposes" as to Plaintiffs' flawed vote dilution theory. *In re W.R. Grace & Co.*, 475 B.R. 34, 156 n.128 (D. Del. 2012) (collecting cases).

cast ballots." Opp'n at 9 (purporting to cite *Bognet*). But that language does not appear *anywhere* in the decision. Plaintiffs instead seem to be misquoting the argument that the "Plaintiffs advance[d]" in *Bognet*, *see* 980 F.3d at 355, but which the Third Circuit soundly rejected, *id.* (citing *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 391 (W.D. Pa. 2020)). Notwithstanding Plaintiffs' glaring mistake, district courts within this Circuit have uniformly recognized that "*Bognet* expressly rejected this [dilution] theory of standing" and that vote dilution theories are "foreclosed under *Bognet.*" *Donald J. Trump for President, Inc. v. Boockvar*, 502 F. Supp. 3d 899, 910 n.37 & n.50 (M.D. Pa.), *aff'd sub nom. Donald J. Trump for President, Inc. v. Sec'y of Pa.*, 830 F. App'x 377 (3d Cir. 2020); *see also Reschenthaler v. Schmidt*, No. 1:24-CV-1671, 2024 WL 4608582, at *7 (M.D. Pa. Oct. 29, 2024) (dismissing for lack of standing after concluding that "*Bognet*'s standing analysis retains persuasive value" (citing *Bognet*, 980 F.3d at 352–54)).

Finally, Plaintiffs ignore the other standing deficiencies highlighted by Intervenors. For one, Mr. Golembiewski's vote dilution theory is not only generalized, but also entirely speculative. *See* Intervenors' Br. at 11–12. As explained, this theory of injury relies on pure conjecture that improperly registered voters will commit voter fraud at some point in the future. *Id.* (collecting cases rejecting speculation about future voter fraud). And it is doubly speculative in its assumption that the voters at issue are improperly registered. *See infra* Part II.

Plaintiffs fail to allege any well-pled facts that could substantiate these "highly speculative fear[s]." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Nor do Plaintiffs acknowledge the related traceability and redressability problems identified by Intervenors. *See* Intervenors' Br. at 12–13. They have thus failed to plausibly allege Mr. Golembiewski has standing as to the list-maintenance claim.

**B.    Plaintiffs lack standing for their record-inspection claim (Count I).**

Plaintiffs also fail to allege that either Citizen AG or Mr. Golembiewski has standing as to the record-inspection claim.[6] Their response brief insists that the "denial of information that a plaintiff has a legal right to obtain is a sufficient Article III injury" on its own. Opp'n at 10–11 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998)). But they ignore more recent precedent making clear that Plaintiffs must allege "downstream consequences" from the denial of such information. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) (quotation omitted). The mere denial of such information, on its own, is not enough because an "asserted informational injury that causes no adverse effects cannot satisfy

---

[6] In their supplemental pleading, Plaintiffs modified their First Claim for Relief to reflect Mr. Golembiewski as a claimant. *Compare* ECF No. 1 at 16, *with* Suppl. Compl. at 19. This addition is not proper under Rule 15(d) because it does not concern an "occurrence, or event that happened *after* the date" of Plaintiffs' complaint. Fed. R. Civ. P. 15(d) (emphasis added). It was Citizen AG, not Mr. Golembiewski, who requested records from the Secretary prior to this litigation, *see, e.g.*, Suppl. Compl. ¶¶ 65–66, making it unclear what basis he has to join this claim. In any event, Mr. Golembiewski lacks standing as to this claim for the same reasons as Citizen AG.

Article III." *Id.* at 441–42 (quotation omitted). As the Third Circuit has held, *TransUnion* establishes that "to state a cognizable informational injury a plaintiff must allege that they failed to receive required information, *and* that the omission led to adverse effects or other downstream consequences, and such consequences have a nexus to the interest Congress sought to protect." *Kelly v. RealPage Inc.*, 47 F.4th 202, 214 (3d Cir. 2022) (emphasis added) (cleaned up); *see also Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 936 (5th Cir. 2022) (holding organization lacked standing to pursue NVRA records claim because it failed to allege a downstream injury in fact). Plaintiffs once more do not even try to identify *any* concrete adverse consequences stemming from the alleged denial of their record request. Accordingly, both Plaintiffs lack standing as to Count I as well.

## II.    Plaintiffs fail to state a claim upon which relief may be granted.

Even if Plaintiffs possessed standing, their pleadings still must be dismissed for failure to state a claim. Rather than identifying specific deficiencies in Pennsylvania's list-maintenance procedures—as they must, *see Republican Nat'l Comm. v. Benson*, No. 1:24-cv-262, 2024 WL 4539309, at *13 (W.D. Mich. Oct. 22, 2024)—Plaintiffs continue to rely exclusively on incomplete voter registration data that does not plausibly support their NVRA claim. Moreover, this data's limitations are substantively similar to those this Court found fatal last fall when it denied Plaintiffs' emergency motion. *See* ECF No. 20 at 26 & n.7 (rejecting Plaintiffs'

theories as "simplistic" and "speculative"). As for their record-inspection claim, Plaintiffs still offer no cogent justification for their failure to provide the NVRA's required pre-suit notice.

### A.   Plaintiffs do not adequately allege that Pennsylvania has failed to make reasonable efforts to maintain its voter rolls.

In a one-page discussion of the merits, Plaintiffs insist that the Secretary made certain "admissions" that establish his "noncompliance" with the NVRA. Opp'n at 13. What Plaintiffs misconstrue as "admissions" are just excerpts from their own pleadings, which in turn misunderstand cherry-picked data from the Secretary's November 12 disclosures. *See* Suppl. Compl. ¶ 47. The Secretary's snapshot registration data do not, in fact, "reveal[]" that "at least 77,188 ineligible registrants remained on Pennsylvania's voter rolls as of November 9, 2022." Opp'n at 13. Plaintiffs never asked for data that could plausibly support such an inference. Instead, Plaintiffs' October 4, 2024 requests only sought, as relevant here, the number of voters remaining on the rolls who (i) did not respond to confirmation notices between 2018 and 2020; and (ii) did not vote in the 2020 or 2022 federal elections. *See* Suppl. Compl. ¶ 46. But as the Secretary warned in the very response upon which Plaintiffs now rely, voters falling into those two categories would remain properly registered if they had (i) contacted their election office or (ii) attempted to re-register. *See* Intervenors' Br., Ex A, ECF No. 54-1, at 2. In other words, such voters could *not* be lawfully removed, yet still would be swept up in

11

Plaintiffs' inexact requests. Plaintiffs' position that these voters "should have been removed" from Pennsylvania's voter rolls, Opp'n at 13, is not only incorrect as a matter of law, but is defeated by their concession that these individuals would have been eligible to vote had they simply "re-register[ed]." Suppl. Compl. ¶ 47. The pleadings provide no reason to believe that is not precisely what happened.

This is just one of Plaintiffs' mistaken assumptions, but it is emblematic of the broader defect that has plagued Plaintiffs' lawsuit from the beginning. Rather than allege any specific deficiency in Pennsylvania's list-maintenance program, Plaintiffs continue to rely solely on snapshot data that cannot plausibly support their NVRA claim. *See* ECF No. 20 at 26 & n.7 (concluding Plaintiffs' "simplistic" theories relying on snapshot data were "without proper foundation and [] purely speculative"). As the Secretary explained, there are a litany of other reasons why the information Plaintiffs rely on do not indicate any insufficiency in the Commonwealth's list-maintenance program. *See* ECF No. 53 at 15–17 (listing other limitations of the data requested by Plaintiffs, including that once-removed voters could have re-registered by November 2024 and still appeared in Plaintiffs' requested data). Instead of grappling with these complexities of list maintenance, Plaintiffs attempt to waive them away as "post-hoc justifications." ECF No. 56 at 23. That Plaintiffs are just now acknowledging them does not make them "post hoc." Indeed, the Secretary informed Plaintiffs about the limitations of the data they sought

when he sent the November 12 disclosures. *See* Intervenors' Br., Ex A, ECF No. 54-1. Plaintiffs' mistaken assumptions doom their theories, rendering their allegations "equally consistent with lawful . . . behavior" and "insufficient to state a plausible claim." *Parkell v. Markell*, 622 Fed. App'x 136, 141 (3d Cir. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567–68 (2007)).

Separate and apart from Plaintiffs' incorrect assumptions about the Secretary's disclosures, Plaintiffs have also not pleaded a plausible NVRA violation because they have not alleged that the Commonwealth has been anything but reasonable in its list-maintenance efforts. *See* 52 U.S.C. § 20507(a)(4). Nothing more is required of states under the NVRA. Plaintiffs offer no response to Intervenors' on-point authority establishing that NVRA violations must be based on something more than conclusory allegations that a state's list-maintenance program is "not reasonable." *Benson*, 2024 WL 4539309, at *13. In other words, Plaintiffs fail to state an adequate NVRA list-maintenance claim because they have not "allege[d] any specific breakdown in [the Commonwealth's] removal program," and failed to "allege some factual context to 'nudge' their statutory violation claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pub. Int. Legal Found. v. Boockvar*, 495 F. Supp. 3d 354, 359 (M.D. Pa. 2020) (denying relief on NVRA claim where there was no

"allegation, let alone proof, of a specific breakdown in Pennsylvania's voter registration system").

Even if Plaintiffs were right about the data (and they are not), the relevant question is not, as Plaintiffs frame it, whether any of those voters remain registered: "The NVRA does not require [Pennsylvania] to immediately remove every voter who may [have] become ineligible." *Pub. Int. Legal Found. v. Benson*, 721 F. Supp. 3d 580, 596 (W.D. Mich. 2024). Plaintiffs instead must plausibly allege that Pennsylvania is not making a "reasonable effort," which is all "the NVRA requires." *Id.* at 597. Accordingly, the correct question is whether there is a "specific breakdown" in list maintenance. *Benson*, 2024 WL 4539309, at *13. And on that question, Plaintiffs have nothing to say.

Far from alleging any sort of "breakdown," Plaintiffs concede that Pennsylvania has already removed hundreds of thousands of inactive voters from its rolls over the challenged period, *see* Suppl. Compl. ¶¶ 40, 105—an allegation consistent with a "careful and deliberate" removal process, *Drouillard v. Roberts*, No. 24-cv-06969, 2024 WL 4667163, at *10 (N.D. Cal. Nov. 4, 2024). Nor have Plaintiffs identified any deficiency in the Commonwealth's list-maintenance rules as drafted by the Legislature or carried out by election officials. *Compare* Intervenors' Br. at 19 (citing 25 Pa. C.S. § 1901), *with* Opp'n at 13–14 (offering no response to this argument). In short, Count II fails to adequately state a claim because

Plaintiffs fail to allege either that (1) Pennsylvania has not adopted laws implementing a reasonable list-maintenance program; or (2) that Pennsylvania's statutory list-maintenance program has broken down in some identifiable (and redressable) way.

### B.    Plaintiffs have not complied with the NVRA's notice requirement.

The NVRA clearly required Plaintiffs to provide notice to the Secretary of deficiencies in his record production before suing. *See* 52 U.S.C. § 20510(b)(1)–(2). Plaintiffs' failure to provide such notice warrants dismissal of Plaintiffs' record-inspection claim.

Plaintiffs attempt to muddy the waters by obscuring a straightforward inquiry. Ordinarily, a party must provide written notice of an NVRA violation to a state's chief election official and then wait 90 days before filing a civil action. *See id*. However, the notice period is waived if a violation occurs within 30 days of an election. *See id.* § 20510(b)(2), (3). The only relevant question then is whether the Secretary's alleged NVRA "violation" of failing to produce responsive records to Plaintiffs "occurred" within the 30 days prior to the November 5, 2024 election. If so, Plaintiffs would be excused from complying with the notice requirement. *See id.* § 20510(b)(3). But as this Court already noted in its **November 4** order, Plaintiffs had not "set forth any viable assertion, argument, or evidence" that Plaintiffs had "been improperly denied any records" by the Secretary up to that point. *See* ECF

No. 20 at 24. Given that, the *earliest* any violation could have occurred is November 12—when the Secretary provided Plaintiffs with records that they now allege are incomplete. But November 12, 2024 was, of course, not within 30 days of any then-upcoming election, meaning the NVRA required Plaintiffs to send notice to the Secretary of the alleged deficiencies in his record production and wait 90 days before suing. *See Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 457 (M.D. Pa. 2019).

Plaintiffs' only response is the exaggerated claim that the Secretary "unreasonably delayed" his responses by taking five weeks to produce records to purportedly "run out the clock on transparency and prevent legal challenges from being filed in time to secure meaningful relief" before the 2024 election. Opp'n at 16. Plaintiffs' own litigation tactics render this charge an audacious one. Their lawsuit—filed a mere six days before the November 2024 election—was premised entirely on survey data published *almost a year and a half earlier* in June 2023. *See* ECF No. 1-3. After sitting on that report for 16 months, Plaintiffs waited until just one month before a federal general election to request records concerning hundreds of thousands of voters, *see* ECF No. 1-4, but fault the Secretary for taking a little over a month to respond to their voluminous requests. *See* Opp'n at 14–16. While Plaintiffs may have preferred an even speedier response, nothing in the NVRA requires it. In fact, Plaintiffs fail to cite a single case supporting their assertion that

the Secretary's response to their records request was untimely under the NVRA, never mind that he was required to produce records prior to the November 5 election. The sole case Plaintiffs cite, *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019), only addressed requested records that were *never* turned over to the requesting plaintiffs—a far cry from the Secretary's timely response and good faith efforts here.

For good reason, the NVRA's 30-day notice exception does not sanction ambushes on election officials days before they are tasked with administering elections. Plaintiffs' argument that they may issue last-minute records requests and then immediately sue while officials labor to comply with them is "wholly devoid of textual support in the statute," and even more baseless given "the defendants' demonstrated desire to comply with the NVRA" here. *Scott v. Schedler*, 771 F.3d 831, 836 (5th Cir. 2014) (dismissing NVRA suit for lack of notice). Indeed, the notice requirement is meant to "provide states . . . an opportunity to attempt compliance before facing litigation." *Jud. Watch, Inc. v. Pennsylvania*, 524 F. Supp. 3d 399, 409 (M.D. Pa. 2021) (citing *Scott*, 771 F.3d at 836). And while Plaintiffs argue that applying the plain language of the NVRA to require pre-suit notice would "prevent legal challenges from being filed in time to secure meaningful relief," Opp'n at 12, the NVRA prohibits the type of systematic purges Plaintiffs demand in the last 90 days before an election in order to avoid the "devastating impact purging

17

efforts previously had on the electorate." *ACLU v. Phila. City Comm'rs*, 872 F.3d 175, 178 (3d Cir. 2017).

Finding no support in the NVRA itself, Plaintiffs' last-ditch argument is that Pennsylvania's Right to Know Law ("RTKL") is "unconstitutional" and must "fall and be struck." Opp'n at 18. That misguided argument is equal parts irrelevant and mistaken. To start, Pennsylvania's RTKL plainly does not govern the timeliness of the Secretary's response under the NVRA; even if the Secretary missed the applicable state law deadline, that would not have constituted an NVRA violation. *See United States v. Craig*, No. CR 21-338, 2024 WL 449386, at *3 (W.D. Pa. Feb. 6, 2024) ("State law cannot preempt federal law."). In any event, the Secretary *did* adhere to the relevant RTKL deadline, a point Plaintiffs no longer contest. *See* Opp'n at 16. And while Plaintiffs now suggest the Secretary is using the RTKL as a shield against making a timely NVRA response, it notably was *Plaintiffs*—not the Secretary or Intervenors—who wrongly suggested Pennsylvania's RTKL somehow imposed a quick-fire deadline for the Secretary to respond under the NVRA. *See, e.g.*, ECF No. 1 ¶¶ 48–49 (alleging that Secretary's October 11, 2024 letter "constitute[d] a denial" "under 65 Pa. Stat. § 67.902"). It was not until Plaintiffs realized that a "simple review of the calendar" rendered their initial calculations about the Secretary's timeliness "mistaken" that they repudiated their misguided effort to bootstrap their NVRA claim to any state law deadlines. ECF No. 20 at 22.

More importantly, as this Court previously found dispositive, regardless of state law, Plaintiffs continue to fail to "explain, absent the application of Pennsylvania state law, when they believe they would have been otherwise entitled to these records." *Id.* at 23. Simply put, Plaintiffs have not "set forth any viable assertion, argument, or evidence" under *any* law that they were "improperly denied any records" within 30 days of the November 2024 election. *Id.* As such, the NVRA's notice-waiver does not apply, and Plaintiffs were required to send written notice to the Secretary 90 days before filing suit. *See Boockvar*, 370 F. Supp. 3d at 457.

## CONCLUSION

The Court should dismiss Plaintiffs' Complaint and Supplemental Complaint either for lack of standing under Rule 12(b)(1) or alternatively for failure to state a claim under Rule 12(b)(6).

Dated: March 19, 2025

Respectfully submitted,

*/s/ Lalitha D. Madduri*

Adam C. Bonin (PA 80929)
**THE LAW OFFICE OF**
**ADAM C. BONIN**
121 South Broad Street, Suite 400
Philadelphia, PA 19107
Telephone: (267) 242-5014
Facsimile: (215) 827-5300
adam@boninlaw.com

Lalitha D. Madduri*
Christopher D. Dodge*
Omeed Alerasool (PA 332873)
James J. Pinchak*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
lmadduri@elias.law
cdodge@elias.law
oalerasool@elias.law
jpinchak@elias.law

*Specially admitted *pro hac vice*

*Counsel for Intervenor-Defendants AFT Pennsylvania and the Pennsylvania Alliance for Retired Americans*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8

The undersigned hereby certifies that this document contains 4,705 words, according to the word count feature on Microsoft Word, and therefore complies with the length limitations for briefs under Local Rule 7.8(b)(2).

*/s/ Lalitha D. Madduri*
Lalitha D. Madduri

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 19th day of March, 2025, with a copy of this document via the Court's CM/ECF system.

*/s/ Lalitha D. Madduri*
Lalitha D. Madduri